BRIAN D. HENRI (State Bar No. 200205)
*bhenri@twtlaw.com*
**THOMAS WHITELAW & TYLER LLP**
Three Embarcadero Center, Suite 1350
San Francisco, California 94111-4037
Telephone: (415) 820-0400
Facsimile: (415) 820-0405

JOSEPH E. THOMAS (State Bar No. 101443)
*jthomas@twtlaw.com*
MICHAEL I. KATZ (State Bar No. 181728)
*mkatz@twtlaw.com*
**THOMAS WHITELAW & TYLER LLP**
18101 Von Karman Avenue, Suite 230
Irvine, California 92612
Telephone: (949) 679-6400
Facsimile: (949) 679-6405

AUSTIN TIGHE (*pro hac vice application to be filed*)
*austin@feazell-tighe.com*
**FEAZELL & TIGHE LLP**
6618 Sitio Del Rio Boulevard
Building C-101
Austin, TX 78730
Telephone: 512.372.8100
Facsimile: 512.372.8140

**CV 10 3328**

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. DAVIS, aka TONY DAVIS, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| ELECTRONIC ARTS, INC., | |
| Defendant. | |

Plaintiff, by and through his attorneys, based on his individual experiences, the investigation of counsel, and upon information and belief alleges as follows:

## I. INTRODUCTION

1.      This is a class action lawsuit brought by Michael E. Davis, aka Tony Davis, on

behalf of himself and on behalf of all other similarly situated retired National Football League ("NFL") football players against Electronic Arts, Inc. ("EA") arising out of the unlawful use of retired NFL players' likenesses in video games created, marketed and sold by EA. Specifically, EA's unauthorized production and sale of products including the likeness of Plaintiff Tony Davis violates his statutory and common law rights of publicity under California law. Furthermore, EA's practice of appropriating the likenesses of retired NFL players without prior authorization and permission is unlawful and/or wrongful has caused it to be unjustly enriched.

2.      EA has purposefully chosen to include the unauthorized likenesses of retired NFL players in EA's popular "Madden NFL" video game franchise. Rather than obtain authorization to use the likenesses of retired NFL players in its Madden NFL video game franchise and properly compensate this group of individuals for use of their likenesses, EA without authorization used their likenesses in "historic teams" that consumers could play and manipulate when they purchased versions of EA's Madden NFL video games.

3.      EA has earned substantial revenue by creating, marketing, and selling video games featuring the likenesses of retired NFL players. In just one fiscal year (2008), Electronic Arts posted net revenues, calculated under GAAP, of $3.67 billion. EA has traded on the popularity of historic NFL teams and the likenesses of the players who comprised the rosters of those teams to enhance the revenue and popularity of EA's Madden NFL video game franchise

4.      EA's commercial exploitation of retired NFL players is both blatant and prolific, as the 2009 edition of the Madden NFL video game contained over 140 "historic teams" containing likenesses of thousands of retired NFL players. EA was fully aware that its use of the retired players' likenesses was without authorization and that a license was needed.

5.      Defendant's conduct has violated and continues to violate Plaintiff's right of publicity and the right of publicity of all similarly situated class members. This is a proposed class action on behalf of retired NFL players whose likenesses have been used without their permission or consent in versions of EA's Madden NFL video game franchise that were sold from July 29, 2008 through the present, to increase revenues and profits for EA and in violation

**1** of applicable laws. Compensation is sought against EA for the unauthorized use of the

**2** likenesses of retired NFL football players.

**3**                    **II.    PARTIES**

**4**         6.    Plaintiff Tony Davis, an individual, is a resident of Colorado and is a retired

**5** NFL player. Mr. Davis played six seasons in the National Football league as a running back

**6** for the Cincinnati Bengals (1976-1978) and Tampa Bay Buccaneers (1979-1981). EA has used

**7** and uses Mr. Davis' likeness for its own commercial benefit and profit without Mr. Davis'

**8** authorization or permission.

**9**         7.    Defendant EA, a Delaware corporation, with its principal place of business

**10** located in Redwood City, California, is an entertainment software company that produces the

**11** Madden video game franchise, along with a host of other video games. It is self-described as

**12** the "world's leading interactive entertainment software company."

**13**               **III.    JURISDICTION AND VENUE**

**14**         8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

**15** §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and

**16** Plaintiff and other putative Class members are citizens of a different state than the Defendant.

**17**         9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

**18** resides in this District, as well as has sufficient minimum contacts for the exercise of personal

**19** jurisdiction in this District. Defendant has purposefully availed itself of the privilege of

**20** conducting business activities within the State of California by employing workers within

**21** California and selling its goods and services within the State and within the District.

**22** Furthermore, on information and belief, the wrongful conduct occurred at EA's principal place

**23** of business located in Redwood City, California which is located within the this Judicial

**24** District.

**25**         10.   Intradistrict Assignment: Assignment to the San Francisco or Oakland division

**26** of this Court is appropriate because Defendant's headquarters and principal place of business is

**27** in Redwood City, California. Because this action arises in the County of San Mateo, pursuant

**28** to Northern District of California, Local Rule 3-2(d), assignment to either the San Francisco

89492                                    3

1   Division or the Oakland Division is proper.

2                           **IV.    FACTUAL ALLEGATIONS**

3   **A.     Background on EA and the Madden NFL Video Game Franchise**

4              11.    EA is the number one publisher of video games in North America, with

5   revenues of approximately $4.2 billion for fiscal year 2009.

6              12.    EA produces the Madden NFL video game franchise.  Video games within the

7   Madden franchise simulate football games between current and past NFL teams.

8              13.    EA releases different versions of the Madden NFL video game franchise for

9   different video game platforms and in different languages.

10             14.    The Madden franchise is one of the top-selling video game franchises of all time

11  and has contributed significantly to EA's annual revenue.

12             15.    Upon information and belief, sales of all of the versions of the 2009 edition of

13  the Madden NFL video game accounted for approximately 10% of EA's fiscal year 2009

14  revenue, totaling approximately $400 million.

15             16.    EA releases a new edition of the Madden NFL video game every year.  The

16  Madden NFL video games simulate football games in the most realistic manner possible, as EA

17  spends millions of dollars to ensure the realism of these NFL games, and advertises this realism

18  in the promotion of its products.

19             17.    Indeed, the very realism of the Madden NFL video game franchise is where the

20  franchise's value lies, and EA's promotion of the video game franchise trumpets this realism.

21  EA replicates the skill levels of NFL players through a ranking system and gives the likenesses

22  of NFL players in the Madden NFL games the very attributes that the NFL players have in real

23  life—including the same teams, positions, approximate height, approximate weight, and years

24  of experience, among other characteristics.

25  **B.     Background on EA's Unauthorized Use of Retired Players' Likenesses**

26             18.    In addition to including the likenesses of then-active NFL players, through the

27  2009 version the Madden NFL game included "historic teams."

28             19.    EA misappropriated the likenesses of retired NFL players on these historic

89492                                        4
                                        COMPLAINT

1  teams by describing in each player's profile the player's position, years in the NFL,
2  approximate height and weight, as well as each player's relative skill level in different aspects
3  of the game, among other characteristics. These characteristics were consistently identical or
4  so close to the living player's characteristics that the consumers of the game could readily
5  discern what player was being represented. Indeed, the value of the "historic teams" to
6  consumers of Madden NFL depended on the composition of the teams being true to actual
7  historical fact. For example, players of the Madden video game cannot enjoy pitting one
8  historical team against another (or one historical team against a current team) if the rosters of
9  those teams do not represent the actual characteristics of the teams that they know and love.

10  20.    Player likenesses and publicity rights are extremely valuable, intangible
11  property. For example, it has been publicly reported that Electronic Arts paid the NFL Players
12  Union, through their licensing arm, nearly thirty-five million dollars each year for the use of
13  active players' likenesses. However, EA attempted to avoid license fees for use of retired
14  players' likenesses by placing on the "avatar" of each retired player a different uniform number
15  than that worn by the player when he was actually on that historic team. Similarly, in some
16  circumstances but not others, EA made certain trivial changes in a player's characteristics, such
17  as changing a player's weight by a few pounds. These changes reflect a calculated and
18  underhanded attempt to avoid having to pay any license or royalty—but nonetheless readily
19  invoke the likeness of the player in the mind of the consumer. In this way, EA has exploited
20  the retired players by using their valuable likenesses and publicity rights.

21  21.    In the case of named plaintiff Tony Davis, for example, in 1979 Mr. Davis
22  played for the Tampa Bay Buccaneers in the position of halfback (running back). He was 26
23  years old, 5'11" tall, weighed 215 pounds, was in his fourth NFL year, and wore number 27. In
24  the Madden '09 video game, he appears as a halfback for the 1979 Tampa Bay Buccaneers, is
25  26 years old, 5'11", weighs 215 pounds, has four years of "pro" experience, and wears number
26  37. In addition, attached hereto as Exhibit "A" is a chart of the entire 1979 Tampa Bay
27  Buccaneers, with their player statistics for that year, compared to those players statistics as they
28  appear in the Madden '09 video game. As can be seen from a cursory review of this chart, it is

**1** easy to discern the identity of the retired NFL player class members in the game.

**2** 22. These are not unique examples. EA deliberately and systematically
**3** misappropriated the retired players' likenesses to increase the value of the Madden NFL video
**4** game franchise at the expense of those players.

**5** 23. The only significant detail that EA changes from the real-life retired NFL
**6** players is their jersey number. Despite EA's "scrambling" of the retired NFL players'
**7** numbers, the games are designed so that consumers of the Madden NFL video game franchise
**8** will have no difficulty identifying who the "historic" players are. Again, if the historic teams in
**9** the Madden video game were not accurate representations of the retired players characteristics,
**10** then the game playing experience would be quite unsatisfactory.

**11** 24. The omission of player's names and scrambling of the numbers has little
**12** consequence because Electronic Arts includes a player customization feature that allows users
**13** to edit the rosters of historical teams to include player's real names and numbers.

**14** 25. EA further encouraged users of the Madden video game to use the historic
**15** rosters by, among other things, in some games allowing users to achieve certain milestones in
**16** the game to unlock and use historic rosters for a reward for excelling at the game.

**17** C. **EA's Awareness of Its Unauthorized Use**

**18** 26. Neither Plaintiff nor any other member of the class has ever authorized EA to
**19** use his rights of publicity or likeness in the Madden NFL video game.

**20** 27. On information and belief, EA and representatives of the National Football
**21** League Player's Association (the "NFLPA") entered into discussions regarding the use of
**22** retired NFL players' likenesses in the Madden NFL video game.

**23** 28. The NFLPA made it clear to EA that it could not use the likenesses of retired
**24** NFL players in the Madden NFL video game franchise.

**25** 29. EA did not acquire the rights to use the likenesses of retired NFL players but,
**26** instead, it misappropriated the likenesses of retired NFL players in EA's Madden NFL video
**27** game franchise by misappropriating elements and characteristics of retired NFL players.

**28** 30. Notably, after this scheme came to light, EA discontinued its misappropriation

**1** of retired NFL players' likenesses in the 2010 edition of the Madden NFL video game.

**2**                           **V.    CLASS ACTION ALLEGATION**

**3**        31.    Plaintiff brings this class action on his own behalf and on behalf of a class of

**4** persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**5**        32.    The putative Class is defined to include approximately 6,000 retired NFL

**6** players whose likenesses were included in the "historic teams" in all versions and editions of

**7** the Madden NFL video game sold between July 29, 2008 and the present, without permission

**8** or authorization.

**9**        33.    Excluded from the Class are EA, its directors, officers, and employees. Also

**10** excluded from the Class are the limited number of players whose virtual players' height is not

**11** within two inches of the player's roster height, and the virtual players' weight is not within

**12** 10% of the players' roster weight.

**13**        34.    The Class meets the numerosity standard in Rule 23(a)(1) because it consists of

**14** approximately 6,000 retired NFL players who are geographically dispersed throughout the

**15** United States and perhaps elsewhere.

**16**        35.    Although the precise number of such persons is unknown, the exact size of the

**17** Class is easily ascertainable, as each class member can be identified by using readily available

**18** and widely published historic player information. For example, the names and addresses class

**19** members can be obtained from the NFL Alumni Association, The NFL Players' Association

**20** (NFLPA), and the NFL's Player Database. The joinder of each of these approximately 6,000

**21** players is impracticable.

**22**        36.    The disposition of Class members' claims through this class action will provide

**23** substantial benefits to both the parties and the Court.

**24**        37.    Members of the Class may be notified of the pendency of this action by

**25** techniques and forms commonly used in class actions, such as by published notice, e-mail

**26** notice, website notice, first class mail, or combinations thereof, or by other methods suitable to

**27** this class and deemed necessary and/or appropriate by the Court.

**28**        38.    There are common questions of law and fact that predominate over any

1 | questions affecting only individual members and include, but are not limited to, the following:

2 |      (a)    Whether EA utilized retired NFL players' likenesses in its Madden NFL

3 |            video game franchise;

4 |      (b)    Whether EA used retired NFL players' likenesses for its advantage or

5 |            economic gain;

6 |      (c)    Whether such use is unlawful;

7 |      (d)    Whether EA's conduct violates California Civil Code Section 3344;

8 |      (e)    Whether EA's conduct violates California's common law right of publicity;

9 |      (f)    Whether class members have been damaged by EA's conduct and the

10 |            amount of such damages;

11 |      (g)    Whether class members are entitled to punitive damages and whether costs

12 |            and attorneys' fees are appropriate and the amount of such damages;

13 |      (h)    Whether statutory damages are appropriate and the amount of such damages;

14 |            and,

15 |      (i)    Whether EA should disgorge their unlawful profits and the amount of such

16 |            profits.

17 |     39.    Plaintiff's claims are typical of the Class' claims, as they arise out of the same

18 | course of conduct and the same legal theories as the rest of the Class, and Plaintiff challenges

19 | the practices and course of conduct engaged in by EA with respect to the Class as a whole.

20 |     40.    Plaintiff is an adequate representative of the Class because his interests do not

21 | conflict with the interests of the Class members that he seeks to represent, and, in fact, he is

22 | similarly situated with the members of the Class. Plaintiff will fairly and adequately represent

23 | and protect the interests of the Class. Plaintiff has retained counsel who are competent and

24 | experienced in the prosecution of class action litigation.

25 |     41.    Resolution this action on a class-wide basis is superior to other available

26 | methods. Although the aggregate damages which may be awarded to Plaintiff and the Class are

27 | likely to be in the tens of millions dollars, the actual damages suffered by the individual

28 | damages could be small in comparison. Thus, the expense and burden of individual litigation

1 makes it economically infeasible and procedurally impracticable for each retired NFL player

2 member of the Class to seek legal action.

3     42.     Moreover, separate actions by individual class members would also create a risk

4 of inconsistent or varying judgments, which could establish incompatible standards of conduct

5 for EA and substantially impede or impair the ability of class members to pursue their claims.

6 Allowing this matter to proceed as a class action presents fewer management difficulties,

7 conserves the resources of the parties and the court system, and is the only method whereby

8 Plaintiff and the Class can efficiently seek redress and obtain a uniform adjudication of their

9 claims. Plaintiff does not anticipate difficulties with the management of this action.

10                    **VI.**     **CAUSES OF ACTION**

11                    **FIRST CAUSE OF ACTION**

12     **(Deprivation of Rights of Publicity in Violation of California Civil**

13                      **Code §3344)**

14     43.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 40 as

15 though set forth fully herein.

16     44.     EA has knowingly and intentionally utilized and continues to utilize the

17 likenesses of Plaintiff and class members in its Madden NFL video game franchise without the

18 consent of Plaintiff and class members. This conduct has occurred in and emanated from

19 California, specifically EA's headquarters in Redwood City, CA.

20     45.     EA's actions, as described herein, were committed maliciously, intentionally,

21 fraudulently and with a willful and conscious disregard of Plaintiff's and class members' rights,

22 making an award of punitive damages appropriate in order to punish and deter EA from

23 continuing to engage in the conduct alleged herein.

24     46.     As a result of EA's misappropriation of their publicity rights, Plaintiff and class

25 members have been injured.

26                    **SECOND CAUSE OF ACTION**

27     **(Violation of Rights of Publicity under California Common Law)**

28     47.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 44 as

89492                            9

1    though set forth fully herein.

2        48.    EA has utilized and continues to utilize the likenesses of Plaintiff and class

3    members in numerous versions and editions of its Madden NFL video game franchise.

4        49.    EA has intentionally utilized and continues to utilize Plaintiff's and class

5    members' likenesses with full and complete knowledge that its use of such likenesses was

6    unauthorized and without prior license or consent of Plaintiff and class members.

7        50.    EA has utilized and continues to utilize Plaintiff's and class members'

8    likenesses for its own commercial advantage as a means of generating interest and profits for

9    its Madden NFL video game franchise.

10        51.    EA's actions, as described herein, were committed maliciously, intentionally,

11   fraudulently and with a willful and conscious disregard of Plaintiff's and class members' rights,

12   making an award of punitive damages appropriate in order to punish and deter EA from

13   engaging in the conduct alleged herein.

14        52.    As a result of EA's misappropriation of their publicity rights Plaintiff and class

15   members have been injured.

16                              **THIRD CAUSE OF ACTION**

17                                  **(Unjust Enrichment)**

18        53.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 50 as

19   though set forth fully herein.

20        54.    To the detriment of Plaintiff and class members, EA has been and continues to

21   be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged herein.  EA

22   has been unjustly benefited through the sale of various versions and editions of its Madden

23   NFL video game franchise that utilize the likenesses of Plaintiff and class members.

24        55.    Plaintiff's and class members' likenesses have considerable commercial value

25   based on their participation on legendary and immensely popular NFL teams from years past.

26        56.    EA has intentionally utilized and continues to utilize Plaintiff's and class

27   members' likenesses without their consent. EA has therefore benefitted from the use of

28   Plaintiff's and class members' likenesses while simultaneously denying Plaintiff and class

89492                                    10

1    members the compensation that they would expect to be paid for the use of their likenesses.

2        57.    Between Defendant EA and Plaintiff/class members, it would be unjust for EA

3    to retain the benefits attained by their wrongful actions. Accordingly, Plaintiff and class

4    members seek full restitution of EA's enrichment, benefits and ill-gotten gains acquired as a

5    result of the unlawful and/or wrongful conduct alleged herein.

6                              **PRAYER FOR RELIEF**

7        WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated prays for

8    judgment against Defendant EA as follows:

9        A.    Certification of the action as a Class Action pursuant to Rule 23 of the Federal

10   Rules of Civil Procedure, and appointment of Plaintiff as the Class Representative and his

11   counsel of record as Class Counsel;

12       B.    That Plaintiff and each and every member of the class recover: damages

13   determined to have been sustained by each of them, including actual damages, statutory

14   damages, punitive damages, and such other relief as provided by the statutes cited herein;

15       C.    Disgorgement of all profits attributable to the use of Class Members' likenesses

16   earned by EA from the sale of all editions and versions of the Madden NFL video games

17   containing the likenesses of Plaintiff and class members between July 29, 2008 and the present

18   through an accounting performed by accountants of Plaintiff's choice under terms and

19   conditions ordered by this Court at the expense of Defendant;

20       D.    Prejudgment and post-judgment interest on such monetary relief;

21       E.    The costs of bringing this suit, including reasonable attorneys' fees; and

22       F.    All other relief to which Plaintiff and class members may be entitled at law or in

23   equity.

24   ///

25   ///

26   ///

27   ///

28   ///

89492                            11
                            COMPLAINT

1    **JURY TRIAL DEMANDED**

2    Plaintiff demands a trial by jury on all issues so triable.

3

4    DATED: July 29, 2010                    THOMAS WHITELAW & TYLER LLP

5

6    By: _____
                                            BRIAN D. HENRI
7                                           JOSEPH E. THOMAS
                                            MICHAEL I. KATZ
8                                           Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

89492                           12

# EXHIBIT A

| Player Name | Jersey # in Game | Jersey # Real Life | Height in Game | Height in Real Life | Weight in Game | Weight in Real Life | Position | Years Pro in Game | Years Pro In Real Life | Age in Game | Age in Real Life |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Doug Williams | 1 | 12 | 6'4" | 6'4" | 214 | 215 | QB | 2 | 2 | 24 | 24 |
| Mike Rae | 11 | 15 | 6'0" | 6'0" | 195 | 200 | QB | 4 | 2 | 28 | 28 |
| Chuck Fusina | 2 | 14 | 6'1" | 6'1" | 200 | 195 | QB | 1 | 2 | 22 | 22 |
| Ricky Bell | 26 | 42 | 6'2" | 6'2" | 220 | 215 | HB | 3 | 3 | 24 | 24 |
| Jerry Eckwood | 22 | 43 | 6'0" | 6'0" | 195 | 195 | HB | 1 | 1 | 24 | 25 |
| George Ragsdale | 21 | 23 | 5'11" | 5'11" | 185 | 185 | HB | 3 | 3 | 25 | 25 |
| Johnny Davis | 28 | 38 | 6'1" | 6'1" | 235 | 235 | FB | 2 | 2 | 23 | 23 |
| Tony Davis | 37 | 27 | 6'1" | 5'11" | 215 | 215 | FB | 4 | 4 | 26 | 26 |
| Rick Berns | 29 | 36 | 6'2" | 6'2" | 200 | 200 | FB | 1 | 1 | 23 | 23 |
| Isaac Hagins | 4 | 81 | 5'9" | 5'9" | 180 | 180 | WR | 3 | 3 | 25 | 25 |
| Larry Mucker | 3 | 87 | 5'11" | 5'11" | 195 | 195 | WR | 3 | 3 | 24 | 24 |
| Gordon Jones | 10 | 84 | 6'0" | 6'0" | 190 | 190 | WR | 1 | 1 | 22 | 22 |
| Morris Owens | 5 | 85 | 6'0" | 6'0" | 200 | 200 | WR | 5 | 5 | 26 | 26 |
| Jimmie Giles | 82 | 88 | 6'3" | 6'3" | 240 | 240 | TE | 3 | 3 | 25 | 25 |
| Jim Obradovich | 80 | 86 | 6'2" | 6'2" | 230 | 230 | TE | 5 | 5 | 26 | 26 |
| Dave Reavis | 67 | 75 | 6'5" | 6'5" | 265 | 265 | LT | 5 | 5 | 29 | 29 |
| Greg Horton | 52 | 64 | 6'4" | 6'4" | 250 | 250 | LG | 4 | 4 | 28 | 28 |
| George Yarno | 50 | 66 | 6'2" | 6'2" | 255 | 255 | LG | 1 | 1 | 22 | 22 |
| Steve Wilson | 73 | 50 | 6'3" | 6'3" | 270 | 270 | C | 1 | 1 | 25 | 25 |
| Charles Hannah | 65 | 73 | 6'6" | 6'6" | 301 | 255 | C | 7 | 3 | 29 | 24 |
| Greg Roberts | 78 | 61 | 6'3" | 6'3" | 255 | 255 | RG | 1 | 1 | 22 | 22 |
| Daryl Carlton | 48 | 70 | 6'5" | 6'6" | 280 | 285 | RT | 5 | 5 | 26 | 26 |
| Darrell Austin | 72 | 65 | 6'4" | 6'4" | 250 | 250 | RT | 5 | 6 | 28 | 27 |
| Wally Chambers | 98 | 60 | 6'6" | 6'6" | 250 | 250 | LE | 6 | 6 | 28 | 28 |
| Bill Kolar | 97 | 77 | 6'4" | 6'4" | 250 | 250 | LE | 6 | 5 | 27 | 26 |
| Lee Roy Selmon | 94 | 63 | 6'3" | 6'3" | 255 | 255 | RE | 4 | 4 | 25 | 25 |
| Reggie Lewis | 92 | 79 | 6'3" | 6'3" | 260 | 260 | RE | 1 | 1 | 23 | 23 |
| Randy Crowder | 91 | 71 | 6'3" | 6'2" | 250 | 250 | DT | 5 | 5 | 27 | 27 |
| Dave Logan | 96 | 76 | 6'2" | 6'2" | 250 | 250 | DT | 1 | 1 | 23 | 22 |
| Gene Sanders | 62 | 74 | 6'3" | 6'3" | 270 | 270 | DT | 1 | 1 | 23 | 22 |
| Dave Lewis | 93 | 57 | 6'4" | 6'4" | 240 | 240 | LOLB | 3 | 3 | 25 | 24 |
| Dana Nafziger | 90 | 51 | 6'1" | 6'1" | 225 | 225 | LOLB | 3 | 3 | 26 | 25 |
| Dewey Selmon | 47 | 58 | 6'1" | 6'1" | 245 | 245 | MLB | 1 | 4 | 25 | 25 |

| Player Name | Jersey # in Game | Jersey # Real Life | Height in Game | Height in Real Life | Weight in Game | Weight in Real Life | Position | Years Pro in Game | Years Pro in Real Life | Age in Game | Age in Real Life |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Richard Wood | 41 | 54 | 6'2" | 6'4" | 225 | 225 | MLB | 5 | 5 | 26 | 26 |
| Rik Bonness | 95 | 53 | 6'3" | 6'3" | 215 | 215 | MLB | 4 | 4 | 25 | 25 |
| Aaron Brown | 99 | 55 | 6'2" | 6'2" | 235 | 235 | MLB | 2 | 2 | 21 | 23 |
| Cecil Johnson | 59 | 56 | 6'2" | 6'2" | 236 | 236 | ROLB | 3 | 3 | 24 | 24 |
| Jeris White | 20 | 45 | 5'11" | 5'11" | 185 | 185 | CB | 6 | 6 | 27 | 27 |
| Mike Washington | 24 | 40 | 6'3" | 6'3" | 205 | 205 | CB | 4 | 4 | 20 | 20 |
| Billy Cesare | 30 | 44 | 5'11" | 5'11" | 190 | 190 | CB | 2 | 2 | 24 | 24 |
| Danny Reece | 39 | 46 | 5'11" | 5'11" | 190 | 190 | CB | 4 | 4 | 24 | 25 |
| Cedric Brown | 35 | 34 | 6'2" | 6'2" | 205 | 205 | FS | 3 | 3 | 25 | 25 |
| Mark Cotney | 32 | 33 | 6'0" | 6'0" | 205 | 205 | SS | 5 | 5 | 27 | 27 |
| Curtis Jordan | 31 | 25 | 6'2" | 6'2" | 210 | 205 | SS | 4 | 4 | 25 | 26 |
| Neil O'Donoghue | 8 | 6 | 6'6" | 6'6" | 205 | 210 | K | 3 | 3 | 26 | 26 |
| Tom Blanchard | 13 | 16 | 6'0" | 6'0" | 180 | 180 | P | 9 | 9 | 30 | 30 |