KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
R. JAMES SLAUGHTER - #192813
rslaughter@kvn.com
R. ADAM LAURIDSEN - #243780
alauridsen@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL E. DAVIS, aka TONY DAVIS, VINCE FERRAGAMO, and BILLY JOE DUPREE, on behalf of themselves and all other similarly situated,<br><br>                                        Plaintiffs,<br><br>          v.<br><br>ELECTRONIC ARTS INC.,<br><br>                                        Defendant. | Case No. 10-CV-3328-RS (DMR)<br><br>**ELECTRONIC ARTS INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Date:         June 16, 2011<br>Time:        11:00 a.m.<br>Dept:        Courtroom 4, 3rd Floor<br>Judge:       Hon. Donna M. Ryu<br><br>Date Comp. Filed:      July 29, 2010<br><br>Trial Date:  None |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ..................................................................................................2

III.  ARGUMENT .......................................................................................................4

    A.  Discovery Is Stayed By the Filing of EA's Anti-SLAPP Motion ..........................4

        1.  The anti-SLAPP statute provides immunity from suit that would be subverted if discovery were permitted. .......................................4

        2.  The anti-SLAPP discovery stay does not conflict with Rule 56(d). ...............................................................................................5

        3.  Whether under the anti-SLAPP Statute or Rule 56(d) it is Plaintiffs' burden to demonstrate that the requested discovery is essential to oppose EA's anti-SLAPP motion...........................................7

    B.  Plaintiffs Have Not Demonstrated that Discovery Is Essential to Oppose EA's Anti-SLAPP Motion ........................................................................8

        1.  Transformative-Use Test .........................................................................8

        2.  Strauser Declaration................................................................................10

        3.  Waiver of First Amendment Defenses.....................................................11

    C.  Plaintiffs' Complaints About EA's Other Objections Are Irrelevant Given the Anti-SLAPP Discovery Stay, and Have No Merit in any Case.................................................................................................................12

        1.  Plaintiffs' requests are grossly overbroad, particularly given the restrictions of section 425.16(g) and/or Rule 56(d). .................................12

        2.  EA's attorney-client-privilege and attorney-work-product objections are entirely proper, and EA is not required to provide a privilege log under section 425.16(g). .......................................13

        3.  EA's objections that Plaintiffs' definitions are vague, ambiguous, and call for or assume legal conclusions are proper...............14

IV.  CONCLUSION.................................................................................................15

555952.05

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Aeroplate Corp. v. Arch Ins. Co.*
  2006 WL 3257487 (E.D. Cal. Nov. 9, 2006) .................................................................6

*Air Safety, Inc. v. Roman Catholic Archbishop of Boston*
  94 F.3d 1 (1st Cir. 1996) ...........................................................................................10

*Alberghetti v. Corbis Corp.*
  713 F. Supp. 2d 971 (C.D. Cal. 2010) .......................................................................13

*Batzel v. Smith*
  333 F.3d 1018 (9th Cir. 2003) .............................................................1, 4, 5, 6, 7

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*
  448 F. Supp. 2d 1172 (C.D. Cal. 2006) .......................................................................6

*Burnett v. Twentieth Century Fox Film Corp.*
  491 F. Supp. 2d 962 (C.D. Cal. 2007) .........................................................................9

*Capcom Co., Ltd. v. MKR Group, Inc.*
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ...............................................................9

*Continental Mar. of San Francisco, Inc. v. Pac. Coast Metal Trades Dist.
  Council*
  817 F.2d 1391 (9th Cir. 1987) .....................................................................................7

*Crawford-El v. Britton*
  523 U.S. 574 (1998) ....................................................................................................7

*Curtis Pub. Co. v. Butts*
  388 U.S. 130 (1967) .............................................................................................11, 15

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993) .................................................................................................1, 6

*Dunn v. Castro*
  621 F.3d 1196 (9th Cir. 2010) .....................................................................................3

*Erie R.R. v. Thompkins*
  304 U.S. 64 (1938) ...........................................................................................5, 7, 15

*Family Home & Fin. Cent., Inc. v Fed. Home Loan Mortg. Corp.*
  525 F.3d 822 (9th Cir. 2008) .......................................................................7, 9, 10, 12

*First Nat. Bank of Ariz. v. Cities Serv. Co.*
  391 U.S. 253 (1968) ..................................................................................................12

*Flores v. Emerich & Fike*
  2006 WL 2536615 (E.D. Cal. Aug. 31, 2006) ..............................................................5

*Flores v. Emerich & Fike*
  385 F. App'x. 728 (9th Cir. 2010) ...............................................................................5

*Four Navy Seals v. Assoc. Press*
  413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................................6

*Fuentes v. Shevin*
  407 U.S. 67 (1972) ....................................................................................................11

ii

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*In re Bah*
321 B.R. 41 (B.A.P. 9th Cir. 2005) ..................................................................6

*Johnson v. Zerbst*
304 U.S. 458 (1938)...................................................................................11

*Metabolife Int'l, Inc. v. Wornick*
264 F.3d 832 (9th Cir. 2001) ...............................................................1, 5, 6

*Morton v. Hall*
599 F.3d 942 (9th Cir. 2010) ......................................................................8

*New.Net, Inc. v. Lavasoft*
356 F. Supp. 2d 1090 (C.D. Cal. 2004) ...................................................5, 8

*Nicosia v. De Rooy*
72 F. Supp. 2d 1093 (N.D. Cal. 1999) .........................................................8

*Price v. Stossel*
590 F. Supp. 2d 1262 (C.D. Cal. 2008) ........................................5, 7, 8, 13

*Pulsecard, Inc. v. Discover Card Servs., Inc.*
168 F.R.D. 295 (D. Kan. 1996) .................................................................14

*Rogers v. Grimaldi*
875 F.2d 994 (2d Cir. 1989) .....................................................................3, 9

*Rogers v. Home Shopping Network*
57 F. Supp. 2d 973 (C.D. Cal 1999) ............................................................6

*Siegert v. Gilley*
500 U.S. 226 (1991).................................................................................7, 15

*Tatum v. City & County of San Francisco*
441 F.3d 1090 (9th Cir. 2006) ....................................................................7

*Thomas v. Walt Disney Co.*
2008 WL 425647 (N.D. Cal. Feb. 14, 2008) ..............................................9

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*
190 F.3d 963 (9th Cir. 1999) .......................................................................5

*United States v. Modena*
302 F.3d 626 (6th Cir. 2002) ................................................................10, 11

*Walker v. Armco Steel Corp.*
446 U.S. 740 (1980)................................................................................7, 15

**State Cases**

*1-800 Contacts, Inc. v. Steinberg*
107 Cal. App. 4th 568 (2003) ................................................................8, 11

*Braun v. Chronicle Publ'g Co.*
52 Cal. App. 4th 1036 (1997) .....................................................................4

*Christoff v. Nestle USA, INC.*
47 Cal. 4th 468 (2009) ..............................................................................13

*Hensler v. City of Glendale*
8 Cal. 4th 1 (1994) ....................................................................................13

iii

1

# TABLE OF AUTHORITIES
## (cont'd)

2

**Page(s)**

3

*Italiani v. Metro-Goldwtn-Mayer Corp.*
   45 Cal. App. 2d 464 (1941) ...............................................................13

4

*Karls v. Wachovia Trust Co.*
   2010 WL 4233047 (Cal. App. Oct. 27, 2010) ...........................................13

5

*Kirby v. Sega of Am., Inc.*
   144 Cal. App. 4th 47 (2006) ...............................................................3

6

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*
   37 Cal. App. 4th 855 (1995) ...............................................................8

7

*Paterno v. Super. Ct.*
   163 Cal. App. 4th 1342 (2008) ...............................................................7

8

*Sipple v. Found. for Nat'l Progress*
   71 Cal. App. 4th 226 (1999) ...............................................5, 7, 8, 11, 13

9

*Varian Med. Sys., Inc. v. Delfino*
   35 Cal. 4th 180 (2005) ...............................................................7

10

*Winter v. DC Comics*
   30 Cal. 4th 881 (2003) ...............................................................3, 8, 9

11

## State Statutes

12

Cal. Civ. Proc. Code § 339 ...............................................................13

13

Cal. Civ. Proc. Code § 425.16 ...............................................................*passim*

14

## Federal Rules

15

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 6, 9

16

Federal Rule of Civil Procedure 23 ...............................................................15

17

Federal Rule of Civil Procedure 56(d) ...............................................................*passim*

18

Federal Rule of Evidence 1006 ...............................................................2, 3, 4, 10

19

## Constitutional Provisions

20

First Amendment ...............................................................*passim*

21

22

23

24

25

26

27

28

iv

555952.05

## I.    INTRODUCTION

The Ninth Circuit, in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), succinctly stated why Plaintiffs' motion to compel discovery in this case must be denied: "If the defendant files an anti-SLAPP motion to strike, all discovery proceedings are stayed." *Id.* at 1024.  There is good reason for this rule.  The protections of the anti-SLAPP law "are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." *Id.* at 1025.  Defendant Electronic Arts Inc. ("EA") has filed an anti-SLAPP motion.  *See* Doc. 20.  Thus, all discovery proceedings are stayed.

Discovery remains stayed unless and until Plaintiffs shows "good cause" that specific discovery is necessary to oppose the anti-SLAPP motion.  *See* Cal. Civ. Proc. Code 425.16(g). Because EA's anti-SLAPP motion accepts the truth of the allegations in Plaintiffs' First Amended Complaint, no discovery is necessary to oppose the motion.  Therefore, Plaintiffs' motion to compel should be denied.

Plaintiffs attempt to avoid this result, citing an earlier Ninth Circuit decision, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001), for the proposition that Federal Rule of Civil Procedure 56(d) trumps the anti-SLAPP statute.  But *Metabolife* is inapposite because EA's anti-SLAPP motion is not in the nature of a motion for summary judgment, like the *Daubert* motion at issue in *Metabolife*.  EA's anti-SLAPP motion is brought in conjunction with a motion to dismiss and accepts the truth of Plaintiffs' allegations and demonstrates that they fail to state a claim as a matter of law.  *See* Doc. 20.  The cases, including those cited by Plaintiffs and the *Metabolife* court, have consistently held that motions of this type are not subject to Rule 56(d), but to Rule 12(b)(6) and the anti-SLAPP discovery ban.

Regardless, even accepting Plaintiffs' argument that EA's anti-SLAPP motion should be treated as an early summary judgment motion and therefore subject to discovery provisions of Rule 56(d), the effect is the same: it remains Plaintiffs' burden to show the specific facts they hope to elicit from discovery, that those facts exist and are not speculative, and that they are essential to oppose EA's anti-SLAPP motion.  Plaintiffs identify three areas for which they claim they need discovery to oppose EA's anti-SLAPP motion, but have not come close to establishing

555952.05

1   that the discovery is essential in order to oppose EA's motion.

2       First, Plaintiffs claim they need discovery in order to oppose EA's argument that its use

3   of Plaintiffs' likenesses is "transformative" and thus protected by the First Amendment.  The

4   relevant inquiry on the transformative-use test "is whether the celebrity likeness is one of the

5   'raw materials' from which an original work is synthesized," in which case it is protected, "or

6   whether the depiction … of the celebrity is the very sum and substance of the work in question."

7   Thus, the Court need only consider EA's works—which are properly before the court—to

8   determine whether the First Amendment bars Plaintiffs' claims under this test.

9       Second, Plaintiffs claim they need discovery regarding the declaration of Jeremy Strauser

10  submitted with EA's anti-SLAPP motion.  That declaration, however, only authenticated the

11  games submitted to the Court and provided a Rule 1006 summary of the games' contents for the

12  Court's convenience—a summary that is verifiable through a review of the games themselves.

13      Third, Plaintiffs claim that they need discovery to determine whether EA contractually

14  waived it First Amendment defense.  But EA has already produced to Plaintiffs all of the

15  documents that they could conceivably need to address this issue, including the applicable

16  license agreements.

17      For these and other reasons discussed below, the Court should deny Plaintiffs' motion.

## II.    BACKGROUND

19      EA is a leading developer and publisher of videogames, including *Madden NFL*.

20  Combining technically advanced computer and software engineering and creative audiovisual

21  elements, the games allow users to experience the excitement and challenge of playing in the

22  National Football League ("NFL").  *Madden NFL* does not recreate, recount or imitate real-life

23  or actual historic games.  The action of the game and the results achieved are fictional, virtual,

24  user-generated, and driven by the user's own creativity and skill.

25      Plaintiffs are retired NFL football players.  First Am. Compl. ("FAC") (Doc. 11), ¶ 1.

26  Plaintiffs allege that EA violated their rights of publicity by improperly using their likenesses in

27  its *Madden NFL* videogames.  Plaintiffs acknowledge that EA's games do not include Plaintiffs'

28  names, uniform numbers, photos or images.  *See id*. ¶¶ 37, 54.

2

On January 6, 2011, EA filed a Motion to Dismiss Or, in the Alternative, Special Motion to Strike pursuant to section 425.16 of the California Code of Civil Procedure, which prohibits "Strategic Lawsuits Against Public Participation," or "SLAPP" suits.  *See* Doc. 20.[1]  EA's motion accepts the factual allegations of Plaintiffs' complaint as if they were true, and demonstrates that Plaintiffs' claims fail as a matter of law under First Amendment.  *Id.*

As explained in EA's motion, "[v]ideo games are expressive works entitled to as much First Amendment protection as the most profound literature."  *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 58 (2006).  To prevent the stifling of free expression, courts have narrowly circumscribed statutory and common law misappropriation claims that target videogames and other protected works.  *See, e.g., Winter v. DC Comics*, 30 Cal. 4th 881, 888 (2003); *Rogers v. Grimaldi*, 875 F.2d 994, 998-1005 (2d Cir. 1989).  Court have applied various tests to ensure that right-of-publicity claims do not chill speech, including the transformative-use test, the *Rogers* relatedness test, and the public-interest test.  As EA demonstrated, under any of these tests, EA's motion to dismiss and anti-SLAPP motion to strike must be granted.  *See* Doc. 20.

EA's motion to dismiss and anti-SLAPP motion do not rely on evidence outside of the complaint.  Because the FAC relied upon but did not attach the games at issue, EA submitted the games to the court pursuant to the incorporation by reference doctrine.[2]  EA submitted the declaration of Jeremy Strauser to authenticate the games and provide the court with a Federal Rule of Evidence 1006 summary of the content of the games.  All of the content summarized in Mr. Strauser's declaration may be confirmed through a review of the games themselves.  Doc. 21.

On April 7, 2011, the Court held the initial Case Management Conference.  Contrary to

---

[1]      The Court dismissed without prejudice EA's January 6, 2011 motion so as to avoid continuing the hearing for months while the parties met and conferred regarding discovery.  *See* Jan. 31, 2011 Order (Doc. 35).  The Court clarified in a subsequent order that "motion practice shall proceed as though EA's anti-SLAPP motion is on file as of January 6, 2011."  Mar. 2, 2011 Order at 2 (Doc 44).  EA will file its new motion to dismiss and anti-SLAPP motion on June 9, 2011.  The legal arguments in those motions will be substantially similar to the arguments made in its January 6, 2011, motions, updated to address developments in the law since that date.

[2]      Courts may properly consider on a motion to dismiss "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Dunn v. Castro*, 621 F.3d 1196, 1204 n.6 (9th Cir. 2010).

Plaintiffs' unsupported assertion, Judge Seeborg did **not** rule at the CMC that "Plaintiffs may take discovery relevant to EA's anti-SLAPP motion." Mot. (Doc. 50) at 3:23-24. Rather, the Court indicated that **if** Plaintiffs are allowed to take discovery at all, which the Court did not decide, any such discovery would have to be limited to discovery necessary for Plaintiffs' opposition to EA's anti-SLAPP motion. *See* Declaration of R. James Slaughter ("Slaughter Decl.") ¶ 2.

To date, EA has produced all of the applicable license agreements, correspondence regarding the license agreements, and testimony from the EA executive responsible for negotiating the agreement. *Id*. ¶ 3. This is more than Plaintiffs are entitled to under section 425.16(g), as demonstrated below.

### III.   ARGUMENT

Plaintiffs' motion must be denied because discovery in this case is automatically stayed pursuant to section 425.16(g) of California's anti-SLAPP law and not justified under either 425.16(g) or Federal Rule of Civil Procedure 56(d). Plaintiffs' failure to meet their burden under either standard is demonstrated in Sections A and B below. The Court need not, therefore, descend into the weeds of Plaintiffs' complaints about EA's other objections, which are, nonetheless, addressed in the Section C below.

**A.     Discovery Is Stayed By the Filing of EA's Anti-SLAPP Motion**

> **1.     The anti-SLAPP statute provides immunity from suit that would be subverted if discovery were permitted.**

The anti-SLAPP statute was enacted by the California Legislature to respond to lawsuits, like this one, that threaten to chill the valid exercise of First Amendment rights. "The anti-SLAPP statute is designed to nip SLAPP litigation in the bud by striking offending causes of actions which 'chill the valid exercise of the constitutional rights of freedom of speech and petition....'" *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997) (quoting Cal. Civ. Proc. Code § 425.16(a)). The protections of the anti-SLAPP law "*are in the nature of immunity*: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." *Batzel*, 333 F.3d at 1025 (emphasis added). In particular, the law

4

1    provides that "[a]ll discovery proceedings in the action shall be stayed upon the filing of a notice

2    of motion made pursuant to this section.…   The court, on noticed motion and for good cause

3    shown, may order that specified discovery be conducted notwithstanding this subdivision."  Cal.

4    Civ. Proc. Code § 425.16(g).  Thus, under section 425.16(g), "[i]f the defendant files an anti-

5    SLAPP motion to strike, all discovery proceedings are stayed."  *Batzel*, 333 F.3d at 1024.

6         As both California and federal courts recognize, it "'would subvert the intent of the anti-

7    SLAPP legislation' to allow a plaintiff to conduct discovery—thereby delaying adjudication of

8    the defendant's special motion to strike and increasing the financial burden on the defendant—on

9    anything less than a showing of good cause."  *Price v. Stossel*, 590 F. Supp. 2d 1262, 1267 (C.D.

10   Cal. 2008) (quoting *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 247 (1999)).

11   Further, it would subvert "the twin purposes of the *Erie* rule—'discouragement of forum-

12   shopping and avoidance of inequitable administration of the law'"—if federal courts did not

13   apply the anti-SLAPP statute in federal cases.  *U.S. ex rel. Newsham v. Lockheed Missiles &*

14   *Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (quotation marks and citation omitted); *see*

15   *also Erie R.R. v. Thompkins*, 304 U.S. 64, 78 (1938); *Batzel*, 333 F.3d at 1024; *New.Net, Inc. v.*

16   *Lavasoft*, 356 F. Supp. 2d 1090, 1102 (C.D. Cal. 2004).

17        **2.     The anti-SLAPP discovery stay does not conflict with Rule 56(d).**

18        Plaintiffs' attempt to evade the anti-SLAPP discovery stay is premised on the notion that

19   the stay does not apply here because it would conflict with Federal Rule of Civil Procedure 56(d)

20   (formerly 56(f)).  *See* Mot. at 5.  Plaintiffs rely on *Metabolife*, 264 F.3d 832, but that case is

21   inapposite.  As the court held in *Flores v. Emerich & Fike*, 2006 WL 2536615 (E.D. Cal. Aug.

22   31, 2006) (cited by Plaintiffs), *Metabolife* must be interpreted "narrowly" in order to harmonize

23   it with the Ninth Circuit's prior decision in *Lockheed* that the anti-SLAPP law applies in federal

24   courts under the *Erie* doctrine.  *Id.* at *9.[3]  In *Metabolife*, the district court had refused to allow

_____

[3]    Plaintiffs also cite dicta in the Ninth Circuit's unpublished affirmance in *Flores*.  *See*
Mot. at 5:11-12 (citing *Flores v. Emerich & Fike*, 385 F. App'x. 728 (9th Cir. 2010)).  But the
Ninth Circuit's actual holding there was to uphold the district court's rejection of the plaintiff's
belated argument that its claims should not have been stricken because it had not taken
discovery.  *See* 385 F. App'x at 732.  *Flores* provides no support for Plaintiffs' argument.

the plaintiffs to take discovery before deciding an anti-SLAPP motion that was equivalent to a motion for summary judgment based on *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The *Metabolife* court followed the analysis of *Home Shopping Network*, in holding that, under those circumstances, the plaintiffs should have been allowed limited discovery under Rule 56(d).  *See Metabolife*, 264 F.3d at 846 (citing *Rogers v. Home Shopping Network*, 57 F. Supp. 2d 973, 982 (C.D. Cal 1999)).

As the court in *Home Shopping Network* recognized, however, Rule 56(d) has no application where, as here, the anti-SLAPP motion is "based on alleged deficiencies in the plaintiff's complaint" as opposed to "the plaintiff's alleged failure of proof."  *Home Shopping Network*, 57 F. Supp. 2d at 983.  An anti-SLAPP motion, such as EA's, that identifies legal defects in the complaint while accepting its factual allegations as true "must be treated in the same manner as a motion under Rule 12(b)(6)"—*not* Rule 56.  *Id.*; *accord In re Bah*, 321 B.R. 41, 48 n.6 (B.A.P. 9th Cir. 2005); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006); *see also Four Navy Seals v. Assoc. Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal 2005) ("Because discovery is not essential in this case in order to respond to the motion to strike, the burden of establishing a probability of prevailing on a claim still falls upon Plaintiffs.").

Contrary to Plaintiffs' assertions, *Aeroplate Corp. v. Arch Ins. Co.*, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006), does not support their contention that this Court is "without discretion" to deny their motion.  Mot. at 5:12-16.  In fact, the *Aeroplate* court expressly recognized that the anti-SLAPP discovery stay applies, and does not conflict with Rule 56(d), where, as here, "the only issue presented by the motion is an issue of law and the motion is suitable for decision as a motion to dismiss pursuant to Rule 12(b)(6)."  2006 WL 3257487, at *9.

The anti-SLAPP discovery stay as applied here is entirely consistent with Ninth Circuit precedent.  As the Ninth Circuit held in *Batzel*, "[b]ecause California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well."  *Batzel*, 333 F.3d at 1025.  Rule 56(d) does not mandate discovery in the immunity context because "avoidance of disruptive discovery is one of the very purposes

for the official immunity doctrine, and it is no answer to say that the plaintiff has not yet had the opportunity to engage in discovery.  The substantive defense of immunity controls." *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring).[4]  Likewise, the very "point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights."  *Paterno v. Super. Ct.*, 163 Cal. App. 4th 1342, 1348 (2008) (emphasis in original; quoting *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005)); *see also Price*, 590 F. Supp. 2d at 1267; *Sipple*, 71 Cal. App. 4th at 247.  There is, therefore, no "direct collision" between Rule 56(d) and the anti-SLAPP discovery ban, and "*Erie* commands the enforcement of state law."  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 (1980) (quotation marks and brackets omitted); *see also, e.g.*, *Batzel*, 333 F.3d at 1024.

### 3.   Whether under the anti-SLAPP Statute or Rule 56(d) it is Plaintiffs' burden to demonstrate that the requested discovery is essential to oppose EA's anti-SLAPP motion.

Whether Plaintiffs' motion to compel is analyzed under California's anti-SLAPP stay or under Rule 56(d), it remains Plaintiffs' burden—which they do not meet—to establish that the requested discovery is necessary and essential to oppose EA's motion.

A plaintiff seeking discovery under Rule 56(d) "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."  *Family Home & Fin. Cent., Inc. v Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  Identifying potential evidence that is only "generically relevant" does not suffice; the plaintiff must "show how the evidence is 'essential' to oppose summary judgment."  *Id.*; *see also, e.g.*, *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). The "mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under" Rule 56(d).  *Continental Mar. of San Francisco, Inc. v. Pac. Coast Metal Trades Dist. Council*, 817 F.2d 1391, 1395 (9th Cir. 1987).

---

[4]      *See also, e.g.*, *Crawford-El v. Britton*, 523 U.S. 574, 597-99 (1998) (citing Kennedy concurrence in *Siegert* with approval and noting that, consistent with Rule 56, court can and should resolve the "threshold question" of immunity "before permitting discovery").

Likewise, under the "good cause" requirement for discovery under section 425.16(g), plaintiffs must identify particular facts that are in the defendants' possession, and show that those facts would defeat the motion to strike. *Price*, 590 F. Supp. 2d at 1266-67; *Sipple*, 71 Cal. App. 4th at 247; *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal. App. 4th 855, 868 (1995). As the court recognized in *New.Net*, these requirements are essentially the same as those for obtaining discovery under Rule 56(d). *See* 356 F. Supp. 2d at 1102.

Plaintiffs' motion fails under either rule because the discovery Plaintiffs seek is not "essential" to their opposition to EA's anti-SLAPP motion. Indeed, no discovery could be "essential" because EA's motion accepts as true Plaintiffs' allegations and demonstrates that they fail to state a claim. "[A]ny evidence presented to support such allegations," therefore, "would not bring [Plaintiffs] any closer to establishing a prima facie case." *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1111 (N.D. Cal. 1999); *see also*, *e.g.*, *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (Rule 56(f) motion properly denied where dismissal was required as a matter of law); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 594 (2003) (where plaintiff's allegations, "whatever their factual basis, were legally untenable," discovery "could not have changed that").

## B. Plaintiffs Have Not Demonstrated that Discovery Is Essential to Oppose EA's Anti-SLAPP Motion

Plaintiffs' motion to compel attempts to identify three areas of discovery required to oppose EA's motion. When considered in context of the legal framework laid out in EA anti-SLAPP motion, none of these areas is relevant—let alone essential—to opposing EA's motion.

### 1. Transformative-Use Test

Plaintiffs assert that they are entitled to discovery relating to EA's argument that any alleged use of players' likenesses is "transformative." An expressive work such as *Madden NFL* that incorporates an individual's likeness is constitutionally protected by the First Amendment if the use is "transformative." *Winter*, 30 Cal. 4th at 888. The relevant inquiry "is whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized," in which case it is protected, "or whether the depiction … of the celebrity is the very sum and substance of the work in question." *Id.*

1    The question on this motion to compel, therefore, is whether Plaintiffs need anything

2    more than the games themselves to apply the transformative use test.  The California Supreme

3    Court answered that question "No" in the *Winter* case.  In applying the "transformative use" test

4    in *Winter*, the California Supreme Court held that "courts can often resolve the question as a

5    matter of law simply by viewing the work in question and, if necessary, comparing it to an actual

6    likeness of the person or persons portrayed."  30 Cal. 4th at 891-92.  Here, the Court need only

7    view the games to determine whether Plaintiffs' alleged likenesses are one of several "raw

8    materials" comprising the work or are the "sum and substance" of the work.  If the Court

9    observes that the game is synthesized from other raw materials in addition to Plaintiffs' alleged

10   likenesses, the work is "transformative" and no further analysis is required to bar Plaintiffs'

11   claims under the First Amendment.  *See id.*[5]

12        Plaintiffs concede that courts can "make decisions regarding whether a work is

13   transformative from simply comparing a work to the actual likeness."  Mot. at 7:16-19.  They

14   argue, however, that because courts do not *always* do so, Plaintiffs should be allowed to take

15   "discovery that is relevant to whether a work is transformative" and therefore seek reams of

16   information regarding the development of the game.  *Id.*  That is a *non sequitur*.  The issue here

17   is not what discovery might be "relevant" to a transformative-use defense presented by a

18   hypothetical defendant in some other case, but what is "essential" for Plaintiffs to oppose EA's

19   motion, which does not rely on any proof that the games are transformative aside from the games

20   themselves.  *See* Doc. 20; *Family Home*, 525 F.3d at 827.  Plaintiffs have done nothing more

21   than list their facially overbroad requests—*e.g.*, "All DOCUMENTS that REFER or RELATE to

22   HISTORICAL NFL PLAYER CHARACTERS."  App. (Doc. 50-1), RFP 14; *see* Mot. at 6:24-

23   7:3.  Those requests are, *at best*, "generically relevant" to this case as a whole—and therefore are

24

25   ───────────────
     [5]     In trademark cases, courts routinely conduct similar analyses as a matter of law.  *See*,
26   *e.g.*, *Capcom Co., Ltd. v. MKR Group, Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at *13 (N.D.
     Cal. Oct. 20, 2008) (J. Seeborg) (dismissing a Lanham Act claim based on the pleadings and
27   review of the videogame at issue; applying the *Rogers* test, an alternative to the "transformative
     use" test); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 973 (C.D. Cal.
28   2007) (granting Rule 12(b)(6) motion, citing *Rogers*, after reviewing allegedly infringing
     television program); *cf. Thomas v. Walt Disney Co.*, No. C-07-4392 CW, 2008 WL 425647, at *6
     (N.D. Cal. Feb. 14, 2008) (dismissing copyright claim "based on the works themselves").

not essential to oppose EA's motion.  *See Family Home*, 525 F.3d at 827.

### 2.  Strauser Declaration

Plaintiffs argue that EA opened itself up to discovery by submitting the Declaration of Jeremy Strauser in support of the motion to dismiss and anti-SLAPP motion.  *See* Mot. at 8-11. But, as EA explicitly stated in the motion itself, it submitted the Strauser declaration solely to authenticate the games and provide the Court with a Federal Rule of Evidence 1006 summary of the content and features of the *Madden NFL* games in order "to save the Court the hours of game play needed to encounter the various content and features in each game."  Doc. 22 at 4.  All of the content summarized in Mr. Strauser's declaration may be confirmed through a review of the games themselves.  The Court is free to ignore the summary and rely on the content of the games if it chooses.  Similarly, because Plaintiffs have the games, they may dispute Mr. Strauser's summary by pointing out discrepancies, if any, between Mr. Strauser's summary and the content of the games.

Plaintiffs attempt to argue that Mr. Strauser's declaration does more than summarize the games and includes information that is not verifiable from a review of the games.  Not so.  For instance, it is self-evident from viewing the games that the virtual stadium and its occupants are "*all designed and rendered by EA's graphic artists*," Mot. at 8:25 (Plaintiffs' emphasis). Similarly, one need only play the game to determine that many variables (users' input, virtual players' characteristics, and other game variables) determine how well the team performs.  *Id.* at 9:19-21.  Plaintiffs may also simply play the games to verify Mr. Strauser's statement that the Playstation 2 and Xbox editions of the games are the same.  Finally, Plaintiffs' complaint that they need discovery to verify Mr. Strauser's statement that historic teams in *Madden NFL* differ from current teams in *Madden NFL* is doubly lacking:  not only can the statement be confirmed by playing the games, but Plaintiffs allege precisely that in their complaint.  *See* FAC at 37.[6]

---

[6]  Because EA submitted the games themselves, Plaintiffs' contention that EA has not met the Rule 1006 requirement that the originals be "made available" has no merit.  *See* Mot. at 10. The cases Plaintiffs cite for the same proposition are inapposite.  In *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1 (1st Cir. 1996), "the documents from which the summaries were drawn had not been seen by the defendants and were unavailable at the time of trial."  *Id.* at 7.  The same was true in *United States v. Modena*, 302 F.3d 626 (6th Cir. 2002), but

1    More fundamentally, Plaintiffs have not identified how any of these statements affect its ability

2    to oppose EA's motion and therefore why discovery is essential to allow Plaintiffs to oppose

3    EA's motion.  At most, Plaintiffs have articulated a reluctance "to accept EA's representations

4    regarding creation of the characters."  Mot. at 9:7-9.  But discovery "may not be obtained merely

5    to 'test' the opponent's declarations."  *1-800 Contacts*, 107 Cal. App. 4th at 593 (quoting *Sipple*,

6    71 Cal. App. 4th at 247).

7         **3.    Waiver of First Amendment Defenses**

8         Plaintiffs argue that EA may somehow have waived its First Amendment rights by

9    entering into license agreements with the NFL Players Association.  Mot. at 11-12.  To prevail

10   on this theory, Plaintiffs must demonstrate that the agreements show waiver on their face;

11   otherwise, the inquiry is over.  Because freedom of speech "is the matrix, the indispensable

12   condition, of nearly every other form of freedom," the Supreme Court has held that waiver of

13   that right cannot be found "in circumstances which fall short of being clear and compelling."

14   *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967) (citation and quotation marks omitted).  The

15   courts must "indulge every reasonable presumption against waiver," and require a showing that a

16   purported waiver was knowing and intentional.  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)

17   (citations and quotation marks omitted).  But "[w]e need not concern ourselves with the

18   involuntariness or unintelligence of a waiver *when the contractual language relied upon does*

19   *not, on its face, even amount to a waiver*."  *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972) (emphasis

20   added).  In other words, if the agreements do not show waiver on their face, the inquiry is over.

21        Here, EA has produced to Plaintiffs copies of the applicable license agreements between

22   EA and the NFLPA, correspondence between EA and the NFLPA regarding the license

23   agreement, and testimony of the EA executive responsible for negotiating the license agreement.

24   *See* Slaughter Decl., ¶ 3.  Because the waiver of constitutional rights must clear on the face of the

25   agreement, there can be no other discovery necessary for Plaintiffs to oppose EA's motion.[7]

26   _____

27   the court nevertheless concluded that the admission of the summaries was not clear error.  *Id.* at
     633.  Neither case has any bearing on EA's motion to strike or Plaintiffs' motion to compel.

28   [7]    Plaintiffs suggest that there would be "no burden" associated with EA's production of
     documents from other cases in order to support its waiver argument.  *See* Mot. at 12:2-3 & 10-

11

555952.05

**C.**     **Plaintiffs' Complaints About EA's Other Objections Are Irrelevant Given the Anti-SLAPP Discovery Stay, and Have No Merit in any Case.**

If the Court determines that section 425.16(g) applies here—as it must—and that Plaintiffs' have not carried their burden of proving good cause for the discovery they seek—which they have not—then the Court may simply disregard the remainder of Plaintiffs' motion regarding the propriety of EA's other objections to Plaintiffs' requests. *See Mot. at 12-19*. EA will address Plaintiffs' additional arguments briefly, however, out of an abundance of caution.

As an initial matter, Plaintiffs' repeated contentions that the burden falls on EA as the party objecting to discovery have no merit because this is not an ordinary motion to compel. Both the anti-SLAPP statute and Rule 56(d) put the burden squarely on Plaintiffs to justify why they should be allowed to take discovery here. *See* Cal. Civ. Proc. Code § 425.16(g); *Family Home*, 525 F.3d at 827. Likewise, Plaintiffs' insistence that relevance is defined broadly for discovery purposes fails to take account of the context of this motion. *See Mot. at 13*. Again, under both anti-SLAPP and Rule 56(d), Plaintiffs are not entitled to "broad pretrial discovery," but—at most, on a proper showing—may obtain "comparatively limited discovery for the purpose of showing facts sufficient to withstand" EA's motion. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 265 (1968); *see also* Cal. Civ. Proc. Code § 425.16(g).

**1.**     **Plaintiffs' requests are grossly overbroad, particularly given the restrictions of section 425.16(g) and/or Rule 56(d).**

Plaintiffs have not attempted to defend their discovery requests against EA's overbreadth objections except to assert that EA has not carried its burden to describe the undue burden imposed by the requests. *See Mot. at 18:23-19*. But, again, the burden is on Plaintiffs to justify their requests because EA has filed an anti-SLAPP motion. *See* Cal. Civ. Proc. Code § 425.16(g); *Family Home*, 525 F.3d at 827.

Moreover, Plaintiffs ignore EA's objections that the requests are overbroad as to ***time***. Plaintiffs' requests are temporally unrestricted. *See, e.g.*, RFP 14. But the only game at issue here is *Madden NFL 09*. Plaintiffs do not allege that later editions contain "historic" teams, FAC ¶ 33, and claims targeting earlier editions are time-barred under the applicable two-year statute

---

12. That statement is unsubstantiated and not remotely accurate. *See Slaughter Decl., ¶ 5*.

1  of limitations for publicity-right claims.  *See Christoff v. Nestle USA, INC.*, 47 Cal. 4th 468, 476

2  n.7 (2009) (applying two-year statute of limitations under Cal. Civ. Pro. Code § 339 to California

3  publicity right claim).  Under California's single-publication rule, the statute of limitations for

4  publicity-rights claims begins to run on the date the work at issue was published.[8]  *Alberghetti v.*

5  *Corbis Corp.*, 713 F. Supp. 2d 971, 976-77 (C.D. Cal. 2010).  By Plaintiffs' own allegations,

6  *Madden NFL 09* was the only game containing "historic" teams published within two years of

7  the July 29, 2010 filing of the Complaint.  FAC ¶ 75.

8      Thus, Plaintiffs requests are overbroad by any standard, and certainly are improper under

9  the standards imposed by section 425.15(g) and Rule 56(d), as discussed above.

10      **2.    EA's attorney-client-privilege and attorney-work-product objections are
              entirely proper, and EA is not required to provide a privilege log under**

11      **section 425.16(g).**

12      Plaintiffs disparage EA's privilege objections as "boilerplate," but as Plaintiffs

13  acknowledge in the same breath, such objections may be necessary to preserve the privilege.  *See*

14  *Mot. at 18:3-14*.  Plaintiffs' suggestion that EA should have left out objections that Plaintiffs

15  concede are necessary is nonsensical.

16      Plaintiffs' contention that EA is required to provide a privilege log to preserve its

17  privilege objections during the anti-SLAPP discovery stay also has no merit.  It would subvert

18  the letter and the intent of the anti-SLAPP law to require a defendant to engage in the time-

19  consuming and expensive task of preparing a privilege log—particularly as to requests as

20  overbroad as Plaintiffs'—while EA's anti-SLAPP motion to strike is still pending.  *See* Cal. Civ.

21  Proc. Code § 425.16(g); *Price*, 590 F. Supp. 2d at 1267; *Sipple*, 71 Cal. App. 4th at 247.

22  Plaintiffs' contrary argument must be rejected.

23

24

---

25      [8]      Plaintiffs' conversion, trespass-to-chattels and unjust-enrichment claims do not extend
     the applicable statute of limitations because the claims' gravamen is the same as Plaintiffs' right
26   of publicity claims.  *See Hensler v. City of Glendale*, 8 Cal. 4th 1, 22 (1994).  These tag-along
     claims concerning intangible property rights are subject to Cal. Civ. Proc. Code § 339's two-year
27   statute of limitations.  *See, e.g., Alberghetti*, 713 F. Supp. 2d at 983-84; *Karls v. Wachovia Trust*
     *Co.*, 2010 WL 4233047, at *6 (Cal. App. Oct. 27, 2010) (unpublished); *Italiani v. Metro-*
28   *Goldwtn-Mayer Corp.*, 45 Cal. App. 2d 464, 466-67 (Cal. App. 1941).

13

3.      **EA's objections that Plaintiffs' definitions are vague, ambiguous, and call for or assume legal conclusions are proper.**

Finally, the Court should disregard Plaintiffs' meritless complaints about EA's objections to various terms in the discovery requests, as discussed below.

"**HISTORICAL NFL PLAYER CHARACTERS**":  Plaintiffs define this to mean "the virtual players, characters or avatars that populate the 'historic teams,' 'all time teams' and/or other teams in the MADDEN NFL VIDEO GAME FRANCHISE that consist of NFL players who were retired or not-active during the year in which the game was released." Mot. at 14 n.8. The request implicitly asks EA to admit that the "virtual players" "consist of NFL players"—which is incorrect, and a fundamental legal issue in this case.  EA is not required to assume Plaintiffs' legal conclusions.  *See*, *e.g.*, *Williams v. Williams*, C 07-04464 CW PR, 2010 WL 5115517, at *4 (N.D. Cal. Dec. 9, 2010) (rejecting "discovery request [that] calls for a legal conclusion").  Instead, it was proper for EA to "include any necessary, reasonable definition" of its own, to clarify its answers.  *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996).  EA did so, informing Plaintiffs that EA construes the term at issue to mean "virtual players, characters or avatars that populate the 'historic teams' and 'all time teams' in the Madden NFL video game franchise." Henri Decl. Ex. 4 ¶ 7.  Plaintiffs do not argue that EA's definition is inappropriate, or even acknowledge it in their motion.

"**LIKENESS**":  Plaintiffs' definition of this term is also loaded, asking EA to assume that this everyday English word has a specialized meaning including such case-specific features such as "years pro."  Moreover, Plaintiffs define the term inconsistently across their different discovery requests.  *Compare* Henri Decl., Ex. 1 (Plaintiffs' First Set of Interrogatories to EA) at 2 *with* Id., Ex. 3 (Plaintiffs' First Set of Requests for Admission to EA) at 2.  EA informed Plaintiffs that it would, instead, construe the term "in a manner consistent with ordinary English usage." Henri Decl. Ex. 4 ¶ 9.  This is entirely proper.  *See Pulsecard*, 168 F.R.D. at 310.

"**simulation**":  Plaintiffs make much of the fact that EA has used this term.  But the fact that EA knows what EA means by the term does not imply that it knows what Plaintiffs mean by it.  Plaintiffs have not defined "simulation" in their requests, and offer no hint as to what they

14

555952.05

1  mean by it in their motion.  *See* Mot. at 15:8-22.  Given the importance of the term in the context

2  of this case, Plaintiffs should make clear what they mean by it.

3          **"RETIRED NFL PLAYERS"**:  Plaintiffs define this term to refer to the purported class

4  in this putative class action.  But EA disputes that there is any such class that can satisfy the

5  requirements of Rule 23.  If Plaintiffs defined this term as it is ordinarily understood, EA would

6  have no objection.  But given Plaintiffs' improper attempt to smuggle a legal conclusion into

7  their definition, EA's objection is appropriate.  *See Williams*, 2010 WL 5115517, at *4.

8          **"ACTIVE NFL PLAYERS"**:  Plaintiffs seem to use this term as the complement of

9  "RETIRED NFL PLAYERS," which is objectionable for the reasons just described.  *Compare*

10  Henri Decl., Ex. 4 (Interrogatory Nos. 4 & 9).  If that is Plaintiffs' intention, this definition is

11  objectionable because it cannot be understood except by reference to another objectionable term.

12  Inconsistently with their own usage, Plaintiffs define the term to mean "players who are

13  members or on the roster of current or active teams in the year in which a video game was

14  released."  *See* Henri Decl. Ex. 1 ¶ 9.  It is unclear what the distinction is between "members"

15  and those who are on the roster, and between "current" and "active" teams.  And it is also

16  unclear whether Plaintiffs seek to import their legal conclusion about class status into this term

17  as well as "RETIRED NFL PLAYERS."

18          In any case, regardless of these comparatively minor—and ultimately irrelevant—

19  disputes, the fundamental point remains that Plaintiffs' motion to compel fails because discovery

20  is stayed under section 425.16(g).

21                  **IV.**    **CONCLUSION**

22          The anti-SLAPP statute provides immunity from discovery in cases, like this one, that

23  seek to restrict freedom of speech—the "matrix, the indispensable condition, of nearly every

24  other form of freedom."  *Curtis*, 388 U.S. at 145; *see* Cal. Civ. Proc. Code 425.16(g).  This

25  discovery immunity is entirely consistent with the federal rules, and thus, under *Erie*, must be

26  enforced in this Court.  *See*, *e.g.*, *Siegert*, 500 U.S. at 232; *Walker*, 446 U.S. at 750.  This Court

27  should, therefore, deny Plaintiffs' motion to compel.

28

1    Dated:  May 19, 2011                          KEKER & VAN NEST LLP

2

3

4                                          By:  /s/ R. James Slaughter
                                               R. JAMES SLAUGHTER
5                                              Attorneys for Defendant
                                               ELECTRONIC ARTS INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EA'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
CASE NO. 10-CV-3328-RS (DMR

555952.05