UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. DAVIS, et al., | No. C-10-03328 RS (DMR) |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL** |
| v. | |
| ELECTRONIC ARTS INC., | |
| Defendant. | |

Before the Court is Plaintiffs' Motion to Compel Responses to Discovery. [Docket No. 50.] Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel at the June 16, 2011 hearing, the Court GRANTS IN PART Plaintiffs' Motion to Compel Responses to Discovery. This Order summarizes the rulings made by the Court on the record during the June 16, 2011 hearing.

**I. Factual and Procedural Background**

Plaintiffs Michael E. Davis, Vince Ferragamo, and Billy Joe Dupree are retired NFL football players. In July 2010, they filed a complaint on behalf of themselves and a proposed class of approximately 6,000 retired NFL players against Defendant Electronic Arts, Inc. ("EA"), a developer and publisher of video games. The complaint alleges that EA violated Plaintiffs' statutory and common law rights of publicity through unauthorized use of their likenesses in EA's *Madden NFL* video game franchise.

On January 6, 2011, EA moved to strike Plaintiffs' claims pursuant to California Code of Civil Procedure section 425.16, known as the "anti-SLAPP" statute. EA's anti-SLAPP motion asserts that EA's use of Plaintiffs' likenesses in *Madden NFL* qualifies for First Amendment protection under various tests, including the "transformative use" test, and that Plaintiffs' claims therefore should be dismissed. The parties subsequently filed a stipulated request that the Court continue the hearing on the anti-SLAPP motion until July 2011. On January 31, 2011, the Honorable Richard Seeborg issued an order denying EA's anti-SLAPP motion without prejudice, and ordered that EA could re-file its anti-SLAPP motion following the initial case management conference in April 2011. [Docket No. 35.]

On February 2, 2011, Plaintiff Davis served EA with his first sets of interrogatories, requests for admissions, and requests for the production of documents. On March 4, 2011, EA served objections to the discovery and refused to provide substantive responses on the grounds that California Code of Civil Procedure section 425.16(g) automatically stays all discovery during the pendency of an anti-SLAPP motion.[1]

In this motion, Plaintiffs argue that the rules regarding discovery during the pendency of an anti-SLAPP motion differ in federal court from those applied in state court actions. Specifically, Plaintiffs argue that section 425.16(g), the provision staying discovery upon the filing of an anti-SLAPP motion, is not applicable in federal court because it conflicts with Federal Rule of Civil Procedure 56(d). *See Metabolife Int'l. Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (holding that "discovery-limiting aspects" of California's anti-SLAPP statute "collide with the discovery-allowing aspects of Rule 56"). Plaintiffs argue that they are entitled to discover information that is within Defendant's exclusive control and that is probative of the issues raised in the anti-SLAPP motion. Plaintiffs seek an order compelling EA to respond to discovery regarding EA's affirmative defense that its use of retired NFL players' likenesses qualifies for First Amendment protection

---

[1] On March 2, 2011, Judge Seeborg issued an order on EA's miscellaneous administrative request instructing the parties to proceed with discovery as though EA's anti-SLAPP motion were on file as of January 6, 2011. [Docket No. 44.] In the order, the Court clarified that "[n]o consideration [had] been given to the parties' discovery related issues as those issues [were] not before the court." EA re-filed its anti-SLAPP motion, along with a motion to dismiss the complaint, on June 9, 2011. A hearing on both motions is scheduled for August 25, 2011.

under the transformative use test, as well as information probative of the claim that EA contractually waived its First Amendment rights.

## II. Legal Standards

Known as the "anti-SLAPP" statute, California Code of Civil Procedure section 425.16 "was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife*, 264 F.3d at 839. "The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-972 (9th Cir. 1999) (citing *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994)). To protect the public's interest in "participation in matters of public significance," section 425.16(b) provides that any "cause of action against a person arising from any act of that person in furtherance of that person's right of . . . free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(a), (b).

Consideration of an anti-SLAPP motion involves a two-step process:

> The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."[2]

*Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). In making these determinations, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id*. (quoting Cal. Code Civ. Proc. § 425.16(b)(2)).

---

[2] "At the second step of the anti-SLAPP inquiry, the required probability that [plaintiff] will prevail need not be high." *Keller v. Elec. Arts, Inc.*, No. 09-1967, 2010 U.S. Dist. LEXIS 10719, at *34 (Feb. 8, 2010), *argued*, No. 10-15387 (9th Cir. Feb. 16, 2011) (quoting *Hilton v. Hallmark Cards*, 580 F.3d 874, 888-89 (9th Cir. 2009)).

3

1       An anti-SLAPP motion "may be filed within 60 days of the service of the complaint, or in
2 the court's discretion, at any later time upon terms it deems proper." Cal. Code Civ. Proc. §
3 425.16(f). Furthermore, discovery is automatically stayed and the opposing party must demonstrate
4 "good cause" under section 425.16(g) to justify "specified discovery" as an exception to the stay.
5 *See* Cal. Code Civ. Proc. § 425.16(g). "Together, these two subsections 'create a default rule that
6 allows the defendant served with a complaint to immediately put the plaintiff to his or her proof
7 before the plaintiff can conduct discovery.'" *Metabolife*, 264 F.3d at 846 (quoting *Rogers v. Home
8 Shopping Network, Inc.*, 57 F. Supp. 2d 973, 980 (C.D. Cal. 1999)).

9       In *Lockheed*, the Ninth Circuit held that certain provisions of California's anti-SLAPP statute
10 may be invoked in federal court. Applying *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), the Court
11 held that there is no direct conflict between section 425.16, subdivisions (b) (providing the
12 availability of the special motion to strike) and (c) (providing for attorneys' fees) and the Federal
13 Rules of Civil Procedure, and that the purposes of *Erie* would be advanced by adopting the
14 California procedural rules. Therefore, those provisions may be used in federal court. *Lockheed*,
15 190 F.3d at 973.

16      Two years later, in *Metabolife*, the Ninth Circuit addressed the applicability in federal court
17 actions of the discovery stay provision embodied in section 425.16(g). The Court discussed the
18 potential collision that would occur between the expedited procedures in the anti-SLAPP statute and
19 Federal Rule of Civil Procedure 56, if the anti-SLAPP motion were used in federal court to test the
20 plaintiff's evidence before the plaintiff has completed discovery. *Metabolife*, 264 F.3d at 846
21 (discussing *Rogers*, 57 F. Supp. 2d at 980). Comparing section 425.16(g) with Rule 56, the Ninth
22 Circuit noted that "[a]lthough Rule 56[] facially gives judges the discretion to disallow discovery
23 when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme
24 Court has restated the rule as requiring, rather than merely permitting, discovery 'where the
25 nonmoving party has not had the opportunity to discover information that is essential to its
26 opposition.'" 264 F.3d at 846 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5
27 (1986)). Therefore, the Ninth Circuit concluded that California's automatic discovery stay
28 mechanism should not apply in federal court actions "[b]ecause the discovery-limiting aspects of §

425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56 . . . ." *Metabolife*, 264 F.3d at 846.

### III. Discussion

Defendant argues that *Metabolife* is inapposite and that section 425.16(g) applies in this case. According to Defendant, the anti-SLAPP motion at issue in *Metabolife* was akin to a motion for summary judgment. By contrast, the anti-SLAPP motion now before the Court identifies legal defects in the complaint while accepting its factual allegations as true and does not rely on evidence outside the complaint. Therefore, Defendant argues that its anti-SLAPP motion must be treated as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, and accordingly, there is no conflict between the stay on discovery and Rule 56(d). In the alternative, Defendant argues that if the discovery stay does not apply, then Plaintiffs' requested discovery is not narrowly tailored to opposing the anti-SLAPP motion, and should be disallowed.

For purposes of the section 425.16(g) discovery stay provision, at least one court has noted a distinction between an anti-SLAPP motion that is in the nature of a Rule 12(b)(6) motion to dismiss and one that presents issues of fact, akin to a Rule 56 summary judgment motion. In *Aeroplate Corp. v. Arch Insurance Co.*, the Court described the general rule from *Metabolife* and *Rogers* as follows: "the discovery-limiting provisions of section 425.16, subdivisions (f) and (g), collide with the discovery-permitting provisions of Rule 56, and therefore are not available in federal court unless either: (1) the factual basis of the case has been developed through discovery or similar prior proceedings to the extent a motion for summary judgment would be appropriate; (2) the parties agree that further discovery is not necessary; or (3) *the only issue presented by the motion is an issue of law* and the motion is suitable for decision as a motion to dismiss pursuant to Rule 12(b)(6)." No. 06-1099, 2006 WL 3257487, at *9 (E.D. Cal. Nov. 9, 2006) (internal citations omitted, emphasis added). In other words, *Aeroplate* noted that if a particular anti-SLAPP motion requires no factual evaluation, there is no collision between section 425.16(g) and Rule 56.

That is not the case here. Assuming that EA is able to meet its initial burden of establishing that the challenged causes of action arise from protected free speech activity, the Court necessarily must engage in some factual evaluation at the second step of the anti-SLAPP process in order to

determine whether Plaintiffs have demonstrated a probability of prevailing on their claims. Here, EA seeks to defeat Plaintiffs' right of publicity claim by showing that it has a complete defense. Specifically, EA argues that the use of Plaintiffs' likenesses in *Madden NFL* qualifies for First Amendment protection under the "transformative use" test, and therefore Plaintiffs' causes of action are barred as a matter of law. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676 (2005) ("Generally, a defendant may defeat a cause of action by showing the plaintiff cannot establish an element of its cause of action *or* by showing there is a complete defense to the cause of action . . .") (emphasis in original); *see also Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 398-399 (2004) (noting the anti-SLAPP statute contemplates consideration of the merits of the plaintiff's case "as well as all available defenses to it.").

Consequently, in order for Plaintiffs to make their required showing at the second step of the anti-SLAPP analysis, Plaintiffs must meet "an *evidentiary burden, not a pleading requirement*. The court must consider the pleadings and the evidence submitted by the parties; it cannot weigh the evidence but instead must simply determine whether the [plaintiffs'] evidence would, if credited, be sufficient to meet its burden of proof." *Flores v. Emerich & Fike*, No. 05-0291, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) (internal citations omitted, emphasis in original). The Court may also consider Defendant's opposing evidence to determine whether it defeats Plaintiffs' case as a matter of law. *Traditional Cat Ass'n*, 118 Cal. App. 4th at 398.

In sum, while it is generally Defendant's burden to prove its affirmative defense (*see Peregrine*, 133 Cal. App. 4th at 676), Plaintiffs are entitled to present evidence to counter that defense in order to satisfy their burden at the second step of the court's anti-SLAPP inquiry. Accordingly, the Court concludes that the section 425.16(g) discovery stay collides with Rule 56(d) and should not be applied in this case.

The Court next turns to the specific discovery at issue in this motion. Plaintiffs urge the Court to compel Defendant to respond to a significant amount of discovery -- over 30 requests for admission, 27 requests for the production of documents, and eight interrogatories -- arguing that Plaintiffs are entitled to broad discovery of "information that [is] in EA's exclusive control and [is]

probative of the issues raised in EA's anti-SLAPP motion." (Pls.' Reply Br. [Docket No. 60] 6.) Defendant argues that, if allowed at all, discovery must be analyzed under Rule 56(d)'s requirement that the requested discovery be "essential" to opposing the motion.

Although the section 425.16(g) discovery stay should not be applied in this case, the Court is nevertheless mindful of the policy considerations supporting California's anti-SLAPP statutory scheme, and in particular, the statute's goal of "early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife*, 264 F.3d at 839. Permitting wide-ranging discovery of matters that are merely "probative of" or "relevant to" the issues in an anti-SLAPP motion would subvert the intent of the anti-SLAPP statute by delaying adjudication of the anti-SLAPP motion and increasing the financial burden on Defendant. *See Price v. Stossel*, 590 F. Supp. 2d 1262, 1267 (2008) (discussing the good cause standard for discovery under the anti-SLAPP statute). Moreover, the Court notes that in concluding that section 425.16(f) collides with Rule 56, the Court in *Metabolife* relied on the Supreme Court's statement in *Liberty Lobby* that a court is required to permit discovery "where the nonmoving party has not had the opportunity to discover information that is *essential to its opposition*" to a summary judgment motion. 264 F.3d at 846 (quoting *Liberty Lobby*, 477 U.S. at 250 n.5) (emphasis added).

Therefore, the Court concludes that the appropriate standard by which Plaintiffs' discovery should be evaluated is whether a request is "essential" to Plaintiff's opposition to the anti-SLAPP motion. Application of this standard, as opposed to the "probative" or "relevant" standards urged by Plaintiffs, honors the policy behind California's anti-SLAPP statute and advances the "twin purposes of the *Erie* rule- 'discouragement of forum-shopping and avoidance of inequitable administration of the law.'" *Lockheed*, 190 F.3d at 973 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

The discovery at issue in this motion can be divided into two subjects: (1) EA's affirmative defense based on the transformative use test[3] and (2) Plaintiffs' assertion that EA waived its First Amendment rights as a result of licensing agreements regarding its use of NFL player likenesses.

A defendant may raise an affirmative defense that a challenged work is "protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame." *Comedy III Prods., Inc. v. Saderup*, 25 Cal. 4th 387, 407 (2001). To determine whether a work is transformative, a court must inquire:

> whether the celebrity likeness is one of the "raw materials" from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question. We ask, in other words, whether a product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness. And when we use the word "expression," we mean expression of something other than the likeness of the celebrity.

*Id*. at 406. In making a transformative use determination, Defendant argues that the Court need only view the video games at issue to determine whether Plaintiffs' alleged likenesses are one of several "raw materials" comprising the work, or whether they are the "sum and substance" of the work. According to Defendant, if the Court "observes that the game is synthesized from other raw materials in addition to Plaintiffs' alleged likenesses, the work is 'transformative' and no further analysis is required to bar Plaintiffs' claims under the First Amendment." (Def.'s Opp'n [Docket No. 58] 9.) Therefore, Defendant argues, since the Court may resolve the question of whether EA's use of Plaintiffs' alleged likenesses is transformative by simply viewing the games themselves, discovery pertaining to this issue is not essential to Plaintiffs' opposition.

---

[3] Plaintiffs also seek an order compelling responses to discovery they claim is necessary to rebut statements contained in the declaration of an executive producer of the video games submitted in support of Defendant's anti-SLAPP motion. Defendant claims that the declaration is nothing more than a summary of voluminous information pursuant to Federal Rule of Evidence 1006. Defendant asserts that the declaration merely explains the basics of how the video games work, thereby saving the Court from countless hours of having to play the video game itself in order to obtain the same information. Plaintiffs assert that the statements in the declaration go well beyond a mere summary of information, and bear on how Defendant used Plaintiffs' likenesses in the video games and whether Defendant transformed the likenesses. Since such discovery is not essential to opposing the anti-SLAPP motion, the Court does not authorize any discovery directed at the declaration. The Court expresses no opinion as to whether the declaration is proper under Rule 1006, as such a ruling is more appropriately made by Judge Seeborg upon consideration of the anti-SLAPP motion itself.

In determining whether a likeness of an individual has been sufficiently transformed, courts focus on the depiction of the individual, comparing the similarities and differences between the work in question and the individual's likeness. *See Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 59 (2006) (concluding video game character "Ulala" was "more than a mere likeness or literal depiction of [plaintiff]" given differences in attire, setting, and physical movements); *Keller*, 2010 U.S. Dist. LEXIS 10719, at *16 (finding depiction of plaintiff insufficiently transformative where video game player character wore "same jersey number, [was] the same height and weight and hail[ed] from the same state," and represented plaintiff as what he was, "starting quarterback for Arizona State University.").

Thus, in order to conduct its comparison of the work in question and Plaintiffs' likenesses, the Court cannot solely look to the video games themselves, devoid of any context or reference, as Defendant urges. The Court must be provided with a baseline understanding of which individuals' likenesses should be compared to which particular player characters in the video games. In addition, Plaintiffs (and the Court) should have access to Defendant's contentions regarding the transformative use defense, as well as the basic supporting documents. The Court finds that such discovery is essential to Plaintiffs' opposition to Defendant's anti-SLAPP motion.

However, because the Court will conduct a *visual* comparison of the work in question and Plaintiffs' likenesses, information related to the actual process of transformation of Plaintiffs' likenesses, such as the fields of data used to create the player characters and source information for the fields of data, is not essential for the Court to make its determination. Further, as a class has not yet been certified in this case, discovery is limited to the three named plaintiffs.

Plaintiffs also seek discovery directed at the issue of whether Defendant waived its First Amendment rights as a result of licensing agreements governing EA's use of former NFL player likenesses in its video games. Plaintiffs seek to obtain complete, unredacted copies of the licensing agreements at issue, the correspondence relating thereto, and copies of deposition testimony from Defendant's witnesses regarding licensing.

In *Navellier v. Sletten*, the California Supreme Court applied the two-step anti-SLAPP analysis and held that a party's First Amendment rights can be waived via a validly formed contract.

29 Cal. 4th 82, 94 (2002). "[A] defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches a contract." *Id*. However, the Supreme Court has held that "a waiver of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 94 (1972). In other words, a contract must show waiver of a constitutional right on its face. *Id*. ("We need not concern ourselves with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver.").

The Court concludes that discovery related to the issue of whether Defendant waived its First Amendment rights is essential to Plaintiffs' opposition to the anti-SLAPP motion. However, as any waiver of First Amendment rights by Defendant must be clear on the face of the licensing agreements at issue, only the agreements themselves, and not correspondence relating thereto or deposition testimony about the agreements, are essential to the opposition. Furthermore, the only agreements essential to Plaintiffs' opposition to the anti-SLAPP motion are those regarding the 2008 and 2009 versions of the games specifically at issue in this lawsuit.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion to compel is granted as follows: Defendant is ordered to answer requests for admission asking Defendant to admit that (1) player characters are based upon actual players; (2) Defendant used characteristics of actual players to create player characters; (3) specific player characters in the games depict Plaintiffs Davis, Ferragamo, and Dupree; and (4) specific player characters in the games contain characteristics of Plaintiffs Davis, Ferragamo, and Dupree. Defendant is ordered to answer interrogatories asking Defendant to (1) describe how Defendant assigned jersey numbers to player characters, and (2) state all facts on which Defendant bases its assertion that its use of likenesses of actual players is "transformative." With respect to requests for the production of documents, Defendant is ordered to produce documents regarding (1) the actual identities of the player characters; (2) the "scrambling, alteration, or transformation" of the likenesses of actual players; and (3) the "scrambling, alteration, or transformation" of the characteristics of actual players. For each request for production, Defendant shall limit its production to documents which specifically pertain to Plaintiffs Davis,

Ferragamo, and/or Dupree.  However, Defendants must also produce any documents that speak generally about the transformation of likenesses or characteristics of actual players, where such documents do not specifically identify actual players.  Finally, Defendant is ordered to produce unredacted licensing agreements regarding use of former NFL player likenesses in the 2008 and 2009 versions of the video games.

Specifically, **by no later than July 7, 2011**, Defendant shall provide Plaintiffs with responses to the following discovery: Request for Admission Nos. 11, 23-27, 30-35, 38, 39, 42, 43, 46, and 47; Request for Production Nos. 33, 34, and 82; and Interrogatory Nos. 8 and 10.  Defendant shall also produce documents responsive to Request for Production No. 10, limited to agreements covering the 2008 and 2009 versions of the games, to the extent that unredacted copies of such agreements have not already been produced by Defendant to Plaintiffs.  Defendant's response to RFP Nos. 33, 34 and 82 shall be limited to documents regarding any or all of the three named plaintiffs.  However, Defendant's responses to RFP Nos. 33 and 34 shall include documents regarding retired NFL players in general, to the extent that responsive documents address the subject without specifically identifying individual players.

IT IS SO ORDERED.

Dated: July 5, 2011



_____
DONNA M. RYU
United States Magistrate Judge

11