1  BRIAN D. HENRI (State Bar No. 200205)
   *brianhenri@henrilg.com*
2  **HENRI LAW GROUP**
   640 W. California Ave, Suite 210
3  Sunnyvale, California 94806
   Telephone:    (650) 614-5807
4  Facsimile:    (650) 618-1937

5  AUSTIN TIGHE *(admitted pro hac vice)*
   austin@feazell-tighe.com
6  **FEAZELL & TIGHE LLP**
   6618 Sitio Del Rio Boulevard
7  Building C-101
   Austin, Texas 78730
8  Telephone:    (512) 372-8100
   Facsimile:    (512) 372-8140

9
   Attorneys for Plaintiffs
10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                       SAN FRANCISCO DIVISION
13
   MICHAEL E. DAVIS, aka TONY DAVIS,        CASE NO. 10-cv-3328 RS
14 VINCE FERRAGAMO, and BILLY JOE
   DUPREE, on behalf of themselves and all  **RETIRED NFL PLAINTIFFS' REPLY**
15 others similarly situated,               **BRIEF IN SUPPORT OF MOTION FOR**
                                            **CLASS CERTIFICATION**
16            Plaintiffs,
                                            Date:        September 22, 2016
17       vs.                                Time:        1:30 P.M.
                                            Dept.        Courtroom 3, 17th Floor
18 ELECTRONIC ARTS, INC.,                   Judge        Hon. Richard Seeborg

19            Defendant.                    Date Filed:  July 29, 2010

20                                          Trial Date:  TBD

21

22

23

24

25

26

27

28
   106346

# TABLE OF CONTENTS

**Page**

ARGUMENT ..........................................................................................................1

I.    ALL CLASS MEMBERS MAY BRING CASLIFORNIA LAW CLAIMS............1

      A.    California Law Is Presumed to Apply..........................................................1

      B.    EA Fails To Satisfy Its Burden Of Establishing Foreign Law Should
          Apply...........................................................................................................1

          1.   EA Fails to Satisfy Its Burden of Establishing a "True Conflict" ...........2

              a.    Living persons' rights of publicity are not property rights. ............3

              b.    EA's assertion that *Downing* has been impliedly overruled
                   by recent consumer protection cases is erroneous. ........................6

          2.   California's Interests Outweigh the Interests of Other States...................7

II.    PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23 ........................8

      A.    The Proposed Class Is Ascertainable. .......................................................8

      B.    Plaintiffs Are Adequate Class Representatives...........................................9

      C.    Common Issue Predominate Plaintiffs' Claims..........................................11

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

<u>Cases</u>

*Adeljalil v. General Elec. Capital Corp.,*
306 F.R.D. 303 (S.D. Cal. 2015).................................................................................... 9

*Amchem Product v. Windsor,*
521 U.S. 591 (1997) ..................................................................................................... 11

*Cairns v. Franklin Mint Co.,* ("Cairns I")
24 F. Supp.2d 1013 (C.D. Cal. 1998).......................................................................... 4, 6

*Cairns v. Franklin Mint,*
292 F.3d 1139 (9th Cir. 2002)........................................................................................ 5

*Campbell v. Facebook Inc.,*
315 F.R.D. 250 (N.D. Cal. 2016) ................................................................................... 8

*Carson v. Here's Johnny Portable Toilets, Inc.,*
698 F.2d 831 (6th Cir. 1983)........................................................................................ 13

*Chavez v. Blue Sky Natural Beverage Co.,*
268 F.R.D. 365 (N.D. Cal. 2010) ................................................................................... 8

*Christoff v. Nestle USA, Inc.,*
47 Cal. 4th 468 (2009).................................................................................................. 18

*Davis v. Electronic Arts Inc.,*
775 F.3d 1172 (9th Cir. 2015)....................................................................................... 12

*Downing v. Abercrombie & Fitch,*
265 F. 3d 994 (9th Cir. 2001).................................................................................*passim*

*Gibson v. Local 40,*
543 F.2d. 1259 (9th Cir. 1976)........................................................................................ 9

*Greyhound Lines, Inc. v. County of Santa Clara,*
187 Cal.App.3d 480 (1986)............................................................................................. 5

*In re Student Athlete Name & Likeness Licensing Litigation,* 724 F. 3d 1268 (9th Cir. 2015) ........ 8

1  *In Re Yahoo,*

2   308 F.R.D. 577 (N.D. Cal. 2015) ......................................................................... 6, 7

3  *INS v. Cardoza-Fonseca,*

4   480 U.S. 421 (1987) ................................................................................................ 5

5  *Internet Specialties West, Inc. v. Milon-Digiorgi Enters., Inc.,*

6   2006 U.S. Dist. LEXIS 96351 (C.D. Cal. Nov. 14, 2006) ..................................... 18

7  *Kearney v. Solomon Smith Barney, Inc.*

8   39 Cal.4th 95 (2006)................................................................................................ 2

9  *Keller v. Electronic Arts Inc.,*

10   2013 WL 5979327 (N.D. Cal., Nov. 8, 2013) ....................................................... 10

11  *Keller v.* Electronic Arts Inc.,

12   2015 WL 5005901 (N.D. Cal., Aug, 18, 2015) ...................................................... 9

13  *Knutson v. Schwan's Home Service, Inc.,*

14   2013 WL 4774763 (S.D. Cal, Sep. 5, 2013) ......................................................... 8

15  *Lightbourne v. Printroom,*

16   307 F.R.D. 593 (C.D. Cal., July 30, 2015)......................................................... 5, 6

17  *Lugosi v. Universal Pictures,*

18   25 Cal.3d. 813 (1979)........................................................................................ 4, 5

19  *Miller v. CMG Worldwide, Inc.,*

20   318 F. Supp. 2d 923 (C.D. Cal. 2004) ................................................................. 17

21  *Maza v. American Honda v. Motor Co.,*

22   666 F.3d.591 (9th Cir. 2012)............................................................................ 6, 7

23  *Motschenbacher v. Reynolds Tobacco Co.,*

24   498 F.2d. 821 (9th Cir. 1974)................................................................... 3, 4, 13, 14

25  *Nat'l Fed. 'n of the Blind v. Target Corp.,*

26   2007 WL 1223755 (N.D. Cal., April 25, 2007) ..................................................... 9

27  *Newcombe v. Adolf Coors Co.,*

28   157 F.3d 686 (9th Cir. 1998).............................................................................. 12

3

1  *Parish v. NFLPA*,

2  2008 WL 1925208 (N.D. Cal. April., 29 2008) ................................................................ 10

3  *Pecover v. Electronic Arts Inc.*,

4  2010 WL 8742757 (N.D. Cal. Dec., 21 2010) ............................................................... 1, 2

5  Petersen *v. Costco Wholesale Co. Inc.*,

6  312 F.R.D. 565, 575 (C.D. Cal. 2016) ......................................................................... 8

7  *Rams v. Def Jam Recordings, Inc.*,

8  2016 WL 4399289 (S.D. NY, Aug. 15, 2016) ............................................................. 6

9  *See Parrish v. NFLPA*,

10  2008 WL 1925208 (N.D. Cal, April 29, 2008) ......................................................... 11

11  *Sullivan v. Oracle Corp.*,

12  51 Cal.4th 1191 (2011) ................................................................................................ 2

13  *White v. Samsung Electronics America, Inc.*,

14  971 F. 2d 1395 (9th Cir. 1991) ................................................................................. 13

15  *Wolph v. Acer Am. Corp.*,

16  272 F.R.D. 477 (N.D. Cal. 2011) .............................................................................. 8

17  *Zacchini v. Scripps-Howard Broadcasting Co.*,

18  433 U.S. 562 (1976) .................................................................................................. 11

19
                                        <u>Statutes</u>
20
    Cal. Civ. Code§ 339 ................................................................................................... 15
21
    Cal. Civ. Proc. Code § 1858 ......................................................................................... 5
22
    Cal. Code Civ. Proc. § 343 .......................................................................................... 15
23
    Cal. Probate Code § 6804 ............................................................................................. 4
24
    Cal. Civ. Code § 3344 ......................................................................................... 4, 6, 12
25
    Cal. Civ. Code § 3344.1(b) ........................................................................................... 4
26
    Cal. Civ. Code § 946 ........................................................................................... 3, 5, 6
27

28

<u>Other Authorities</u>

Prosser, Privacy, 48 Cal. L. Rev. 383, 401 ................................................................. 13

<u>Rules</u>

Fed.R.Civ.P. 23 ................................................................................................ 8, 9, 11

Fed.R.Evid. 502(a) ...................................................................................................... 9

<u>Treatises</u>

McCarthy, The Rights of Publicity and Privacy .......................................................... 3

Prosser, Law of Torts (4th Ed. 1971) .......................................................................... 4

1

2                                      **ARGUMENT**

3   **I. ALL CLASS MEMBERS MAY BRING CALIFORNIA LAW CLAIMS**

4           EA concedes that this Court should apply California's choice of law rules to determine the

5   controlling substantive law. *See* Opposition ("Op.") p. 7, fn. 16.

6               **A.   California Law is Presumed to Apply.**

7           EA fails to address the evidence and argument in Plaintiffs' Motion for Class Certification

8   ("Motion") establishing that California has sufficient contacts to the claims of each class member

9   so that the application of California law to the nationwide class comports with due process. *See*

10  Motion pp. 8 – 11; *see also Pecover v. Electronic Arts Inc.,* 2010 WL 8742757 (N.D. Cal. Dec., 21

11  2010) at * 19 (finding California has sufficient Constitutional contacts to the nationwide class

12  claims of purchasers of *Madden NFL* video games including: (1) EA's California headquarters; (2)

13  *Madden NFL* licensing decisions are made in California; (3) EA's distribution contracts for

14  *Madden NFL* contain California choice of law provisions; (4) EA includes the address for its

15  California headquarters on the packaging of each game).  Accordingly, EA has tacitly waived the

16  issue and there is a presumption California law applies to the claims at issue.  Id.  In addition, EA

17  bears the burden of establishing that a foreign state's law should apply.  *Id.*

18          **B.   EA Fails to Satisfy Its Burden of Establishing Foreign Law Should Apply.**

19          In *Downing v. Abercrombie & Fitch,* 265 F. 3d 994 (9th Cir. 2001), the Ninth Circuit held

20  that California's three-step governmental interest analysis applies to determine choice of law

21  questions regarding living persons' right of publicity claims.  *Id.* at 1005.  Under this analysis:

22          (1) [t]he court examines the substantive laws of each jurisdiction to determine
            whether the laws differ as applied to the relevant transaction, (2) if the laws do
23          differ, the court must determine whether a true conflict exists in that each of the
            relevant jurisdictions has an interest in having its laws applied; and (3) if more
24          than one jurisdiction has a legitimate interest...the court [must] identify and
            apply the law of the state whose interest would be more impaired if its law were
25          not applied.

26  *Id.* As set forth in the Motion, Plaintiffs do not dispute that there are differences in states' right of

27  publicity laws, but demonstrate that no "true conflict exists" in the application of California law to

28

1

1  the conduct at issue which emanated from California.  Next, even if there were a conflict,

2  California law would still apply because its interests would be more impaired if it's laws were not

3  applied.  Id. EA's assertions to the contrary are easily refuted.

4              **1.   EA Fails to Satisfy Its Burden of Establishing a "True Conflict."**

5        EA concedes that if state laws differ, courts must proceed to the second step of the

6  governmental interest analysis to "examine[] each jurisdiction's interest in the application of its

7  own law under the circumstances of the particular case to determine whether a true conflict

8  exists." *Kearney v. Solomon Smith Barney, Inc.* 39 Cal.4th 95, 107-108 (2006); Op. p. 9.  In other

9  words, it is not enough for EA to show that state laws differ, or even that they would lead to

10  different outcomes: rather there must a "true conflict" between "each jurisdiction's interest in the

11  application of its own laws under the circumstances of the particular case…" *See Sullivan v.*

12  *Oracle Corp.,* 51 Cal.4th 1191, 1203 (2011).

13        As discussed in detail in the Motion, the *Downing* Court addressed whether California law

14  should apply to right of publicity claims raised by Hawaiian plaintiffs for conduct that emanated

15  from California.[1]  The Court found that there were differences in California and Hawaii right of

16  publicity law – including the available remedies -- under the first step of the governmental interest

17  test.  Under the second step, however, the *Downing* Court found that no "true conflict existed"

18  because California provided broad remedies for violation of the right of publicity, and Hawaii

19  "had no interest in limiting the extent of relief that its residents could obtain for a wrongful act

20  against them in California." *Id.* at 1006-7.[2]

21        EA does not dispute that here, as in *Downing,* the relevant conduct at issue emanated from

22

_____

23  [1] In *Downing* the defendant clothing manufacturer obtained photographs of famous Hawaiian

24  surfers for its catalog and made decisions related thereto in California.

25  [2] In addition, in *Pecover,* Chief Judge Walker likewise determined that California law applied to
    nationwide class claims against EA pertaining to licensing decisions for its Madden NFL video

26  games that occurred in California because: "California has an interest in enforcing its laws within
    its borders" and foreign states do not have interest in limiting the recovery of their residents under

27  California law for conduct that occurred in California. *Pecover v. Electronic Arts Inc.,* 2010 WL
    8742757 (N.D. Cal. Dec., 21 2010) at * 20.

28  (footnote continued)

1  California.  Specifically, it is undisputed that all licensing decisions related to the Madden NFL

2  video games – including the decisions to use the Retired NFL Class Members likenesses without a

3  license or authorization – were made by EA's Business Affairs and Legal Department located in

4  California.  *See* DKT No. 173-1,(Decl. J. Linzner).  It is also undisputed that EA's headquarters is

5  in California and that Madden NFL video games are published by EA in California.[3]  *See* Dkt No.

6  173-1 p.2 (EA website).  Because California law provides broad remedies, EA is a California

7  resident, and the conduct at issue emanated from California, there is no "true conflict" in the

8  application of California law to the nationwide Class claims.  *Downing,* 265 F. 3d at 1006-7.

9       EA does not dispute that the Ninth Circuit's holding in *Downing* is directly on point, or

10  that under *Downing* California law will apply to the nationwide class claims.  EA instead offers

11  two arguments.  First, EA asserts that the right of publicity is a property right and therefore under

12  California choice of law rule for property (Civ. Code § 946), the law of each class member's

13  domicile must apply.  Second, EA asserts that recent consumer protection cases have impliedly

14  overruled *Downing.*  As set forth below, EA is wrong on both of its assertions.

15       **a.  Living Persons' Rights of Publicity Are Not "Property Rights."**

16       According to EA, "'[t]he courts have universally held that the right of publicity is a

17  property right.'"  *Op.* p. 10 (quoting McCarthy, The Rights of Publicity and Privacy, at 10:7).[4]

18  Not so.  Both the Ninth Circuit and California Supreme Court recognize that Courts have

19  protected the economic rights to exploit an individual's interest in his or her identity under

20  theories of privacy, property, and right of publicity.  *See Motschenbacher v. Reynolds Tobacco*

21

---

22  [3] Additional facts cited in the Motion and undisputed by EA include that: (i) its principal place of
23  business is in California; (ii) its marketing, publishing, and distribution departments headquarters
    are in California; (iii) its distribution agreements for Madden NFL contain California choice of
24  law provisions; (iv) each copy of its Madden NFL video games lists California headquarters on
25  the packaging; and (v) its end user license agreement contain California choice of law provisions.

26  [4] EA tellingly fails to cite a single California state case finding a living person's right of publicity
    to be a property right or applying California's choice of law rule for property (Civ. Code § 946) to
27  said claim.  EA also fails to address, much less refute, the California law cited in the Motion
    demonstrating that a living person's right of publicity is not a property right.

28  (footnote continued)

1   *Co.,* 498 F.2d. 821, 824-826 (9th Cir. 1974); *see also Lugosi v. Universal Pictures,* 25 Cal.3d. 813,

2   823-824 (1979) (noting same).  More importantly, as discussed in the Motion but conspicuously

3   ignored by EA in its Opposition, the California Supreme Court has held that the statutory and

4   common law rights of publicity are <u>not</u> property rights. *See Lugosi,* 25 Cal.3d. at 823-824.

5        In *Lugosi,* the Court specifically addressed whether the right of publicity is a property right

6   in the context of determining whether the right could be passed to a celebrity's (Bella Lugosi)

7   heirs. *Id.* at 818-19.  The trial court in *Lugosi* found the right of publicity to be a "property right"

8   and therefore concluded that it was descendible.[5]  *Id.*  The California Supreme Court reversed,

9   instead finding that a living person's right of publicity to be a "right of value" that "is embraced in

10  the law of privacy and is protectable during one's lifetime but it does not survive the death of

11  Lugosi." *Id.* at 819.  Furthermore, in rejecting classification of the right of publicity as a property

12  right, the California Supreme Court expressed its agreement with the leading legal scholar: "[w]e

13  agree with Dean Prosser who considers the dispute over this point [i.e. whether the right of

14  publicity is a property right] pointless. [citation omitted]. 'Once protected by the law, (the right

15  of a person to use his name and likeness) …is a right of value upon which the plaintiff can

16  capitalize by selling licenses.'" *Id.* (quoting Prosser, Law of Torts (4th Ed. 1971) p. 107). [6]

17       In direct response to the California's Supreme Court's holding in *Lugosi,* the California

18  Legislature enacted a statutory post-mortem right of publicity.  *See Cairns v. Franklin Mint Co.,*

19  24 F.Supp.2d 1103, 1124 (C.D. Cal. 1998).  Furthermore, in order to make it descendible, the

20  California Legislature expressly made the post-mortem right of publicity a property right: "[t]he

21  rights recognized under this section are property rights, freely transferable or descendible, in

22  whole or in part …." See Civ. Code § 3344.1(b).   In contrast, neither the statutory language for a

23  living person's right of publicity, nor common law, contain language declaring such claims to be a

24  "property right."  *See* Civ. Code § 3344.  Under basic statutory interpretation principles, this Court

25

26  _____

27  [5] Under California law all intangible property is descendible.  *See* Cal. Probate Code § 6804.

    [6] It must also be noted that five years prior to *Lugosi,* the Ninth Circuit likewise expressed its
28  agreement with Dean Prosser on the very same issue. *Motschenbacher,* 498 F.2d. at 825-826.

1   must presume that the California Legislature's act of enacting a post-mortem right of publicity and

2   defining it as a "property right," and excluding such language from the statute for a living person's

3   right of publicity, was intentional.  *See INS v. Cardoza-Fonseca,* 480 U.S. 421, 432 (1987)

4   ("Where Congress includes particular language in one section of a statute but omits it in another

5   section of the same statute, it is generally presumed that the Congress action intentionally and

6   purposefully in the disparate inclusion or exclusion"); *Greyhound Lines, Inc. v. County of Santa*

7   *Clara,* 187 Cal.App.3d 480, 487 (1986) (the "judicial role in interpretation of this statute is simply

8   to ascertain the intent of the Legislature [citations omitted] not to insert what has been omitted, or

9   to omit what has been inserted") (quoting Cal. Civ. Proc. Code § 1858).

10          This clear distinction between living and post-mortem right of publicity law is further

11   reflected by the differences in case law addressing California's choice of law rules.  Because the

12   post-mortem right of publicity is a property right, courts apply California's property choice of law

13   rule (Civ. Code § 946).  *See Cairns v. Franklin Mint,* 292 F.3d 1139, 1147 (9th Cir. 2002).  In

14   contrast, when a living person's right of publicity claims are at issue, courts apply California's

15   three-step governmental interest analysis and do not apply § 946.  *See Downing,* 265 F.3d at 1005.

16          Despite the unambiguous holding in *Lugosi* and the clearly defined distinction between

17   living and post-mortem rights of publicity, EA nevertheless cites *Lightbourne v. Printroom,* 307

18   F.R.D. 593 (C.D. Cal., July 30, 2015), for the proposition that a living person's right of publicity

19   claims is a property right and therefore, pursuant to Civil Code section 946, the law of each Class

20   Members' domicile must apply.  *See* Op. p. 10.  EA does not dispute that the holding *Lightborne*

21   opinion directly contradicts the Ninth Circuit's holding in *Downing,* and the California Supreme

22   Court's holding in Lugosi.  Instead, EA ignores *Lugosi,* and asserts that the Central District's

23   Opinion "establishes that the Ninth Circuit has moved away from *Downing.*"  Op. p. 16.  Contrary

24   to EA's assertion, the holding in *Lightbourne* is erroneous, and factually distinguishable.

25          First, for the reasons set forth above, the *Lightbourne* Court erred by holding a living

26   person's right of publicity claim is a "property right" and erroneously cited a post-mortem right of

27   publicity case (*Comedy III*), in support of its holding.  As of the filing of this Reply, only two

28   cases have cited *Lightbourne* – both after the filing of the Motion – and the single case that

1    examined the *Lightbourne* Opinion rejected the precise argument for which EA cites it.  *See Rams*

2    *v. Def Jam Recordings, Inc.,* 2016 WL 4399289 (S.D. NY, Aug. 15, 2016) at * 6.   Specifically, in

3    *Rams as here,* the defendant cited *Lightbourne* for the proposition that a living person's right of

4    publicity claim is a property right, and therefore, pursuant to Civil Code section 946, the law of

5    the plaintiff's domicile applies to such claims.  The *Rams'* Court rejected this assertion noting that

6    "...the living and post-mortem rights [of publicity] 'are not parallel in all respects' [citation

7    omitted] and that '§ 3344 [the statute pertaining to a living persons claim] contains no definitive

8    statement that the rights protected under the statute are 'property rights.'"  *Id.* at *6 (*quoting*

9    *Cairns I,* 24 F. Supp.2d at 1028).

10          Second, as EA concedes, the *Lightbourne* Court also erred in its analysis of Ninth Circuit's

11   holding in *Downing* by stating that: "Crucially, however, the [*Downing*] court's conclusion that

12   Hawaii lacked an interest in apply its law to plaintiff's claims turned on the fact that Hawaii had

13   no right of publicity claim whatsoever."  *Lightbourne,* 307 F.R.D. at 599.  This is incorrect

14   because, as noted in Downing, Hawaii did have common law claim right of publicity claim.

15   *Downing,* 265 F. 3d at 1007.  Furthermore, the *Downing* Court actually held that even though

16   California law provided greater remedies under its laws than those available in Hawaii, that

17   "Hawaii ... had no interest in limiting the extent of the relief that its residents could obtain for a

18   wrongful act committed against them in California."  *Id.* at 1006-7.  This holding remains good

19   law and therefore there is no "true conflict" in the application of California law to the nationwide

20   Class because foreign states do not have an in interest in limiting their residents' recovery for

21   licensing decisions that were made in California.

### b.   EA's assertion that *Downing* has been impliedly overruled by recent consumer protection cases is erroneous.

22

23

24          EA next asserts "Plaintiffs' argument that 'foreign states do not have an interest in limiting

25   the available recovery of their residents against a California Defendant, for conduct that emanated

26   from California' [citation omitted] is foreclosed by *Mazza, Lightbourne,* and *In Re Yahoo*."  Op. p.

27   10.  EA also cites these same cases for the proposition that "the Ninth Circuit has moved away

28   from *Downing*."  Op. at 16.  EA's assertions are easily refuted.

1    In *Mazza*, the plaintiffs sought to apply California's UCL to a nationwide class of car

2   buyers claiming the defendant failed to warn consumers. *See Mazza v. American Honda*, 666 F.3d

3   591, 587-88 (9th Cir. 2012). The Court noted that "[t]he automobile sales at issue in this case took

4   place within 44 different jurisdictions, and each state has a strong interest in the applying its own

5   consumer protection laws to those transactions." *Id.* st 592. Thus, the Court held that "each

6   foreign state has an interest in applying its laws to transactions within its borders ..." *Id.* at 593.

7    Similarly, the *In re Yahoo* Court addressed consumer's claims relating to Yahoo's practice

8   of intercepting, scanning, and retaining emails sent and received from all 50 states. The Court

9   held that "'each state has an interest in applying its laws to transactions within its borders.'" *See*

10  *In Re Yahoo*, 308 F.R.D. 577, 603 (N.D. Cal. 2015) (*quoting Mazza*, 666 F.3d at 591).

11   EA baldly asserts that the holdings in Mazza and *In re Yahoo* are inconsistent with

12  *Downing*, but it fails to state how. Those holdings are clearly distinguishable because the liability

13  event at issue here is not a retail sale to each class member in his home state, but rather a decision

14  to violate the Retired NFL Class Members' publicity rights made by a California Company in

15  California. In addition, "[t]he right of publicity protects the celebrity not the consumer." *In re*

16  *Student Athlete Name & Likeness Licensing Litigation*, 724 F. 3d 1268, 1281 (9th Cir. 2015).

17  None of the cases cited by EA overturned the Ninth Circuit's decision in *Downing*. To the

18  contrary, *Downing* remains good law, is directly on point, and is binding precedent.

19   Accordingly, EA fails to meet its burden of establishing a "true conflict" in the application

20  of California law to the nationwide Class claims, and therefore California law should apply.

21   **2. California's Interests Outweigh the Interests of Other States.**

22   Even if there were a true conflict, California law would still prevail under the third prong

23  of the government interest test. California's interest in regulating conduct by its residents that

24  occurred in this state outweighs any other state's interest in limiting the amount of recovery to

25  victims. *See Pecover*, 2010 WL 8742757 * 21. Indeed, as EA concedes "California recognizes

26  that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has a

27  predominate interest.'" Op. p. 11 (*quoting Mazza*, 666 F.3d at 593). EA is a California resident, it

28  made the relevant licensing decisions at issue in California and ultimately published the Madden

1  NFL video games from its headquarters in California.  Thus, California has the greatest interest in

2  having its laws apply.   Indeed, even if foreign states had an interest in limiting the recovery of

3  their residents in California courts for conduct in California – which they do not – such an interest

4  would be inferior to California's interest of regulating the conduct of its residents within its state.

5  ## II.    PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23

6       EA does not dispute that Plaintiffs satisfy the numerosity and commonalty requirements of

7  Rule 23.  In addition, the bulk of EA's arguments as to predominance, adequacy, and the entirety

8  of its argument as to superiority, are premised upon its erroneous assertions that the law of each

9  Class Member's domicile applies.  More specifically, EA asserts that the application of different

10  states' laws raises conflicting legal questions that defeat predominance, superiority, and adequacy.

11  Because California law applies to the nationwide class claims, EA's assertions fail.  As set forth

12  below, EA's remaining arguments likewise fail and therefore the Class should be certified.

13  ### A.  The Proposed Class Is Ascertainable

14       Although there is no explicit requirement in Rule 23, "courts have held that the class must

15  be adequately defined and clearly ascertainable before a class action may proceed." *Wolph v. Acer*

16  *Am. Corp.,* 272 F.R.D. 477, 482 (N.D. Cal. 2011).  "The Class definition must be sufficiently

17  definite so that it is administratively feasible to determine whether a particular person is a class

18  member." *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 376 (N.D. Cal. 2010).

19  "Class Certification hinges on whether the identities of the putative class members can be

20  objectively ascertained; the ascertaining of their actual identities is not required. *Knutson v.*

21  *Schwan's Home Service, Inc.,* 2013 WL 4774763 (S.D. Cal, Sep. 5, 2013).   It is well settled law

22  that a class is ascertainable where the defendant maintains a database from which class members

23  may be identified. *See Campbell v. Facebook Inc.*, 315 F.R.D. 250, 259-261 (N.D. Cal. 2016);

24  Petersen *v. Costco Wholesale Co. Inc.,* 312 F.R.D. 565, 575 (C.D. Cal. 2016).

25       As set forth in Plaintiffs' Motion, each Retired NFL Class Member is identified by his

26  actual name, team, number, and other identifying characteristics (age, height etc.) in databases EA

27  generated and used in the creation of the Madden NFL videogames at issue. *See* Databases Bate

28  Nos EA00011670-5 (lodged by Plaintiffs).   EA does not dispute this fact.  EA also does not argue

1    that the Class definition is confusing or imprecise.  Accordingly, the class is ascertainable.

2       EA correctly points out that Plaintiffs are not raising post-mortem right of publicity claims

3    and are only asserting claims on behalf of living Former NFL Players.  According to EA, the Class

4    definition is overbroad and deceased players will "need to be identified and excluded."  Op. p. 18.

5    EA cites no case law establishing that a class definition must exclude claims of deceased potential

6    class members or provide a method for dealing with the heirs of the deceased, and such a rule

7    would provide an unnecessary hurdle.  In addition, the class definition and methodology for

8    ascertaining class members in this case is substantially similar to the definitions and

9    methodologies used and approved by Courts in this district in recent class settlements of right of

10    publicity cases.  For example, in K*eller v. Electronic Arts Inc.,* Judge Wilken approved a

11    settlement class of "[a]ll NCAA football and basketball players listed on the roster of a school

12    whose team was included in an NCAA-Branded Videogame …whose assigned jersey number

13    appears on a virtual player in the software, or who likeness was otherwise included in the

14    software."  *Keller v. Electronic Arts Inc.*, 2015 WL 5005901 (N.D. Cal., Aug, 18, 2015).[7]  There

15    was no carve out for the deceased. Nevertheless, Class Plaintiffs are not opposed to narrowing the

16    definition of the proposed class by adding a sentence to the class definition stating: "Excluded

17    from the Class are Retired NFL Players who are deceased."[8]

18       **B. Plaintiffs' Are Adequate Class Representatives.**

19       EA raises three arguments regarding adequacy and each is without merit.  First, EA repeats

20    its erroneous conflict of laws analysis, and asserts that the application of the law of each Class

21

22

23    [7] EA waived any protections as to the admissibility of the *Keller* Court's Approval Order in future proceeding, by intentionally raising the issue in its Opposition. *See* Fed.R.Evid. 502(a); Op. p. 1.

24    [8] It is common practice and allowable for a plaintiff to narrow the class definition in reply. *See Adeljalil v. General Elec. Capital Corp.,* 306 F.R.D. 303, 306 (S.D. Cal. 2015).  Courts also have

25    broad discretion under Rule 23 to narrow or redefine classes in a manner that will permit the class action procedure. *See Nat'l Fed. 'n of the Blind v. Target Corp.,* 2007 WL 1223755, *3 (N.D. Cal.,

26    April 25, 2007) ("[A]n over-inclusive class definition need not defeat certification …[T]he court has discretion to narrow the class to bring it into the requirements of Rule 23") (*citing Gibson v.*

27    *Local 40,* 543 F.3d. 1259, 1264 (9th Cir. 1976)).  Furthermore, deceased former players can be

28    eliminated in the claims form process or in through a public records search.

1    Members domicile creates a conflict of interest.  *See* Op. pp. 23-24.  As set forth above, EA's

2    argument is without merit.

3           Second, EA asserts that class certification is inappropriate because the players' publicity

4    rights vary in value.  As an initial matter, EA cites no admissible evidence demonstrating a

5    variance in the value of likenesses at issue.  Furthermore, as set forth in Plaintiffs' Motion, several

6    courts in this district have recognized that licensing rights for sports simulation video games are

7    typically done on a group wide basis whereby each player is paid an equal share.  *See Parrish v.*

8    *NFLPA*, 2008 WL 1925208 at * 4 (N.D. Cal, April 29, 2008).  In fact, this is precisely how EA

9    licenses the publicity rights of active NFL players for Madden NFL, and how those royalties are

10   distributed to active NFL players.  *Id.*  In addition, as discussed in detail in the Motion, both Judge

11   Wilken and Judge Alsup recently rejected the assertion that variances in the value of class

12   members' publicity right prohibits class certification.  *Id.* at *3; *Keller v. Electronic Arts Inc.,*

13   2013 WL 5979327 (N.D. Cal., Nov. 8, 2013).

14          It must also be noted EA misrepresents Mr. Dupree's deposition testimony and offers

15   excerpts of testimony out of context. *See Op.* 9. 24, fn 43 citing Dupree Tr. 113:5-114:11, 115:5-

16   116:7116:7.  Mr. Dupree actually testified that: (1) he believed he could do a better job than the

17   NFLPA at negotiating a license; (2) he was aware of the breach of fiduciary claims brought by

18   retried NFL players against the NFLPA (Adderley v. NFLPA) over its failure to negotiate on their

19   behalf; and (3) negotiating an individual license instead of a group license would depend on "if the

20   opportunity presented itself." Dupree Tr. 113:5-117:24. Mr. Dupree's testimony cited by EA does

21   not remotely disqualify him from being an adequate representative.  To the contrary, the fact that

22   this is the best that EA can come up with, after a full day of deposing all three class-

23   representatives and conducting extensive written discovery, demonstrates that all three named

24   plaintiffs are extremely qualified to serve as class representatives.

25          Third, EA asserts that 180 NFL players have told the Court that they do not want Tony

26   Davis to be a class representative.  Op. 24 citing Dkt Nos. 93-95.  Not so.  The exhibits are

27   actually two letters written by two individuals that were submitted more than five years ago by

28   retired NFL players who erroneously believed that the attorney who handled the lawsuit against

1    the NFLPA, and whom they sued for malpractice, was controlling this case.  After these

2    individuals were informed that Mr. Katz is not involved in this case, they no longer object.

3         Finally, Plaintiffs hired competent counsel and have vigorously pursued this litigation.

4              **C.  Common Issues Predominate Plaintiffs' Claims**

5         "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

6    cohesive to warrant adjudication by representation." *Amchem Product v. Windsor,* 521 U.S. 591

7    (1997).  EA cannot legitimately dispute that common questions predominate the Class claims.  It

8    is undisputed that EA uses player databases in Madden NFL that accurately identify each of the

9    unlicensed Retired NFL class members who appear in its Madden NFL video games by "real first

10   name" and "real last name" along with host of other identifying characteristics including, but not

11   limited to: team, position, height, weight, age, skin tone, and years in the NFL.  *See* Databases

12   Bate Nos EA00011670-5 (lodged by Plaintiffs).  This common fact alone is sufficient to establish

13   EA's liability.  EA also affirmatively represents to consumers that the likenesses in its video

14   games were those of the actual retired NFL players by, among other things, referring to the teams

15   as "historic teams" and "all-time teams."  EA further advertised its use of retired players'

16   likenesses to its consumers in its "Official Guide" for *Madden NFL* and encouraged them to

17   correct minor (but common scheme) alterations EA made to the Class Members likenesses:

18        Historic Rosters are back again.  You can play All-Star Teams for each franchise,
         or dip into some of the greatest teams of all time. . . They allow you to play 'what
19        if'-type games.  Just select the teams and away you go back in time to play the
         game.  The players do not have their actual names but you can edit them if you
20        want optimum realism.

21   *See* Dkt. No. 98-2 pp. 13, 16, 19. (Official Guides for Madden NFL 2007-2008).

22        Each member of the class suffered the same injury; the appropriation of the commercial

23   economic value in their likenesses.   As the U.S. Supreme Court has held, "the rationale for

24   protecting the right of publicity is a straightforward one of preventing unjust enrichment by the

25   theft of goodwill.  No social purpose is served by having Defendant get for free some aspect of the

26   plaintiff that would have market value and for which he would normally pay." *Zacchini v.*

27   *Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 576 (1976).  Plaintiffs have established that:

28        the former players' likenesses have unique value and contribute to the

                                    11

1   commercial value of *Madden NFL*. EA goes to substantial length to incorporate
2   accurate likenesses of current and former players, including paying millions of
    dollars to license the likenesses of current players.

3   *Davis v. Electronic Arts Inc.*, 775 F.3d 1172, 1181 (9th Cir. 2015).  EA pays more than 35 million

4   dollars annually to license the likenesses of approximately 1700 current NFL players pursuant to a

5   group license. But EA did not license or pay anything to the more than 6,000 Retired NFL Players.

6         EA does not dispute that its alterations to the Retired NFL Player Class likenesses were

7   done pursuant to a common scheme.  For example, in the portion of its games viewable to

8   consumers, the games refer to unlicensed Retired NFL Players by position instead of name, and

9   that, after 2004, EA also "scrambled" their numbers.  Yet EA also uniformly provided a way for

10  consumers to undue these modifications to obtain optimum realism, it uniformly advertised same.

11        Faced with stark legal and factual clarity, EA resorts to misrepresenting law and facts in an

12  effort to muddy the waters.  For example, EA asserts individual questions predominate because,

13         [t]o determine whether a likeness 'was actually used,' the plaintiff must prove
14         that the likeness readily identifiable as him--that is, that '*one who views the*
           *[image] with the naked eye can reasonably determine that the person depicted*
15         *in [it] is the same person who is complaining of the unauthorized use*."

16  Op. p. 20 purporting to quote *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)

17  (italics added).  The portion of the quote in italics is doctored by EA and the actual text states:

18         A person is deemed to be readily identifiable in a photograph 'when one who
           views the photograph with the naked eye can reasonably determine that the
19         person depicted in the photograph is the same person who is complaining of its
20         unauthorized use." Cal. Civ. Code 3344(b)(1).

21  Thus, EA seeks to mislead the court by (1) omitting the initial part of the quoted sentence referring

22  to a photograph (and without providing an ellipsis); and (2) omitting the Court's internal quotation

23  marks and citation section 3344(b)(1).  EA improperly seeks to create a "naked eye" strawman

24  argument for its newly disclosed and fatally flawed survey evidence – which is discussed below.

25  The photograph requirements of 3344(b)(1) do not apply.  This case is not about a photograph, nor

26  is EA's conduct limited to an image.

27        Next, EA's assertion that because it did not include the names or actual photographs of

28  Retired NFL Class members that the it did not use their protectable likenesses is a non-starter. *See*

1  Opposition Sec. II.B. pp 4-5. As both the Ninth and Sixth Circuits have noted:

2      'The right of publicity has developed to protect the commercial interests of
       celebrities in their identities. The theory of the right is that celebrity's identity
3      can be valuable in the promotion of products and the celebrity has an interest
       that may be protected from the unauthorized commercial exploitation of that
4      identity … If the celebrity's identity has been exploited, there has been an
       invasion of his right whether or not his 'name or likeness' is used.'
5

6  *White v. Samsung Electronics America, Inc.,* 971 F. 2d 1395, 1398 (9th Cir. 1991) (*quoting*

7  *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 835 (6th Cir. 1983). "It is not

8  important how the defendant has appropriated the plaintiff's identity but whether he has done so."

9  *White,* 971 F. 2d. 1398.   Thus, for example, the Ninth Circuit has held that a race car driver stated

10  a right of publicity claim when a commercial showed the plaintiff's car, even though the driver's

11  face was not visible and the defendant changed the number on the car, because the distinctive

12  markings on the car "caused some persons to think that the car in question was plaintiff's and to

13  infer that the person driving the car was plaintiff." *Motschenbacher,* 498 F.2d. at 827.  Likewise,

14  Vanna White was held to state a right of publicity claim against an advertiser who published an ad

15  containing a picture of a female robot, in a blond wig and gown standing in front of a game show

16  wheel resembling the "Wheel of Fortune," even though it did not use Ms. White's name or

17  photograph. *White,* 971 F. 2d. at 1398-99. The *White* Court held that the totality of individual

18  aspects of the ad demonstrate that it is about Ms. White and therefore has stated a right of

19  publicity claim for the defendant's misappropriation of the commercial value of her identity. *Id.*

20  at 1399. The *White* Court also noted that Dean Prosser properly foresaw that "'there might be

21  appropriation of the plaintiff's identity, as by impersonation, without the use of his name to his

22  likeness, and that this would be an invasion of his right of privacy." *Id.* at 1397-98 (*quoting*

23  Prosser, Privacy, 48 Cal. L. Rev. 383, 401, n155).

24      EA's attempt to use its purported "survey evidence" to argue that its use of Retired NFL

25  Class Members likenesses is not identifiable misses the mark and is an obvious red herring.  In

26  fact, EA's surveys are fatally flawed and essentially meaningless because *EA fails to identify in the*

27  *first place whether the survey participants know who the players are before asking them whether*

28  *EA's representation of the players is identifiable as those players.*  As such EA's survey does not

1   actually gauge whether its use of Retired NFL Players' likenesses is identifiable.  Instead, EA's

2   survey is nothing more than a trivia contest to determine whether, standing alone, a certain subset

3   of consumers can identify Retired NFL players by statistics and screen shots.  Tellingly, EA did

4   not even allow survey participants to play the Madden NFL video games or to view its Official

5   Game Guides.  To the extent that this Court considers the surveys – and it should not – the only

6   information that can be gleaned is that: (1) survey participants believed that the avatars they were

7   shown represented actual NFL players from the historic teams; (2) the player attributes in Madden

8   NFL allow consumers to identify the Retired Player Class Members despite EA's omission of

9   name ands and numbers;[9] and (3) here, as in *Motschenbacher*, sufficient identifiable or distinctive

10   information caused some persons to think that the avatars shown to them were the Plaintiffs.  *Id.*

11          Next, as the charts included with Plaintiff's motion demonstrate, had EA provided the

12   survey participants with the actual rosters for the historic teams, it is easy to identify the players

13   by simply comparing the representations in Madden NFL to the team rosters – a point which EA

14   does not refute.  See Dkt. 173-3 pp. 12-24.  In fact, the charts at issue were prepared by Plaintiffs'

15   counsel prior to EA's production of evidence in this case, and without using EA's databases which

16   identify the Retired Players by name.  These charts demonstrate EA employs a common scheme of

17   accurately identifying the historic NFL players by team and position, and providing accurate

18   statistical identifying information (i.e. age, height, weight, years in NFL, skin tone). *Id.*

19          Finally, EA seeks to mislead this Court by asserting that "in deposition Plaintiffs could not

20   identify themselves, or their teammates…" Op. 20, fn. 35 (emphasis added)).  The sole citation

21   cited by EA for the proposition that Plaintiffs could not identify themselves is passage from Mr.

22   Ferragamo's deposition in which he is improperly asked whether an avatar (i.e. the digital image)

23   standing alone contains his likeness.  And he responded "I don't know." *Id.*  Contrary to EA's

24   assertion, Ferragamo correctly identified himself and teammates at deposition. F.Tr. 14:16-15:6

25

---

26   [9] See e.g. Dkt. 177-6, p. 164 (ID NO. 10122 citing "team, age, years played, position, height, and

27   skin type" as identifying information for Mr. Ferragamo), see also pp. 147, 151, 167, 183-86, 194. In fact, some survey participants were able to identify the Retired NFL Class Members based only

28   on position, historic team, and avatar. *See e.g.* Dkt 176-6 at p 147 (ID 032689)

1   (himself) Ex. 11 to Henri Reply Dec. ("HRD"); Id. at 23:15-26:18 (H. Ellard & R. Brown).

2          EA citation for its assertion that Plaintiffs could not identify their teammates is erroneous

3   for the same reasons.   In the cited passage, EA's counsel hands three screen shots to Mr. Davis

4   Exs. 28, 29, and 30.  EA falsely represents that Mr. Davis could not identify his teammates by

5   omitting his answers.  In fact, Davis correctly identified Ex. 28 as Ricky Bell and Ex. 30 as Cecil

6   Johnson solely on the screen shots.  *See* Davis Tr. 89:19-91:4 (HRD Ex. 12).  Mr. Davis correctly

7   identified Ex. 29 as Aron Brown after EA's counsel provided a roster. *Id.* at 104:13-105:23.

8          Plaintiff Dupree likewise correctly identified himself and teammates at deposition solely

9   from screenshots from EA's Madden NFL. *See e.g.* Dupree Tr. 44:22-47:15 (HRD Ex. 13).

10         Finally, EA's assertion that "individual issues of consent defeat predominance and

11  typicality" is wholly unsupported.  Op. 22, Heading III.D. The Class definition excludes Retired

12  Players who licensed their likenesses to EA.  EA also has copies of those licenses so there is no

13  issue.  EA offers no factual argument or evidence as to any conceivable issues of implied consent.

14         **Conclusion**[10]

15         For each of the foregoing reasons, and those set forth in the Motion, Plaintiffs respectfully

16  request that the Court issue an Order Certifying the Class.[11]

17  Dated: September 2, 2016                              HENRI LAW GROUP
                                                         By: /s/ *Brian D. Henri*
18                                                       BRIAN D. HENRI
                                                         Attorneys for Plaintiffs
19

20  _____
    [10] The court should decline EA's request for a ruling at the class certification stage on the
21  merits of which statute of limitation should apply.  As EA concedes this issue is disputed by
    the parties both factually (regarding republication) and legally.  Some courts have held
22  California right-of-publicity claims are subject to a four-year limitations period.  *See e.g.,*
    *Miller v. CMG Worldwide, Inc.,* 318 F. Supp. 2d 923, 942 n.11 (C.D. Cal. 2004) (citing Cal.
23  Code Civ. Proc. § 343); *Internet Specialties West, Inc. v. Milon-Digiorgi Enters., Inc.,* 2006
    U.S. Dist. LEXIS 96351, at *4 (C.D. Cal. Nov. 14, 2006).  Others, including EA's
24  authority, *Christoff v. Nestle USA, Inc.,* 47 Cal. 4th 468 (2009), apply a two-year period.
    Those cases applying a two-year limitation, however, consistently involved contracts.
25  Indeed, the Christoff plaintiff asked the court to apply Cal. Civ. Code§ 339, which governs
    "[a]n action upon contract, obligation or liability not founded upon an instrument of
26  writing...."  Though the Court of Appeal adopted plaintiffs request, the California Supreme
    Court remanded the case without discussing the issue.  47 Cal. 4th at 476-83.  Plaintiffs
27  assert that the four-year statute of limitations of Cal. Civil Code § 343 applies here.
    [11] If the Court declines to Apply California law to the class, Plaintiffs requests leave to amend the
28  complaint to add representative plaintiffs for individual state subclasses.