UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL E. DAVIS, et al.,

Plaintiffs,

v.

ELECTRONIC ARTS, INC.,

Defendant.

Case No. 10-cv-03328-RS

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

The named plaintiffs in this putative class action are former National Football League players who contend that defendant Electronic Arts, Inc. ("EA") has misappropriated their likenesses and rights of publicity through marketing and selling the popular "Madden NFL" series of video games. Those games undisputedly use likenesses of active NFL players, which EA has licensed through the NFL Players' Association. Although EA vigorously contends the games do not use *former* players' likenesses, there is no question that any such use is unlicensed.

Plaintiffs now move for class certification. They seek to apply California law to a class of former NFL players that includes individuals residing in all or nearly all of the 50 states, Washington, D.C., and other places around the world. Choice of law, however, presents a threshold issue. Because, as explained below, it is not permissible to apply California law to every class member, regardless of domicile, the motion must be denied. This ruling is without prejudice, however, to the possibility that by amending their complaint and/or recasting their

motion, plaintiffs might be able to seek certification of multiple classes or subclasses.

## II.  DISCUSSION[1]

### A.  Due Process

When considering applying California law to a "nationwide class," the first inquiry is whether doing so satisfies constitutional due process.

> [T]he class action proponent bears the initial burden to show that California has "significant contact or significant aggregation of contacts" to the claims of each class member . . . Such a showing is necessary to ensure that application of California law is constitutional . . . .  Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims."

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–90 (9th Cir. 2012) (citations omitted).

Here, plaintiffs contend due process is satisfied because EA is headquartered in California, and various decisions regarding the *Madden NFL* series were made here.  EA effectively concedes the showing is adequate, by not addressing due process and proceeding directly to the choice of law analysis.  Accordingly, due process concerns would not preclude certification of a nationwide class on the present record.

### B.  Choice of law

The *Mazza* decision represents the most definitive explication of current Ninth Circuit choice of law rules in the context of class actions.  It explains that "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'"  *Id.* at 590 (citing *Wash. Mut. Bank v. Superior Court*, 24

---

[1] Given the conclusion that a nationwide class is impermissible in this case under choice of law rules, the legal standards ordinarily applicable to class certification motions are not germane and will not be recited here.

Cal.4th 906, 921 (Cal. 2001)).

A three-step governmental interest test is applied to determine whether the interests of other states outweigh California's interest:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.*

Here, plaintiffs concede there are material differences among the states with respect to their laws governing the publicity rights at issue in this case. EA identifies such differences as including the fact that eighteen states (Colorado, the domicile of named plaintiff Tony Davis, among them) do not recognize any right of publicity. Of those states that do recognize such rights, the scope varies. For example, some states provide liability for all commercial uses of a plaintiff's likeness, while others impose liability only for use of a plaintiff's likeness in connection with an advertisement or solicitation. Finally, statutes of limitation vary significantly, as do states' rules regarding when a claim accrues.

EA contends each of the differences in law it has identified would have a material, outcome-determinative impact on the litigation. Plaintiffs do not argue otherwise. Accordingly, the crux of the dispute lies in the second and third steps of the analysis—whether there is a "true conflict" and if so, whether California's interests in applying its law to these claims outweigh those of other states.

To argue that it is appropriate to apply California law on a nationwide basis in this case,

plaintiffs rely most heavily on *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001). In *Downing*, plaintiffs were surfers who sued Abercrombie and Fitch for using their images and names in its subscription catalog, the "Abercrombie and Fitch Quarterly." The trial court dismissed the California law publicity claims of five of the plaintiffs, who resided in Hawaii. The Ninth Circuit reversed, pointing to a California Supreme Court case, *Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974), in which plaintiffs were residents of Mexico and were allowed to rely on California law pursue a wrongful death action arising from a car accident in California, without regard to liability limitations imposed under Mexican law. The *Downing* court stated:

> The California Supreme Court's ruling in the *Hurtado* tort case is directly applicable to this case. Abercrombie distributed its Spring Quarterly in California, and any misappropriation of the names and likenesses of the Appellants would have occurred there. As the court stated, one of the primary purposes of creating a cause of action in tort is to deter misconduct within its borders by persons present within its borders. By distributing its catalog within California, Abercrombie was operating within its borders.

265 F.3d at 1006.

*Downing* went on to conclude that Hawaii, "like Mexico in *Hurtado*, had no interest in limiting the extent of relief that its residents could obtain for a wrongful act against them in California." *Id.* at 1006-7. Thus, *Downey* held, California law was applicable to the claims of all of the plaintiffs, including those residing in Hawaii.

> The California Supreme Court has made it clear that when California has an interest in enforcing its law within its borders and a foreign state (in this case Hawaii) has no interest in having its law applied, then the law of California should be applied. In this case, there is no "true conflict" of Hawaii law with California law . . . .

265 F.3d at 1006–07.

Plaintiffs here insist that *Downing* is applicable on these facts. They argue that despite material differences in the laws of other states, those states simply have no interest in precluding their residents from recovering under California law, and there is no "true conflict."[2]

---

[2] Plaintiffs contend, therefore, that they prevail at the second step of the analysis. Plaintiffs further argue that even if a "true conflict" were found, they can still prevail at the third step,

ORDER DENYING MOTION FOR CLASS CERTIFICATION
CASE NO. 10-cv-03328-RS
4

EA, in turn, (1) insists *Downey* is no longer good law, particularly in light of *Mazza*, and (2) argues an opinion from the Central District of California, *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599 (C.D. Cal. 2015), is correctly and compellingly reasoned, and should be followed here. In *Lightbourne*, a college football player brought a putative class action against an internet seller of photographs of student athletes and provider of custom branded photo storefronts, asserting right of publicity claims, and sought to apply California law to a nationwide class.

The *Lightbourne* court rejected the plaintiff's attempt to rely on *Downey*, stating that its conclusion turned on the fact that Hawaii had no right of publicity law at the time *Downey* was decided.

> This reasoning is patently inapplicable here, where the vast majority of states—now including Hawaii—have made conscious choices regarding the nature and scope of relief a resident may seek for violation of his or her right of publicity . . . . *Mazza* instructs that these choices are entitled to respect. See 666 F.3d at 591–92 ("Every state has an interest in having its law applied to its resident claimants ) . . . .

*Lightbourne,* 307 F.R.D. at 599.[3]

Plaintiffs contend *Downey* is good law, and controlling here. They argue *Lightbourne* is simply wrongly decided and, as a district court opinion, not controlling. Whether or not the Ninth Circuit has been "moving away" from *Downey* as EA contends, it at most stands for the proposition that where a state that has not undertaken a legislative assessment of the rights and remedies it believes are appropriate in the context of publicity claims, that state has no interest in precluding its residents from seeking remedies under the laws of another forum. Here, however,

---

because California has a superior interest. That part of plaintiff's argument, however, does little more than repackage their contentions regarding the second step.

[3] Plaintiffs point out, and EA concedes, that the *Lightbourne* opinion is not quite accurate in stating that Hawaii had had "no right of publicity law whatsoever" at the time of *Downey*, as common law publicity claims were available. If the opinion had merely replaced the word "law" with "statute," however, it would have been completely correct, and the point would have been the same. Hawaii had not made "conscious choices regarding the nature and scope of relief a resident may seek for violation of his or her right of publicity."

EA has shown that many of the other states implicated in this case *do* have statutory schemes regulating publicity claims (including now Hawaii) and that there are material—potentially outcome-dispositive—differences between some of those statutes and California law.  Indeed, at least some states apparently have *longer* statutes of limitation than California does. So, application of California law has the potential to *limit* the recovery of some class members, not merely expand it. Thus, *Downey* is not dispositive.

Although *Lightbourne* is not binding precedent, it is persuasive.  Plaintiffs attack *Lightbourne* on two grounds.  First, as noted above, plaintiffs correctly observe that *Lightbourne* misdescribed the state of Hawaiian law at the time of *Downey*.  That error, however, is inconsequential to the point *Lightbourne* was making.  Second, plaintiffs contend *Lightbourne* erroneously believed that the right of publicity is a *property* right, and therefore incorrectly looked to California Civil Code §946, which provides "[i]f there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile."

There is ample authority, including the prior appellate opinion in this action, describing the right of publicity as a property right.  *See*, *e.g*., *Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1179 (9th Cir. 2015) ("the right of publicity . . .  primarily protects a form of intellectual property . . . ."). While plaintiffs have constructed an argument that it is not viewed as such under California law, ultimately the result does not turn on resolving that characterization issue.  Whether or not California Civil Code §946 directly applies, the varying domiciles of the putative class members are plainly relevant here, and *Lightbourne's* basis for distinguishing *Downey* remains sound.

At heart, plaintiffs are arguing it is appropriate to apply California law to the claims of all class members because, in plaintiffs' view, the claims arose in California by virtue of the fact that the alleged decision to use the former players' likenesses without a license was made here, and the games are (in at least one sense) published and sold from California, where EA is headquartered. While neither plaintiffs nor EA has offered clear authority for where right of publicity claims should be deemed to arise in circumstances like these, it is self-evident that plaintiffs suffer injury

where the games are sold and/or where they are domiciled.  *See Lightbourne*, 307 F.R.D. at 600 (discussing the relevance of plaintiffs' domicile in right of publicity cases).

It might very well be that a former player living in some state that does not recognize a right of publicity would be entitled to sue in California, under California law, for a misappropriation of his likeness in products sold in California.  Plaintiffs, however, are not seeking a nationwide class with recovery that is limited to California sales of *Madden NFL*, so that possibility does not assist them.

Accordingly, EA has met its burden to show that there is a true conflict between California law and that of at least many of the other states that are implicated by plaintiffs' claims, and that California's interest is not superior to the interests of those states.  As in *Lightbourne*, a nationwide class may not be certified under California's right of publicity statute on the facts of this case.

## III.  CONCLUSION

Plaintiff's motion for certification of a nationwide class is denied.  This ruling is without prejudice to plaintiffs seeking leave to amend and/or presenting a renewed motion with a narrower class and/or subclasses.[4]  The parties shall appear for a further case management conference on March 2, 2017 at 10:00 a.m., with a joint case management conference statement to be filed one week in advance.

**IT IS SO ORDERED**.

Dated: February 2, 2017

_____
RICHARD SEEBORG
United States District Judge

---

[4] Good cause having been shown, the sealing motions associated with this motion (Dkt. Nos. 172 and 187) are granted.  Plaintiffs' motion to file supplemental materials (Dkt. No 186) is granted, although those materials relate to Rule 23 issues not reached in this order.

ORDER DENYING MOTION FOR CLASS CERTIFICATION
CASE NO. 10-cv-03328-RS
8