KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CHESSIE THACHER - # 296767
cthacher@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL E. DAVIS, aka TONY DAVIS, VINCE FERRAGAMO, and BILLY JOE DUPREE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. 3:10-cv-3328-RS (DMR)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     September 28, 2017<br>Time:     1:30 p.m.<br>Dept:     3, 17th Floor<br>Judge:    Hon. Richard Seeborg<br><br>Date Filed: July 29, 2010<br><br>Trial Date: March 5, 2018 |

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on September 28, 2017, at 1:30 p.m., before the Honorable Richard Seeborg, United States District Court, 450 Golden Gate Avenue, Courtroom 3, 17th Floor, San Francisco, California 94012, Defendant Electronic Arts Inc. ("EA") will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the Second Amended Complaint filed by Plaintiffs Michael E. Davis, aka Tony Davis, Vince Ferragamo, and Billy Joe DuPree.

EA respectfully requests that the Court grant this Motion on the following grounds:

1. Plaintiffs' remaining right of publicity claim under California common law is preempted by the Copyright Act because *Madden NFL* falls within the subject matter of the Copyright Act, and the rights Plaintiffs seek to control—namely, the display, reproduction, and distribution of this copyrighted work—are equivalent to the rights granted to copyright holders under the Act. *See* 17 U.S.C. §§ 102(a), 301(a).

2. Plaintiffs' additional causes of action for conversion, trespass to chattels, unjust enrichment, and unfair competition in violation of Section 17200 of the California Business & Professions Code equally fail because they are based on the same set of facts as, and are derivative of, Plaintiffs' common law right of publicity claim and thus similarly preempted.

This Motion is based upon this Notice; on the attached Memorandum of Points and Authorities in Support thereof; on the concurrently filed Request for Judicial Notice; on the Declaration of Chessie Thacher filed therewith; on all pleadings, papers, and submissions before the Court in connection with this action; and upon such further oral or written argument and evidence as may be presented at or prior to the hearing of this matter.

/

/

/

/

i

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

Dated: August 18, 2017                                KEKER, VAN NEST & PETERS LLP

                                        By:  */s/ R. James Slaughter*
                                             R. JAMES SLAUGHTER
                                             R. ADAM LAURIDSEN
                                             NICHOLAS D. MARAIS
                                             CHESSIE THACHER

                                             Attorneys for Defendant
                                             ELECTRONIC ARTS INC.

ii
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................1

    A. Factual Background ....................................................................................1

    B. Procedural History ......................................................................................3

III. ARGUMENT ...........................................................................................................4

    A. Legal Standard ............................................................................................4

    B. The Federal Copyright Act Mandates a Broad Preemption Scheme ..........4

    C. Plaintiffs' Right of Publicity Claims are Preempted by the Copyright Act and Must be Dismissed ...............................................................................5

        1. Part 1: *Madden NFL* falls within the subject matter of copyright. .............7

        2. Part 2: The rights invoked by Plaintiffs are equivalent to the exclusive rights under the Copyright Act. ....................................................9

    D. Plaintiffs' Derivative Claims are Also Preempted by the Copyright Act ..............10

IV. CONCLUSION ......................................................................................................11

iii

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. City of Beverly Hills*
   911 F.2d 367 (9th Cir. 1990) .................................................................................................. 10

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................................................. 4

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................................................. 4

*Blizzard Entm't, Inc. v. Lillith Games (Shanghai) Co. Ltd.*
   No. 15-cv-04084 CRB, 2017 WL 2118342 (N.D. Cal. May 16, 2017) ..................................... 7

*Capcom Co. v. MKR Grp., Inc.*
   No. 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .............................................. 4

*Dryer v. Nat'l Football League*
   814 F.3d 938 (8th Cir. 2016) .................................................................................................... 7

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*
   617 F.3d 1146 (9th Cir. 2010) .................................................................................................. 7

*Keller v. Elec. Arts, Inc. (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)*
   724 F.3d 1268 (9th Cir. 2013) .................................................................................................. 6

*Knievel v. ESPN*
   393 F.3d 1068 (9th Cir. 2005) .................................................................................................. 4

*Laws v. Sony Music Entm't, Inc.*
   448 F.3d 1134 (9th Cir. 2006) ........................................................................................ *passim*

*Lewis Galoog Toys, Inc. v. Nintendo of Am., Inc.*
   964 F.2d 965 (9th Cir. 1992) .................................................................................................... 7

*Maloney v. T3Media, Inc.*
   853 F.3d 1004 (9th Cir. 2017) ........................................................................................ *passim*

*Maloney v. T3Media, Inc. [Maloney I]*
   94 F. Supp. 3d 1128, 1132 (C.D. Cal. 2015) .................................................................. *passim*

*Peckarsky v. ABC*
   603 F. Supp. 688 (D.D.C. 1984) .............................................................................................. 4

*Ray v. ESPN, Inc.*
   783 F.3d 1140 (8th Cir. 2015) .................................................................................................. 7

*Sega Enters. Ltd. v. Accolade Inc.*
   977 F.2d 1510 (9th Cir. 1992) .................................................................................................. 7

iv

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

*Toney v. L'Oreal USA, Inc.*
    406 F.3d 905 (7th Cir. 2005) .................................................................................................. 7

*White v. Samsung Elec. Am., Inc.*
    971 F.2d 1395 (9th Cir. 1992) ................................................................................................ 3

**State Cases**

*Fleet v. CBS, Inc.*
    50 Cal. App. 4th 1911 (1996) ............................................................................................ 7, 10

*Melchior v. New Line Prods., Inc.*
    106 Cal. App. 4th 779 (2003) ................................................................................................ 11

**Federal Statutes**

17 U.S.C. § 102 ............................................................................................................... 5, 7, 9

17 U.S.C. § 103 ...................................................................................................................... 5

17 U.S.C. § 106 .............................................................................................................. 5, 9, 10

17 U.S.C. § 301 ............................................................................................................... 4, 6, 9

17 U.S.C. § 410 ...................................................................................................................... 8

**Other Authorities**

H.R. Rep. No. 94-1476 (1976) ................................................................................................ 4

v
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

New, controlling Ninth Circuit authority compels dismissal of Plaintiffs' claims because they are preempted by the Copyright Act. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2017). In *Maloney*, the Ninth Circuit recognized that, "where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for exercising his exclusive rights under the Copyright Act." *Id.* Because *Madden NFL* is a copyrighted artistic visual work sold for personal use, Plaintiffs' right of publicity claim and derivative state law claims are all preempted by the Copyright Act.

The only two exceptions to preemption—use of Plaintiffs' names, identities, or likenesses in connection with advertising or on merchandise—are inapplicable here. *See id.* at 1010-11. Plaintiffs do not—and cannot—allege that any of their names, identities, or likenesses were used in advertising or on merchandise. Plaintiffs' claims are therefore preempted and must be dismissed. Indeed, as *Maloney* makes clear, allowing Plaintiffs' claims to proceed would impermissibly elevate their publicity rights above EA's exclusive rights as a copyright holder, and thereby turn the Copyright Act's broad preemptory scheme on its head.

## II.   BACKGROUND

### A.   Factual Background

EA is a leading developer and publisher of interactive video games. Dkt. 231-1, Second Am. Compl. ("SAC") ¶¶ 10, 15. Among the many popular video games produced by EA is *Madden NFL*, a new version of which is published each year across a variety of video game platforms (*e.g.*, Xbox, PlayStation 2). SAC ¶¶ 16, 21, 24. Each platform edition of these *Madden NFL* video games is a copyrighted audiovisual work. SAC ¶ 23; *see also* Decl. of Chessie Thacher in Supp. of Req. for Judicial Notice ("Thacher Decl.") ¶ 2, Exs. A-G (*Madden NFL 09* Copyrights).

In *Madden NFL*, users play NFL football simulations by choosing two professional teams

1
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

to compete against each other.[1]  The video game then populates a selected stadium with virtual players, coaches, referees, mascots, cheerleaders, and fans—all designed and rendered by EA's graphic artists employing advanced software, creative features, and complex audiovisual elements.  *See id.*; SAC ¶¶ 28, 53.  The video game also depends on interactive input from users, who can employ handheld controllers to manipulate the virtual players' actions on the field and can customize individual avatars' appearances or characteristics.  *Id.*; SAC ¶ 50.

The core of the *Madden NFL* game experience is a simulation of the then-current season's actual NFL teams.  SAC ¶¶ 28-29, 53-55.  These "current teams" are comprised of avatars based on real players in that current NFL season.  The current-team avatars are identified by the players' real names, their actual jersey numbers, and their accurate biographical information.  EA licenses the use of these names, jersey numbers, and actual likenesses from the NFL Players Association and other NFL entities.  SAC ¶ 60.

Separate from play involving the current teams, certain old versions of *Madden NFL* included a feature in some editions that allowed users to play select teams from NFL history.  SAC ¶¶ 4, 20, 30.  These historic teams, which are the sole focus of this litigation, display team names, logos, and jerseys licensed from the NFL.  But otherwise, these historic teams are fundamentally different from the current teams in critical ways:  the historic teams do not include the names, images, or signatures of real players, and the historic-team avatars do not wear jersey numbers that match the numbers worn by real players playing the same positions on the real historic teams.  SAC ¶¶ 31, 49, 50, 61; *see also* Dkts. 178, 178-1, 110 at 3 n.3.

Despite these differences, Plaintiffs allege that EA used their "images, identities, and/or likenesses" by incorporating their publicly-available information into *Madden NFL* and the profiles for the historic-team avatars.  SAC ¶¶ 29, 31-32.  These avatar profiles purportedly included certain information relating to Plaintiffs' and other retired players' non-visual

---

[1] EA previously lodged with the Court versions of *Madden NFL 09* for the PlayStation and Xbox, along with a Sony Play Station 2 console, an Xbox console, and the appropriate controllers.  *See* Dkt. 178 (Ferwerda Decl.) Ex. A (*Madden NFL 09* for the PlayStation 2), Ex. B (*Madden NFL 09* for the Xbox); *see* also Dkt. 178-1 (Notice of Manual Filing re Consoles and Controllers).  The Court took judicial notice of the content of these materials, Dkt. 110 at 3 n.3, and EA incorporates by reference those submissions here.

2
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

descriptions—specifically, their positions, heights, weights, skin tones, and years played in the NFL. SAC ¶¶ 31-47. Importantly, Plaintiffs do not allege that EA used any of their names, images, identities, or likenesses to advertise *Madden NFL*.

*Madden NFL* discontinued the historic teams feature after *Madden NFL 09* was commercially released in 2008 because the feature was unsatisfactory and unpopular. SAC ¶¶ 4, 16, 30; *cf.* SAC ¶¶ 49, 59.

### B.     Procedural History

Plaintiffs Michael E. Davis, Vince Ferragamo, and Billy Joe DuPree are retired football players who filed this putative class action on behalf of themselves and approximately 6,000 other retired players alleging violations of their statutory and common law publicity rights, as well as other derivative state law claims. Dkts. 1 & 11. On February 15, 2017, EA moved for summary judgment on Plaintiffs' statutory right of publicity claim only. EA's motion rested on two undisputed facts: (1) EA did not use or include the names of any retired players in *Madden NFL*; and (2) the *Madden NFL* historic-team avatars were generic and did not use Plaintiffs' "likenesses"—a required showing for Plaintiffs' statutory claim, *see, e.g.*, *White v. Samsung Elec. Am., Inc.*, 971 F.2d 1395, 1397 (9th Cir. 1992).

On August 4, 2017, this Court granted EA's motion. Dkt. 263. The Court observed that there was "no dispute that the Madden games do not use the names, voices, signatures, or photographs of the named plaintiffs or any putative class members." *Id.* at 3. Rather, the Court focused on whether *Madden NFL* had used Plaintiffs' "likenesses" within the meaning of the statute, concluding: "plaintiffs have made no attempt to show . . . that *any* of the avatars in the Madden games could be 'readily identified' as corresponding to any specific plaintiff based on the appearance of the avatar alone." *Id.* (emphasis in original).

Also on August 4, 2017, the Court granted Plaintiffs leave to amend their complaint. Dkt. 264 at 1. The Court admonished that "nothing in this order, . . . or in the filing of the amended complaint, shall serve to revive the statutory claims as to which partial summary judgment in favor of defendant has been granted. Nor does this order preclude defendant from moving to dismiss or strike portions of the amended pleading . . . ." *Id.*

3

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

## III.    ARGUMENT

### A.    Legal Standard

A Rule 12(b)(6) motion to dismiss a complaint tests the legal sufficiency of the claims alleged.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is required if no relief can be granted under any set of facts that could be proved consistent with the allegations.  *See id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

When ruling on a motion to dismiss, a court may consider materials subject to judicial notice.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  For example, a court may look to "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to [a] plaintiff's pleading."  *Id.* (internal quotation marks and alterations omitted).  A court also may examine the contents of an expressive work, such as *Madden NFL*, to determine if that work is actionable.  *See* Dkt. 110 at 3 n.3 (taking judicial notice of *Madden NFL*); *see also Capcom Co. v. MKR Grp., Inc.*, No. 08-0904 RS, 2008 WL 4661479, at *14 (N.D. Cal. Oct. 20, 2008) (reviewing contested video game and film to find state law claims preempted by Copyright Act).

### B.    The Federal Copyright Act Mandates a Broad Preemption Scheme

"The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work."  *Maloney*, 853 F.3d at 1010.  The Act, in essence, provides a copyright owner "the right to control the work."  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

Central to the Copyright Act's full implementation is Section 301, which mandates a "broad statutory pre-emption scheme" for the promotion of uniformity.  *Peckarsky v. ABC*, 603 F. Supp. 688, 695 (D.D.C. 1984); *see also* 17 U.S.C. § 301.  This provision reflects Congress' intent "to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law." H.R. Rep. No. 94-1476 at 130 (1976).

4

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

### C. Plaintiffs' Right of Publicity Claims are Preempted by the Copyright Act and Must be Dismissed

The Ninth Circuit applies a two-part test to determine if the Copyright Act preempts a state-law claim. First, a court must decide "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws*, 448 F.3d at 1137. Second, a court must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.* at 1138. When both parts of this test are met, the Copyright Act preempts the state-law claims and those claims must be dismissed. *See id.*

The Ninth Circuit most recently applied this two-part test in *Maloney*, and its holding is dispositive here. In *Maloney*, the plaintiffs were former members of a college basketball team that had won a Division III NCAA national championship. *See* 853 F.3d at 1007. Images from the team's winning game were captured in copyrighted photographs—copyrights that were owned or controlled by the NCAA. *Id.* Defendant T3Media licensed the right to post the NCAA's Photo Library on its website and thereafter displayed the plaintiffs' photographs with a description identifying each player by name. The public could purchase licenses to download these images. *See Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1132 (C.D. Cal. 2015) ["*Maloney I*"], *aff'd*, *Maloney*, 853 F.3d at 1007-08.

On these facts, the *Maloney* plaintiffs alleged that T3Media had violated their publicity rights and unfair competition law by exploiting their names, images, and likenesses "for the purpose of advertising, selling, or soliciting purchases of the photographs themselves." *Maloney*, 853 F.3d at 1008. They argued that "the 'protected right' they [we]re asserting—their right of publicity—[wa]s categorically not preempted by the Copyright Act because a person's name or likeness is not a work of authorship within the meaning of the Act notwithstanding the fact that plaintiffs' names and likeness are embodied in a copyrightable photograph." *Maloney I*, 94 F. Supp. 3d at 1136 (internal alterations and quotation marks omitted).

The district court rejected this argument, and the Ninth Circuit affirmed. The district court "distinguished between claims derived from selling a copyrighted photograph containing an

5
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

athlete's likeness, which it said require preemption, and claims based on using the athlete's likeness contained in the photograph for some other purpose, which it said do not." *Maloney*, 853 F.3d at 1008 (internal quotation marks omitted).  The Ninth Circuit agreed, concluding that "when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by Section 301 of the Copyright Act." *Id.* at 1011.  The Ninth Circuit clarified, however, that "a publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness on merchandising or in advertising." *Id.* (emphasis in original).[2]

Applying this reasoning, both *Maloney* courts held that the plaintiffs' claims fell within the subject matter of copyright because the photographs were copyrighted works and T3Media did not use plaintiffs' likenesses on merchandise or in advertising.  *See id.*; *see also Maloney I*, 94 F. Supp. 3d at 1137-39.  At the second part of the preemption analysis, both courts further held that the rights the plaintiffs had asserted were "no different than the rights contained within the general scope of the Copyright Act," and thus were preempted.  *Maloney*, 853 F.3d at 1019.  In particular, the Ninth Circuit explained that these claims failed because the plaintiffs did "not identify any use of their likenesses *independent of* the display, reproduction, and distribution of the copyrighted material in which they are depicted." *Id.* (emphasis added).

*Maloney* makes explicit a preemption rule that the Ninth Circuit has implicitly followed when dismissing other publicity rights claims:  a plaintiff cannot avoid preemption by framing his lawsuit as the misappropriation of his identity and ignoring the copyrighted work in which his identity is allegedly embodied.  For example, in *Laws v. Sony Music Entertainment*, 448 F.3d 1134 (9th Cir. 2006), the plaintiff attempted to focus her lawsuit on the misappropriation of her name and the duplication of "her voice." *Id.* at 1140-41.  The Ninth Circuit rejected the

---

[2] *Maloney* distinguishes *Keller v. Electronic Arts, Inc. (In re NCAA Student-Athlete Name & Likeness Licensing Litigation)*, 724 F.3d 1268 (9th Cir. 2013), on the ground that *Keller* involved the alleged use of the plaintiffs' publicity rights to advertise the sale of video games. *Id.* at 1018 n.13; *see also Keller* Class Act. Compl. ¶ 73; Third Am. Compl. ¶ 570.  There is no such allegation in the present matter.

6
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

argument, holding that the plaintiff's claims arose out of a copyrighted recording of her voice, which was an original, fixed work of authorship within the subject matter of copyright, and thus preempted. *Id.* at 1141-42. Likewise, in *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146 (9th Cir. 2010), the court held that the plaintiff's claim alleging the misappropriation of his name and persona was within the subject matter of copyright because the use derived from a recorded video of his performances. *Id.* at 1152-55; *see also Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996) ("Appellants may choose to call their claims misappropriation of right to publicity, but if all they are seeking is to prevent a party from exhibiting a copyrighted work they are making a claim equivalent to an exclusive right within the general scope of copyright.") (internal quotation marks omitted).[3]

### 1. Part 1: *Madden NFL* falls within the subject matter of copyright.

The subject matter of copyright encompasses "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a); *see also id.* §§ 101, 103. Under this framework, video games unquestionably fall within the subject matter of copyright. *See Lewis Galoog Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 967 (9th Cir. 1992) (video game is proper subject of copyright); *Sega Enters. Ltd. v. Accolade Inc.*, 977 F.2d 1510, 1520 (9th Cir. 1992); (same as to video game's computer code); *Blizzard Entm't, Inc. v. Lillith Games (Shanghai) Co. Ltd.*, No. 15-cv-04084 CRB, 2017 WL 2118342, at *1, 8 (N.D. Cal. May 16, 2017).

Additionally, *Madden NFL* is itself a registered, copyrighted work. For more than two decades, the Copyright Office has issued registrations for this work and it is EA's regular practice

---

[3] Other federal courts have adopted a similar analysis. *See, e.g.*, *Dryer v. Nat'l Football League*, 814 F.3d 938, 942 (8th Cir. 2016) (finding right of publicity claims by three NFL players preempted because plaintiffs did "not challenge the NFL's use of their likenesses or identities in any context other than the publication of . . . [recorded] game footage"); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142-44 (8th Cir. 2015) (finding right of publicity claims preempted because alleged misappropriation did not involve any advertisements); *cf. Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (finding no preemption where likeness used without consent on *advertising* for hair product because "[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question").

7
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

to obtain these copyrights on an annual basis. *See, e.g.*, Thacher Decl. ¶ 2, Exs. A-G. As a prerequisite to issuing each of these registrations, the Register of Copyrights determined that *Madden NFL* "constitutes copyrightable subject matter." 17 U.S.C. § 410(a). A "certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* § 410(c). Plaintiffs acknowledge as much, stating in the Second Amended Complaint that EA has registered copyrights "for each separate platform edition for both the medium in which the [*Madden NFL*] game was published . . . and for the unique user's manual that accompanied the videogame." SAC ¶ 23.

Here, Plaintiffs' claims alleging the misappropriation of their identities arise directly out of *Madden NFL*—an original and copyrighted work of authorship. Plaintiffs aver that the historic-team avatar profiles fixed in these copyrighted video games incorporate publicly-available information about their non-visual "identities." SAC ¶¶ 29-32, 50. In particular, Plaintiffs' allegations focus on how these avatar profiles purportedly include information about their positions, heights, weights, skin tones, and years played in the NFL. SAC ¶¶ 31-47. Their claims therefore concern only the copyrighted work itself and fall squarely within the subject matter of copyright. *See, e.g.*, *Maloney I*, 94 F. Supp. 3d at 1139 ("Without evidence that Defendant is doing something more than selling the copyrighted works, Plaintiffs' likenesses cannot be detached from the copyrighted work and their claims are preempted.") (internal quotation marks and alterations omitted).

The only two exceptions to preemption—use of a person's name, likeness, or identity in advertising or on merchandise—do not apply as Plaintiffs make no such allegations in the Second Amended Complaint. *See Maloney*, 853 F.3d at 1011. Moreover, the two instances in which Plaintiffs even come close to alleging an advertising reference do not save their claims. *First*, Plaintiffs allege that "EA also advertised and marketed its use of the names, images, identities, and/or likenesses of former NFL players in *Madden NFL* video games by, for example, *naming the feature* in its video games allowing consumers to assume the identities [of] former NFL players 'historic' and 'all time' teams." SAC ¶ 57 (emphasis added); *id.* ¶ 61. *Second*, Plaintiffs assert that a third party's so-called "Official Guide" to *Madden NFL 08* included a description of

8

DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

the Historic Teams feature.  SAC ¶ 50; *see also id.* ¶ 58.  But even if both of these allegations were true (and they're not), they miss the mark.  Merely naming or describing a feature *within a copyrighted work*—while not actually referencing any individual person, let alone any Plaintiff— is materially different from *actually using* Plaintiffs' names, likenesses, or identities to advertise the copyrighted work in which that feature appears.  *See Maloney I*, 94 F. Supp. 3d at 1137 n.3 ("Plaintiffs do not allege (or offer *prima facie* evidence to suggest) Defendant used Plaintiffs' likenesses for any purpose beyond the four corners of the copyrighted photographs themselves, and Plaintiffs' claims are preempted by the Copyright Act.").

Because Plaintiffs' claims arise solely from EA's copyrighted work, and not from a use in advertising or on merchandise, they fall within the subject matter of copyright.

### 2. Part 2:  The rights invoked by Plaintiffs are equivalent to the exclusive rights under the Copyright Act.

"To survive preemption," Plaintiffs must show that their right of publicity claim "'protect[s] rights which are qualitatively different from the copyright rights'" under Section 106 of the Copyright Act.[4]  *Maloney*, 853 F.3d at 1019 (quoting *Laws*, 448 F.3d at 1143).  "The state claim must have an extra element which changes the nature of the action."  *Id.*  Plaintiffs cannot make this showing as the Ninth Circuit has already held, on facts similar to those here, that a right of publicity claim is "no different than the rights contained within the general scope of the Copyright Act."  *Id.*

Plaintiffs do not identify any use of their names, likenesses, or identities *independent of* the reproduction, distribution, performance, or display of *Madden NFL*.  *Cf.* SAC ¶¶ 29-47, 50.  Instead, the rights that Plaintiffs seek to impact and collect damages as a result thereof—the display, reproduction, and distribution of this copyrighted work—are equivalent to the rights granted to copyright holders under the Act.  17 U.S.C. §§ 102(a), 301(a); *cf.* SAC (Prayer for Relief).  This failure is fatal to Plaintiffs' claims.  Just as the district court found in *Maloney*,

---

[4] Section 106 of the Copyright Act delineates six exclusive rights of a copyright owner.  *See* 17 U.S.C. § 106.  These include: the right to reproduce, to distribute copies, to perform the work, and to display the work publicly.  *Id.*

9
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

"[w]ithout this 'extra element' that would render Plaintiffs' claims 'qualitatively different' from the copyright holder's right in the [copyrighted works] themselves, the rights Plaintiffs are asserting under state law are equivalent to the exclusive rights contained in section 106 of the Copyright Act." *Maloney I*, 94 F. Supp. 3d at 1139; *see also Fleet*, 50 Cal. App. 4th at 1290 (actors' right of publicity claim based on use in copyrighted film preempted).[5]

### D. Plaintiffs' Derivative Claims are Also Preempted by the Copyright Act

Plaintiffs also allege causes of action for conversion, trespass to chattels, unjust enrichment, and violation of California's Unfair Competition Act.  *See* SAC ¶¶ 96-118.  These claims are derivative of Plaintiffs' right of publicity claim because they are based on the same facts alleging the use of their identities in a copyrighted work.  *See, e.g.*, SAC ¶ 98 (Conversion) ("EA intentionally and willfully took Plaintiffs' and Class members' names, images, identities and/or likenesses and incorporated them into various versions and editions of the Madden NFL video game franchise which were distributed to EA's consumers"); *id.* ¶ 107 (Trespass to Chattels) ("EA intentionally trespassed upon and interfered with Plaintiffs' and Class members' possession of the economic rights in their names, images, identities and/or likenesses by incorporating the names, images, identities and/or likenesses of Plaintiffs and Class members into certain editions of the Madden NFL video game franchise"); *id.* ¶ 112 (Unjust Enrichment) ("EA has been unjustly benefited through the sale of various editions of its Madden NFL video game franchise that utilize the names, images, identities and/or likenesses of Plaintiffs and Class members").

As with Plaintiffs' right of publicity claim, these claims fall within the subject matter of copyright and similarly do not include any "extra element" that would distinguish them from the rights exclusively protected by the Copyright Act.  Accordingly, Plaintiffs' derivative state law claims fail and must be dismissed.  *See Maloney*, 853 F.3d at 1019 (affirming dismissal of unfair

---

[5] After seven years of litigation and three complaints, Plaintiffs' failure to include any allegations about any use of their identities for advertising or on merchandise is damning.  Because such facts simply do not exist, any leave to amend would be futile and their Second Amended Complaint should be dismissed with prejudice.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990) (affirming district court's dismissal and denying plaintiff leave to amend second amended complaint where further amendment would be futile).

10
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522

competition claim because it was based on same facts as the preempted right of publicity claims); *Laws*, 448 F.3d at 1144 (same); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 792-93 (2003) (finding plaintiffs' claims for conversion and unjust enrichment preempted).

## IV. CONCLUSION

For the foregoing reasons, EA respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

Dated:  August 18, 2017                                 KEKER, VAN NEST & PETERS LLP

By: */s/ R. James Slaughter*
R. JAMES SLAUGHTER
R. ADAM LAURIDSEN
NICHOLAS D. MARAIS
CHESSIE THACHER

Attorneys for Defendant
ELECTRONIC ARTS INC.

11
DEFENDANT ELECTRONIC ARTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:10-cv-3328-RS (DMR)

1178522