UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL E. DAVIS, et al.,

    Plaintiffs,

v.

ELECTRONIC ARTS, INC.,

    Defendant.

Case No. 10-cv-03328-RS

**ORDER DENYING MOTION TO RECONSIDER**

## I. INTRODUCTION

Pursuant to Civil Local Rule 7-9, plaintiffs were granted leave to seek reconsideration of the order granting partial summary judgment in favor of defendant Electronic Arts, Inc. ("EA"), with respect to plaintiffs' claim under California Civil Code §3344. The briefing is now complete, and the matter will be submitted without oral argument, pursuant to Civil Local Rule 7-1(b). The motion is denied.[1]

---

[1] In one sense, this order actually *grants* reconsideration, because it reaches the merits of plaintiffs' arguments rather than refusing to consider them on procedural grounds. Upon such reconsideration, however, this order reaffirms the conclusions of the prior order. Accordingly, it is appropriate to characterize this order as denying plaintiffs' motion, which sought a different outcome.

II. DISCUSSION

Plaintiffs advance four basic arguments in support of their contention that upon reconsideration, a new order should issue denying the partial summary judgment instead of granting it. Even assuming that some or all of those contentions are sufficient to satisfy the prerequisites for reconsideration, they do not warrant a different result.

(1) First, plaintiffs contend the prior order was based on an erroneous understanding as to when a district court is bound by prior explications of state law in Ninth Circuit opinions. Plaintiffs point to statements made at the hearing on the motion for partial summary judgment suggesting a district court must follow circuit precedent on point, even where a subsequent state appellate court opinion has reached a conclusion contrary to the circuit authority.

Indeed, the comments at the hearing may have stated the rule imprecisely, because a district court cannot simply disregard state appellate opinions issued subsequent to a Ninth Circuit opinion, if those opinions explicitly or implicitly disagree with the Ninth Circuit's prior conclusions regarding state law. Rather, where a subsequent state appellate opinion is "at odds" with prior circuit precedent on a point of state law, it may support departing from the conclusions of the prior circuit case. *See F.D.I.C. v. McSweeney*, 976 F.2d 532, 535 (9th Cir. 1992).

The touchstone, however, must always be a determination regarding how the California Supreme Court most likely would answer the question. *See, Astaire v. Best Film & Video Corp.,* 116 F.3d 1297, 1300 (9th Cir. 1997), amended, 136 F.3d 1208 (9th Cir. 1998) ("For questions of California law, we must apply the law as we believe the California Supreme Court would apply it . . . . In the absence of a California Supreme Court decision, we must predict how the California Supreme Court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements as guidance."). For a federal *district* court, however, that rule comes with the additional gloss that the district court may be restrained from making its own prediction as to what the state supreme court would decide, if the circuit court has already addressed the issue, and there is no clear indication the circuit court's analysis has been undermined by subsequent developments. *See Johnson v. Symantec Corp*., 58 F. Supp.

2d 1107, 1111 (N.D. Cal. 1999) ("Although a circuit court's prediction of state law is not binding in the same way as is its definitive interpretation of federal law, as a practical matter a circuit court's interpretations of state law must be accorded great deference by district courts within the circuit.").

Here, the order granting partial summary judgment is consistent with these rules. Although the order primarily cites Ninth Circuit precedents, it did not decline to follow any state appellate court cases on grounds that a district court is disabled from taking such cases into account when carrying out its duty to predict what the state supreme court would decide. Rather, the order relied on Ninth Circuit precedents "as a practical matter," and because plaintiffs made no persuasive showing that any subsequent California appellate cases undermined the reliability of those circuit decisions as predictors of how the California Supreme Court would decide the substantive state law issues.

(2) Next, as a corollary to their argument that the prior order incorrectly relied on Ninth Circuit precedents, plaintiffs insist that California appellate cases issued after those Ninth Circuit decisions compel a different result. None of the state opinions plaintiffs invoke, however, expressly reject the circuit decisions. For example, plaintiffs place heavy emphasis on *Ackerman v. Ferry*,, 2002 WL 31506931, at *17 (Cal. Ct. App. Nov. 12, 2002),[2] where the issue was whether the statutory protection for one's "name" includes nicknames and pen names. The court observed that the Ninth Circuit has found the common law protects "identity," which it deems "a more flexible proposition and thus more permissive than the statutory 'laundry list' of particular means of appropriation." *Id.,* (quoting *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 415 (9th Cir. 1996). The *Ackerman* court then asserted "dicta" by the California Supreme Court in *Comedy III*

---

[2] *Ackerman* is an unpublished decision, which under Rule 8.1115 of the California Rules of Court, "must not be cited or relied on by a court or a party in any other action." While the California Rules of Court are not binding in this forum, the unpublished status of *Ackerman* further undermines any argument that it would support a decision by this court not to follow Ninth Circuit cases on point.

ORDER DENYING MOTION FOR RECONSIDERATION.
CASE NO. 10-cv-03328-RS

3

*Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 395 (2001), demonstrates "identity" is protected under the statute, as well as under the common law.

As such, plaintiffs contend, *Ackerman* undermines the Ninth Circuit cases finding the statute to be narrower than the common law. This argument fails for at least three reasons. First, it is clear from context that the "dicta" in *Comedy III* merely used "identity" as shorthand to refer collectively to the various protectable personal attributes listed in the statute. *See*, *Comedy III* at 395 (describing the statutory protection in two instances as reaching "name, voice, photograph, etc." and in one instance as applying to "identity.") The fact that the *Comedy III* court in one instance lumped the protectable elements listed in the statute under the label "identity," rather than listing out "name, voice, photograph, etc." for a third time, is far too thin a reed on which to conclude that California courts have rejected the distinctions found by the Ninth Circuit between the statute and the common law. This all the more so given that the issues before the *Ackerman* court did not implicate those distinctions—at issue was a conventional "likeness," a realistic drawing of the Three Stooges reproduced on lithographic prints and on t-shirts. *See*, *Comedy III* at 393.

Second, plaintiffs' reliance on *Ackerman* is also misplaced because the issue in that case was only whether nicknames and pen names fall within the statutory protection for a person's "name." The court concluded "name" does include nicknames and pen names because, among other reasons:

> We may add words to a statute only when necessary to accomplish a purpose that appears on the face of the statute or is apparent from its legislative history . . . . Nicknames and . . . pen names are names. To restrict the statute's meaning to certain kinds of names, we would be required to add modifiers to name, reading it for example, as birth name or legally adopted name. Appellant has not pointed to any evidence in the legislative history of the statute manifesting an intent to restrict the meaning of name to birth names or legally adopted names.

*Ackerman*, 2002 WL 31506931, at *18.

Thus, the issues and holding in *Ackerman* did not turn on whether the statute and common

law differ in scope or not. It cannot serve to demonstrate that the Ninth Circuit's decisions do not correctly reflect California law.

Finally, to the extent plaintiffs seek to give meaning to the term "identity" beyond just using it as a shorthand for the statutory list of protectable features, *Ackerman* actually weighs against them. If plaintiffs contend "identity" is broader than, or different from, "name, voice, signature, photograph, or likeness," then their contention that the statute protects "identity" runs afoul of the general prohibition against "adding words to the statute."

Plaintiffs' reliance on various other cases fares no better. While courts have sometimes used "identity" or other terms to characterize the collection of features listed in the statute, and do not always clearly distinguish between the statute and the common law, plaintiffs have pointed to no cases that clearly reject the principles of the Ninth Circuit decisions on which the partial summary judgment order was based, nor to any cases where those principles were even implicated by the facts.

(3) Plaintiffs further contend that the prior order misapplies the requirement that a visual image be "readily identifiable" as a plaintiff to be actionable. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) ("[W]e hold that in order to constitute [the plaintiff's] likeness, the [person] depicted in the advertisement must be readily identifiable as [the plaintiff].") Plaintiffs argue that the prior order improperly "chose not to see," and refused to consider, "a litany of information viewable with the naked eye." The "litany of information" to which plaintiffs refer, however, includes text that appears on the screen at points during game play, setting out biographical information and physical characteristics, among other things.

Plaintiffs insist that because such information can be seen and can be used to identify an avatar as representing a particular player, there is at least a triable issue of fact as to whether plaintiffs' likenesses appear in the Madden games. The pertinent question, however, is not whether an avatar can be associated with a specific player if there is viewable text that provides additional information, but whether the avatars themselves—the visual *images*—are readily

identifiable as representing particular players. Although plaintiffs contend that the visual appearance of each avatar may have some features that roughly correspond to an actual player (*e.g*., some avatars appear taller, or heavier, than others, skin tone varies, and uniforms are consistent with actual uniforms, wrist bands may appear on some avatars and not on others) no reasonable fact-finder could conclude that a particular avatar is identifiable as a particular player based solely on the appearance of the image.

Plaintiffs also argue that the prior order erred in disregarding "contextual information," in light of the holding of *Newcombe.* There, the challenged image was a drawing that was based on, and virtually identical to, an actual photo of the plaintiff that had appeared in a newspaper. *Newcombe*, 157 F.3d at 690. The court observed it was "as though the black and white newspaper photo had been traced and colored in." *Id.* As such, the drawing undoubtedly was a "likeness" of the plaintiff; the only question was whether it was "readily identifiable," given that the facial features were not entirely visible. The court reviewed various aspects of the visual representation itself, and concluded there was at least a triable issue of fact as to whether the image was readily identifiable as plaintiff. *Id.* at 693. The *Newcombe* analysis does not help plaintiffs here, because it focused on the appearance *of the image*, and not on any information or data merely provided in proximity to the image.

Finally, plaintiffs assert that the prior order mischaracterized the evidence and their position, when it stated, "[P]laintiffs have made no attempt to show (because they believe they need not do so) that any of the avatars in the Madden games could be 'readily identified' as corresponding to any specific plaintiff based on the appearance of the avatar alone." Plaintiffs resubmit screenshots that were filed with their opposition to the underlying motion, and which had been fully-considered when that motion was decided. The screenshots, however, included the additional information that plaintiffs argued before, and argue now, renders the avatars identifiable as specific players.

To the extent plaintiffs are now contending that an avatar can be identified as a particular player based only on the visual appearance of the image itself, the evidence does not support their

claim. For example, the screen shot of the avatar they claim represents plaintiff Vince Ferragamo features a skin tone, uniform, and perhaps some visual clues as to height and weight that might rule out it being a representation of the diminutive running back Barry Sanders, who played his entire career for the Detroit Lions, but no reasonable trier of fact could conclude it must be Vince Ferragamo, as opposed to any number of other players, real or fictional, that might share the same general appearance.

(4) source code

Plaintiffs fault the prior order for not specifically addressing evidence that plaintiffs' *names* appear in the source code of the Madden games. Neither in the underlying motion nor on reconsideration, however, have plaintiffs presented any argument or authority that would explain how a statutory violation of the right of publicity would arise from a use of plaintiffs' names in a place where they are not visible to the public.

### III. CONCLUSION

To the extent plaintiffs' motion include subsidiary arguments not expressly parsed out in the preceding discussion, they likewise do not compel a different result. The motion is denied.

**IT IS SO ORDERED**.

Dated: December 11, 2017

RICHARD SEEBORG
United States District Judge