1
2
3
4                           UNITED STATES DISTRICT COURT
5                          NORTHERN DISTRICT OF CALIFORNIA
6
7    MICHAEL E. DAVIS, et al.,                 Case No. 10-cv-03328-RS (DMR)
8                 Plaintiffs,
9          v.                                  **ORDER ON DEFENDANT'S MOTION
                                               FOR SANCTIONS**
10   ELECTRONIC ARTS INC.,                     Re: Dkt. No. 310
11                Defendant.

12        Defendant Electronic Arts Inc. ("EA") moved to compel Plaintiffs Michael E. Davis,

13   Vince Ferragamo, and Billy Joe Dupree to provide further responses to discovery. Following a

14   hearing, the court ordered Plaintiffs to provide amended responses, responsive documents, and a

15   privilege log by dates certain. [Docket No. 293 (Sept. 15, 2017 Order).] The court subsequently

16   granted EA leave to file a motion for sanctions based on Plaintiffs' alleged failure to comply with

17   the September 15, 2017 order. [Docket No. 307.] Now before the court is EA's motion for

18   sanctions. [Docket No. 310.] Following a January 11, 2018 hearing, the court ordered the parties

19   to file supplemental briefing, which the parties timely filed. [Docket Nos. 327, 329, 334.] For the

20   following reasons, EA's motion is granted in part.

21   **I.    BACKGROUND**

22        **A. Background**

23        Plaintiffs are retired NFL football players. EA develops and publishes video games. In

24   July 2010, Plaintiffs filed a complaint on behalf of themselves and a proposed class of

25   approximately 6,000 retired NFL players alleging that EA violated Plaintiffs' statutory and

26   common law rights of publicity through unauthorized use of their likenesses in EA's *Madden NFL*

27   video game franchise. Specifically, Plaintiffs allege that EA releases new *Madden NFL* video

28   games every year, producing different editions for different video game platforms, and that many

editions of the games include "historic teams." According to Plaintiffs, EA misappropriated the

likenesses of retired NFL players on these historic teams by describing in each player's profile

details such as the player's position, years in the NFL, height, weight, skin tone, and skill level in

different aspects of the game. Plaintiffs assert that these characteristics are "consistently identical

or so close to the actual player's characteristics that the consumers of the game can readily discern

which player is being represented." The only player characteristic that EA changes from the real-

life retired NFL players is the jersey number. [Docket No. 11 (Am. Compl.) ¶¶ 33, 34, 53.]

Plaintiffs allege that EA did not obtain required licenses or authorizations for the use of the

putative class members' likenesses.

In August 2017, the Honorable Richard Seeborg granted summary judgment on Plaintiffs'

claims for misappropriation of likenesses pursuant to California Civil Code section 3344. [Docket

No. 263.] He also granted Plaintiffs' motion for leave to file a second amended complaint

("SAC"). [Docket No. 264.] Plaintiffs' five remaining claims are: 1) violation of Plaintiffs' rights

of publicity under California common law; 2) conversion; 3) trespass to chattels; 4) unjust

enrichment; and violation of the UCL. [Docket No. 231-1.] Fact discovery closed on July 14,

2017.

**B. EA's Sanctions Motion**

In July 2017, EA filed unilateral discovery letter briefs in which it moved to compel

Plaintiffs to provide further responses to discovery. [Docket Nos. 249, 257.] The court ordered

the parties to meet and confer regarding the disputes set forth in the letters and to file joint letters

regarding any remaining disputes. [Docket Nos. 254, 260.] The court held a hearing on

September 14, 2017 regarding the issues raised in the parties' subsequent joint letters (Docket

Nos. 261, 262) and granted in part EA's motions to compel further responses to requests for the

production of documents ("RFPs"), interrogatories, and requests for admission ("RFA").[1] The

court ordered Plaintiffs to serve amended responses by dates certain. It also ordered Plaintiffs to

lodge and serve a privilege log listing documents responsive to RFPs 56-58, and to lodge for in

---

[1] The court also granted in part Plaintiffs' motion to compel regarding EA's 30(b)(6) witnesses.
[*See* Docket No. 293.

1  camera review documents responsive to RFP 58 by September 28, 2017.  Sept. 15, 2017 Order.[2]

2  On September 29, 2017, one day after the court-ordered deadline, Plaintiffs lodged a

3  document entitled, "Plaintiffs' Privilege Log and Statement of No Responsive Documents to EA's

4  RFP No. 58."  In the document, Plaintiffs state that they "engaged in a reasonable and diligent

5  search for documents responsive to Request No. 58" and "did not locate any responsive

6  documents."  In a footnote, Plaintiffs note the delay in submitting the privilege log, describing a

7  computer problem that "rendered it unusable."  EA asserts that Plaintiffs did not send EA a copy

8  of the privilege log until September 30, 2017.  Mot. 3.  Moreover, EA contends that Plaintiffs'

9  representation that they have no documents responsive to RFP 58 is inconsistent with Plaintiffs'

10  own deposition testimony about communications between the named plaintiffs.

11  In addition to Plaintiffs' late submission of a privilege log, EA asserts that Plaintiffs failed

12  to comply with other aspects of the court's order.  Specifically, on the September 28, 2017

13  deadline for Plaintiffs to serve responsive documents and amended responses to RFPs, RFAs, and

14  interrogatories, Plaintiffs produced 363 files and emailed to EA their purported responses to EA's

15  interrogatories.  [Docket No. 311 (Slaughter Decl., Nov. 9, 2017) ¶ 5(i), Ex. A.]  However, the

16  document purporting to be Plaintiffs' interrogatory responses was incomplete and unsigned, and

17  appeared to be a two-page excerpt from a longer response.  Slaughter Decl. Ex. A.  Plaintiffs did

18  not send EA full responses to the interrogatories until October 2, 2017.  Slaughter Decl. ¶ 5(ii),

19  Ex. B.  Plaintiffs also did not serve amended responses to the RFAs by the September 28, 2017

20  deadline, instead emailing EA with the RFA responses on October 2, 2017.  Slaughter Decl. ¶

21  5(iii), Ex. C.  Notably, Plaintiffs provided their court-ordered discovery responses to EA by email

22  alone, even though EA has not consented to service by email.  *See* Fed. R. Civ. P. 5(b)(2)(E)

23  (authorizing service "by electronic means if the person consented in writing").  Slaughter Decl. ¶

24  5.  EA also contends that Plaintiffs have never produced documents responsive to RFP 46 or

25  confirmed in writing that they have no such documents.

26  Most importantly, EA further asserts that Plaintiffs' late responses to the interrogatories

27

28  [2] RFP 58 seeks communications between the named plaintiffs and retired NFL players regarding this litigation or *Madden NFL*.

3

1    and RFAs remain deficient and do not comply with the court's guidance at the September 14,

2    2017 hearing.

3         EA now moves for sanctions pursuant to Rule 37, the court's inherent powers, and the

4    Civil Local Rules.  They ask for evidentiary sanctions specifically tied to the discovery responses

5    that it contends remain deficient, an order directing Plaintiffs to appear in San Francisco for one-

6    hour depositions at Plaintiffs' expense, and monetary sanctions.  Plaintiffs oppose the motion.

7    **II.    LEGAL STANDARD**

8         Rule 37 authorizes the imposition of various sanctions for discovery violations, including a

9    party's failure to obey a court order to provide or permit discovery and failure to timely

10   supplement initial disclosures and/or discovery responses pursuant to Rule 26(e).  Fed. R. Civ. P.

11   37(b)(2)(A), (c)(1).  Such sanctions may include ordering a party to pay the reasonable expenses,

12   including attorneys' fees, caused by its failure to comply with the order or rule.  Fed. R. Civ. P.

13   37(b)(2)(C), (c)(1)(A).   Where a party has violated a discovery order or Rule 26's disclosure

14   requirements, a court may direct that certain facts be taken as established for purposes of the

15   action and/or prohibit the party "from introducing designated matters in evidence."  Fed. R. Civ.

16   P. 37(b)(2)(A)(i), (ii), (c)(1)(C).  In addition, a party in violation of Rule 26 may also be

17   prohibited from using "information or [a] witness to supply evidence on a motion, at a hearing, or

18   at trial," unless the failure to disclose the information or witness "was substantially justified or is

19   harmless."  Fed. R. Civ. P. 37(c)(1).

20        Additionally, courts are vested with inherent powers arising out of "'the control necessarily

21   vested in courts to manage their own affairs so as to achieve the orderly and expeditious

22   disposition of cases.'"  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368

23   (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  A court's inherent

24   powers include "the 'broad discretion to make discovery and evidentiary rulings conducive to the

25   conduct of a fair and orderly trial.'"  *Unigard*, 982 F.2d at 368 (quoting *Campbell Indus. v. M/V*

26   *Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)).

27        Finally, Civil Local Rule 1-4 provides that "[f]ailure by counsel or a party to comply with

28   any duly promulgated local rule or any Federal Rule may be a ground for imposition of any

4

1 authorized sanction."

2 **III.   DISCUSSION**

3     **A.  EA's Entitlement to Sanctions**

4     The court's September 15, 2017 order directed Plaintiffs to serve further responses to

5 certain interrogatories, RFAs, and RFPs, and to lodge and serve a privilege log by September 28,

6 2017.

7     Plaintiffs do not dispute that they served their responses to the interrogatories and RFAs

8 and their privilege log after the court-ordered deadline.  However, they assert that they timely

9 produced approximately 13,000 pages of "reference materials" and 30 gigabytes of data in

10 response to the RFPs, in accordance with the court's order that they produce certain documents by

11 September 28, 2017.  Counsel states that "due to technical difficulties caused by a computer

12 failure . . . there were issues in the transmission of Plaintiffs' amended responses to the written

13 discovery requests." [Docket No. 314 (Henri Decl., Nov. 24, 2017) ¶ 6.]  Plaintiffs' counsel states

14 that he "made numerous attempts to repairs [sic] the issues while [he] was out of town on

15 September 28 and 29, but was unable to do so." *Id*.  According to Plaintiffs, EA has suffered no

16 prejudice as a result of their failure to timely serve discovery responses, as Plaintiffs provided

17 responses within two business days of the due date.  Counsel also states that Plaintiffs believe that

18 their substantive responses are "full and complete and in compliance" with the September 15,

19 2017 order, and that he has offered to meet and confer with EA regarding the responses if it

20 contends otherwise. *Id*. at ¶ 7.

21     It is undisputed that Plaintiffs violated the September 15, 2017 order by sending untimely

22 amended responses.[3]  Generally, in the absence of demonstrable prejudice, a two business-day

23 delay in serving discovery responses without more would not be sanctionable.  However, EA's

24 sanctions motion is not based solely on the issue of untimeliness.  EA also disputes the sufficiency

25 of the late responses.  EA argues that the discovery at issue goes to the heart of many of Plaintiffs'

26

27

28

---

[3] Additionally, Plaintiffs have not effectively "served" their amended responses within the meaning of Rule 5(b), as EA did not consent to electronic service.  It appears that Plaintiffs have never remedied their failure to properly serve the responses.

1   claims, and that Plaintiffs' failure to timely serve full and complete responses have precluded its

2   ability to move for summary judgment.

3       After reviewing the amended responses, the court agrees that they are deficient and do not

4   comply with its orders at the September 14, 2017 hearing, as detailed below.

### 1. Interrogatories

#### a. Interrogatory No. 12

7       The court ordered Plaintiffs to serve amended responses to Interrogatory No. 12, which

8   asks Plaintiffs to list each *Madden NFL* game that they had purchased, including the date of any

9   such purchase. Plaintiffs failed to respond to this interrogatory altogether in their amended

10  interrogatory responses. *See* Slaughter Decl. Ex. B. Plaintiffs stated in their opposition that they

11  "inadvertently neglected" to respond and would "immediately provide responses to this

12  interrogatory in advance of the hearing" on this motion. As of the date of EA's reply, Plaintiffs

13  had not done so. At the January 11, 2018 hearing, the parties confirmed that Plaintiffs had served

14  amended responses two days before the hearing, and EA confirmed that the responses were

15  sufficient. [Docket No. 330 (Jan. 11, 2018 Hr'g Tr.) 3, 4.] As Plaintiffs have satisfied their

16  obligations with respect to this interrogatory, albeit not in a timely fashion, the court declines to

17  impose a sanction as to Interrogatory No. 12.

#### b. Interrogatory Nos. 13 and 14

19      Interrogatory Nos. 13 and 14 ask Plaintiffs to identify the "property" they claim EA has

20  taken or damaged, and the value of any such property or damage. Plaintiffs originally limited their

21  responses by stating that they were based on the assumption that the interrogatories "seek[] to

22  inquire as to the 'economic rights' of Plaintiff taken by EA and not 'property' . . ." [Docket No.

23  249-1 at ECF pp. 76-78.] At the September 14, 2017 hearing, EA explained that it propounded the

24  interrogatories in order to understand exactly which property interests are at issue in Plaintiffs'

25  claims for trespass to chattels and conversion. To the extent that the only property interest at issue

26  in this case is Plaintiffs' economic interest in their likenesses, EA offered to enter into a stipulation

27  to that effect. Plaintiffs refused. The court instructed Plaintiffs that "the defense has a right to

28  know what exactly you're claiming with respect to the possession of property, . . . what property

1    you think is at issue here."   The court ordered Plaintiffs to fully respond to the interrogatories as

2    written.  [Docket No. 295 (Sept. 14, 2017 Hr'g Tr.) 42, 46-49.]

3          In their amended responses, Plaintiffs inexplicably used the same limitation that the court

4    previously had rejected.  Specifically, Plaintiffs noted that their responses were based on the

5    assumption that the interrogatories "seek[] to inquire as to the 'economic rights' of Plaintiff taken

6    by EA and not 'property.'"  *See* Slaughter Decl. Ex. B at ECF pp. 17-19.  This directly

7    contravenes the court's ruling.  Plaintiffs' amended responses are evasive and improper because

8    they do not answer the interrogatories as written, which are not limited to economic rights.

9    Evidentiary sanctions are therefore appropriate.  Accordingly, as a sanction for Plaintiffs' failure

10   to comply with the court's order regarding Interrogatory Nos. 13 and 14, the *only* theory of

11   property rights that Plaintiffs may assert in this action is the economic value in Plaintiffs' names,

12   images, identities, and/or likenesses.

13                          **c.   Interrogatory Nos. 15 and 19**

14         Interrogatory Nos. 15 and 19 ask Plaintiffs to identify the specific value of their names,

15   images, identities, and/or likenesses, and to explain how EA's conduct has affected that value.

16   Plaintiffs originally refused to provide an estimate of the monetary value of their names and

17   likenesses, objecting that the interrogatories were "premature" because they sought information

18   that would be the subject of expert testimony.  [Docket No. 249-1 at ECF pp. 63-64, 78-79.]  The

19   court ordered Plaintiffs to respond to the interrogatories with any information other than expert

20   testimony, stating, "if there's going to be any lay witness testimony on damages then your clients

21   need to respond."  Sept. 14, 2017 Hr'g Tr. 43.

22         Plaintiffs' amended responses are insufficient, because they still do not provide an estimate

23   of the monetary value of their names and likenesses.  They state, "Plaintiffs have not yet

24   completed their computation of the damages in this case and reserve the right to supplement their

25   response to this interrogatory and/or to provide expert testimony and evidence regarding the

26   amount of economic damages."  Slaughter Decl. Ex. B at ECF pp. 21, 28.  As Plaintiffs' responses

27   do not comply with the court's prior instructions and continue to be evasive, the court sanctions

28   Plaintiffs by precluding them from offering any lay testimony regarding the value of their names,

7

1   images, identities, and/or likenesses, other than the information already provided in their

2   responses.

### 2. RFAs

#### a. RFA No. 27

5   RFA No. 27 asks Plaintiffs to admit that they have never entered into "agreements or

6   business deals" with EA. According to EA, Plaintiffs initially refused to answer the RFA,

7   objecting that it was vague. During the parties' meet and confer, Plaintiffs' counsel reiterated his

8   vagueness objection, stating that the parties had a stipulation regarding moving a hearing date in

9   this litigation, and that the stipulation could in theory be an "agreement" with EA. [Docket No.

10  315-1 (Lauridsen Decl., Dec. 1, 2017) Ex. 1 at 10.] EA then clarified that the request was

11  restricted to agreements "[o]ther than any agreement entered into in this litigation." *Id*. Plaintiffs

12  ignored EA's clarification. Their amended responses state: "Denied. Plaintiff has entered into

13  agreements with EA. For example, Plaintiff and EA entered into a confidentiality agreement at

14  the parties' mediation." Slaughter Decl. Ex. C at ECF p. 7. Plaintiffs' responses are evasive and

15  improper. Accordingly, RFA No. 27 is deemed admitted.

#### b. RFA Nos. 29 and 30

17  RFA Nos. 29 and 30 ask Plaintiffs to admit that they do not allege that EA has ever had

18  possession of their "personal" or "tangible" property. As with their responses to Interrogatory

19  Nos. 13 and 14, Plaintiffs re-wrote the RFAs, limiting their responses to their "economic rights"

20  only, and not "property." This expressly violated the court's order. Slaughter Decl. Ex. C at ECF

21  pp. 7-8; *see also* Sept. 14, 2017 Hr'g Tr. at 42-43. As a sanction for Plaintiffs' improper and

22  evasive responses to RFA Nos. 29 and 30, the only theory of property rights that Plaintiffs may

23  assert in this action is the economic value in Plaintiffs' names, images, identities, and/or

24  likenesses.

#### c. RFA No. 33

26  RFA No. 33 asks Plaintiffs to "[a]dmit that, in 2008, at least one other person or entity

27  (e.g., an Agent, an attorney, the NFLPA) was authorized to license" Plaintiffs' names, images,

28  identities, and/or likenesses on Plaintiffs' behalf. Plaintiffs originally refused to provide

8

1  substantive responses to this RFA.  [Docket No. 249-1 at ECF pp. 45-46.]  The court ordered

2  Plaintiffs to respond.  Sept. 14, 2017 Hr'g Tr. at 42.  In their amended responses, Plaintiffs did not

3  answer the RFA as written; instead, they re-wrote the RFA to disregard the word "authorized,"

4  and responded as follows: "assuming that this request seeks to have Plaintiff admit that others

5  could license" his name, image, identity and/or likeness "without Plaintiffs' permission,"

6  "[d]enied."  Plaintiffs' responses were nonsensical and improper.  At the hearing, the court

7  ordered Plaintiffs to serve amended, complete responses to RFA No. 33 by January 16, 2018, and

8  gave EA leave to seek additional court intervention if the response remained insufficient.  [Docket

9  No. 327.]  EA has not done so.  Therefore, the court declines to impose sanctions with respect to

10  RFA No. 33.

11  ### 3. RFPs

12  #### a. Plaintiffs' September 28, 2017 Document Production

13  EA contends that Plaintiffs' September 28, 2017 document production skirts the court's

14  September 15, 2017 order in two ways.  First, RFP No. 46 requested all documents related to the

15  *Parrish* litigation, which involved the licensing of retired football players' images.  The court

16  ordered Plaintiffs to produce documents responsive to RFP No. 46, or confirm in writing that

17  Plaintiffs had no such documents.  According to EA, Plaintiffs have never produced the requested

18  documents or provided confirmation that no documents are in their possession, custody, or

19  control.  Plaintiffs do not contest this assertion.

20  Second, EA contends that Plaintiffs' discovery responses attempt to circumvent the

21  September 28, 2017 deadline to produce documents.  In their amended responses to Interrogatory

22  Nos. 9 and 9.2, Plaintiffs state, "Plaintiffs do not possess a complete set of such documents and

23  reserve the right to supplement their responses to [the interrogatories] with additional information

24  and facts."  Slaughter Decl. Ex. B at ECF pp. 12, 16.[4]  EA argues that Plaintiffs' "efforts to keep

25  the production door open" after the close of discovery is improper.  Mot. 8.  The court agrees.

26

27  _____

28  [4] Interrogatory No. 9 asked Plaintiffs to identify all versions of *Madden NFL* that Plaintiffs
contend depict their names, images, identities, and/or likenesses, and No. 9.2 asked Plaintiffs to
identify all documents and state all facts supporting one of the contentions in the SAC.

9

1    Plaintiffs' amended responses do not comply with the court's September 15, 2017 order that they

2    produce "all responsive documents which support their claims by [September 28, 2017]."

3    Accordingly, Plaintiffs are prohibited from introducing or relying upon, in a motion, at a hearing,

4    or at trial, any documents that they have not previously produced in discovery, absent substantial

5    justification. *See* Fed. R. Civ. P. 37(c)(1).

### b. RFP No. 58

7    Finally, EA challenges Plaintiffs' privilege log and representation that they did not locate

8    any documents responsive to RFP No. 58. RFP No. 58 asks for "[a]ll documents related to this

9    litigation or Madden NFL that you have received from or sent to other retired football players,

10   including but not limited to those retired football players who objected at any point to this

11   litigation, to you as a class representative, or to your counsel as class counsel." [*See* Docket No.

12   262.] Plaintiffs' counsel previously represented that there are no responsive communications

13   between Plaintiffs and the putative class members. *See id*. However, at the September 2017

14   hearing, Plaintiffs' counsel stated, "I believe there's regular communications between [the named

15   Plaintiffs] . . . regarding the case." Sept. 14, 2017 Hr'g Tr. 65. Similarly, Plaintiff Davis testified

16   at deposition that he typically communicates by email and phone with the other retired players

17   about the lawsuit. Mot. 9. Therefore, EA argues, Plaintiffs' statement that there are no responsive

18   documents appears inconsistent with counsel and Davis's previous representations.

19   At the January 2018 hearing, given the inconsistencies between counsel and Plaintiffs'

20   statements about communications between Plaintiffs about this litigation or *Madden NFL*, the

21   court expressed its concern about the adequacy of Plaintiffs' search for responsive documents.

22   The court ordered Plaintiffs' counsel to immediately contact his clients in writing and by

23   telephone to communicate the court's order that they each "search thoroughly all . . . email, going

24   all the way back, for communications between [Plaintiffs] and other people who are not lawyers

25   about this case," and ordered counsel to confirm the completeness of the search. Jan. 11, 2018

26   Hr'g Tr. 22-23. The court also ordered a further one-hour deposition of Davis on the subject of

27   his search for responsive documents and communications he had with other retired football

28   players about the case, with the costs of the deposition to be borne by Plaintiffs (not including

10

1    attorneys' fees). *Id*. at 26.[5]

2                              **4.  Monetary Sanctions**

3         EA also requests $45,000 in monetary sanctions.  The court finds that monetary sanctions

4    are appropriate in this case, in addition to the evidentiary sanctions described above.  After the

5    court gave detailed instructions and ordered Plaintiffs to provide amended responses to the

6    discovery at issue, Plaintiffs served untimely, deficient responses, and continued to take

7    indefensible positions that were not substantially justified.  This conduct forced EA and the court

8    to continue to expend significant resources to address Plaintiffs' failure to meet its discovery

9    obligations and provide basic discovery.  Monetary sanctions are therefore warranted.

10        The court determines reasonable attorneys' fees according to the lodestar analysis, which

11   multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate.

12   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cty*., 815 F.2d 1258, 1262

13   (9th Cir. 1987).  The reasonable hourly rate depends on "the prevailing market rates in the relevant

14   community." *Blum v. Stenson*, 465 U.S. 886, 896 (1984).  Although the court presumes that the

15   lodestar represents a reasonable fee, *Jordan*, 815 F.2d at 1262, the court may adjust the award if

16   other factors make it unreasonable.  *See Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th

17   Cir. 1975).  The court "should . . . exclude from the lodestar fee calculation any hours that were

18   not 'reasonably expended,' such as hours that are excessive, redundant, or otherwise unnecessary."

19   *Rodriguez v. Barrita, Inc*., 53 F. Supp. 3d 1268, 1281 (N.D. Cal. 2014) (quoting *Hensley*, 461 U.S.

20   at 433-34).

21        EA submitted supporting evidence in the form of a spreadsheet with itemized billing

22   records covering the period July 5, 2017 through January 11, 2018, the date of the hearing on the

23   motion for sanctions.  [Docket Nos. 329, 329-1 (Slaughter Decl., Jan. 19, 2018, "Slaughter Decl.

24   II").]  EA's billing records reflect attorneys' fees totaling $114,866.10, and include work

25

26   ───────────────────────

27   [5] Following Davis's further deposition on January 30, 2018, EA filed a unilateral letter brief in
     which it moves for sanctions based on Davis's alleged failure to preserve all documents
     potentially relevant to his claims in this action.  [Docket No. 346.]  Plaintiffs filed a response on
28   February 28, 2018.  [Docket No. 348.]  The matter is set for hearing before the undersigned on
     May 10, 2018.

                                                      11

United States District Court
Northern District of California

1    performed by four timekeepers: attorneys R. James Slaughter, R. Adam Lauridsen, Nic Marais,

2    and Chessie Thatcher. Slaughter Decl. II ¶ 5, Ex. A. Slaughter explains that EA does not seek the

3    full amount of fees, and instead is limiting its request for monetary sanctions to the sum requested

4    in the motion, which is $45,000. Slaughter Decl. II ¶¶ 7, 8. EA has excluded time spent by

5    Slaughter as well as time spent after the September 14, 2017 hearing, including time spent on the

6    motion for sanctions. *Id*. at ¶ 8. Slaughter explains that the fees requested are also limited to

7    those incurred for work performed by Lauridsen, Marais, and Thatcher "on relevant issues from

8    July 5, 2017 through September 14, 2017," and that EA has further reduced the fees incurred by

9    one quarter, resulting in the total request of $45,000. *Id*. at ¶¶ 8, 9. EA seeks hourly rates of

10   $652.50, $495, and $495 for Lauridsen, Marais, and Thatcher, respectively, for work necessitated

11   by Plaintiffs' discovery misconduct. Lauridsen is a 2005 law school graduate and partner. Marais

12   and Thatcher, who are associates, are each 2011 law school graduates. *Id*. at ¶ 11.

13          The court has carefully reviewed EA's billing records, which are organized

14   chronologically and reflect fees incurred in connection with: 1) preparing the July 2017 unilateral

15   discovery briefs (Docket Nos. 249 and 257), including meeting and conferring; 2) preparing the

16   joint discovery letter briefs heard on September 14, 2017, including preparing for the hearing; and

17   3) preparing the motion for sanctions, including preparing for the hearing. The billing records do

18   not segregate the fees by task or category, which makes it difficult to evaluate the reasonableness

19   of the time expended, or to calculate precise sums that should be allowed or disallowed. For

20   example, if the time were broken out by category, the court would disallow time spent meeting

21   and conferring prior to the filing of EA's July 2017 unilateral discovery briefs in which they

22   moved to compel, because EA was required to meet and confer with Plaintiffs prior to moving to

23   compel pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37-1(a). The court

24   would also disallow time spent drafting the unilateral discovery briefs, because the court declined

25   to rule on those motions before the parties had submitted joint letters on the same disputes.

26          Notwithstanding the problems with EA's billing records, it is clear that EA incurred

27   substantial attorneys' fees in attempting to obtain Plaintiffs' compliance and seeking court

28   intervention. For example, by the court's calculation, attorneys Lauridsen and Marais together

12

1    billed nearly $20,000 for work on the sanctions motion alone.  The court finds that a sanction of

2    $25,000 is justified in these circumstances, and acknowledges that this amount represents a

3    significant discount from the actual attorneys' fees incurred by EA as a result of Plaintiffs'

4    counsel's actions.  The court finds that $25,000, coupled with the evidentiary consequences set

5    forth above, are an appropriate sanction here.  The entire $25,000 shall be paid by Plaintiffs'

6    counsel to EA within 30 days of the date of this order.

7    **IV.    CONCLUSION**

8          For the foregoing reasons, EA's motion for sanctions is granted in part.  The court awards

9    attorneys' fees in the amount of $25,000, which must be paid by Plaintiffs' counsel within 30 days

10   of the date of this order.

11

12         **IT IS SO ORDERED.**

13   Dated: April 3, 2018



14   _____
                                Donna M. Ryu
15                     United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

13