UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL E. DAVIS, et al.,

Plaintiffs,

v.

ELECTRONIC ARTS INC.,

Defendant.

Case No. 10-cv-03328-RS

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The named plaintiffs in this putative class action are former National Football League players who contend that defendant Electronic Arts, Inc. ("EA") has misappropriated their likenesses and rights of publicity through marketing and selling the popular "Madden NFL" series of video games. The factual background and the protracted procedural history are set out in, and reflected by, previous orders and will not be recounted here. Prior motion practice has narrowed the scope of the litigation. EA now seeks to dispose of the remaining claims by summary judgment. The motion will be denied.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary

judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

III. DISCUSSION

EA's motion for summary judgment has five basic prongs—all of which have been the subject, to one degree or another, of prior motion practice. Plaintiffs are wrong, however, to argue that EA is barred by "law of the case" from raising these issues once again, or that it must meet the standards applicable to motions for reconsideration.[1] At least in theory, EA is attempting to show, as it puts it, the following:

> A complaint is a promise. It tells the court, "trust me, I can prove what I allege." Plaintiffs here have told the Court to trust that their identities appear in Madden NFL and to trust that NFL team media guides contain information "consistently identical" to information about historic-team avatars in Madden NFL. The time for trust has passed, discovery has closed, and the record is set. And the evidence proves that Plaintiffs cannot live up to their promises and that EA is entitled to summary judgment on all of Plaintiffs' claims.

It was appropriate for EA to test the viability of the remaining claims in the light of the fully developed record now presented. As explained below, however, EA is not entitled to judgment in its favor even on that record.

A. <u>Identifiability</u>

EA's previously moved for partial summary judgment on plaintiffs' claims under a California's right of publicity statute, Civil Code § 3344. That motion was granted by an order stating:

> In short, plaintiffs have made no attempt to show (because they believe they need not do so) that any of the avatars in the Madden games could be "readily identified" as corresponding to any specific

---

[1] The exception, as discussed below, is that EA's arguments regarding copyright preemption do not implicate any development in the record since the prior ruling.

plaintiff based on the appearance of the avatar alone. Rather, plaintiffs insist that the avatars are identifiable through additional contextual information. That may be so, and it may support a claim under the common law. As construed by the Ninth Circuit, however, "likeness" as used in section 3344 is narrower than under the common law. *See*, *e.g.*, *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("The term 'likeness' refers to a visual image not a vocal imitation. The statute, however, does not preclude [plaintiff] from pursuing any cause of action she may have at common law.").

Thus, the holding in the prior order was explicitly limited to the statutory claim, which was adjudged (rightly or wrongly) to be narrower than the common law claim in light of *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992) ("Without deciding for all purposes when a caricature or impressionistic resemblance might become a 'likeness,' we agree with the district court that the robot at issue here was not White's 'likeness' within the meaning of section 3344 . . . . [Nevertheless] the district court erred by rejecting, on summary judgment, White's common law right of publicity claim."); *see also Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("The term 'likeness' refers to a visual image not a vocal imitation. The statute, however, does not preclude [plaintiff] from pursuing any cause of action she may have at common law.").

EA now contends there are no triable issues of fact as to whether the avatars in the game are "identifiable" as any or all of the specific plaintiffs, even under the common law claim. EA insists plaintiffs must be able to show that more than a *de minimus* number of persons can recognize avatars as being representations of plaintiffs. Relying on a survey conducted by its expert, EA argues "the vast majority of consumers did not associate the avatars at issue with any real person." In the survey, participants "were shown screenshots from Madden NFL 09 that featured pictures of the avatars (including those avatars that Plaintiffs claim depict them) alongside the information that Plaintiffs allege constitutes their identity." EA contends the results overwhelmingly support its position, as only one or two percent of respondents identified the avatars as the allegedly corresponding plaintiffs, and similar or larger percentages identified the avatars as other players. Plaintiffs argue the methodology of the survey is deficient in numerous respects.

Whatever probative value that survey may have, it does not serve to eliminate a triable issue of fact as to identifiability. Plaintiffs continue to point to the facts that have supported their case from the outset: EA unquestionably marketed the "historical" teams as providing players the ability to engage in realistic recreations of the actual teams, players have been able to "edit" the "scrambled" jersey numbers to reflect actual player numbers, and various physical and performance characteristics of actual players were reflected in the avatars at issue. Plaintiffs proffer evidence that members of the public in fact took advantage of those features. Although plaintiffs have not submitted any survey of their own, the evidence to which they point is sufficient to defeat summary judgment.

There is little doubt that EA made efforts to render the avatars generic or anonymous to some degree. A reasonable inference is that EA was trying to have it both ways: it wanted its customers to believe they could have genuine reenactments of games with representations of the actual players, while simultaneously hoping to remove enough identifying features that the former players could not claim a license was legally required. Although a fact-finder may very well conclude that avatars are not sufficiently identifiable to support plaintiffs' claims, the present record does not allow for such a finding to be made as a matter of law.

B. First Amendment

EA previously sought dismissal under Rule 12(b) or to have the complaint stricken under California's "anti-SLAAP" law (Cal. Code Civ. Proc. § 425.16) by arguing the Madden game "is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame." *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 407 (2001). The California Supreme Court first articulated the "transformative" use test in *Comedy III*. As the opinion explained, under applicable California law this "transformative" use test "is essentially a balancing test between the First Amendment and the right of publicity based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or

imitation." *Id*. at 391.

The prior order found, and the Ninth Circuit agreed, that on the facts here, "plaintiffs' likenesses are shown engaged in the activity—playing football—which earned them fame" and "[i]f there is any expressive significance inhering in EA's depiction of plaintiffs, defendant has failed to articulate it."

EA seeks a different result now by arguing, in essence, that the fully-developed record shows that the avatars are not literal representations of plaintiffs. The argument, however, does not present a separate basis for rejecting plaintiffs' claims. If a trier of fact were to agree with EA that the avatars are not literal (identifiable) representations of plaintiffs, EA will prevail on the merits, without consideration of the First Amendment. Conversely, if the trier of fact finds the avatars are sufficiently identifiable to support the misappropriation claim, there will be no grounds to reconsider the prior rulings that the use of the identities is not sufficiently transformative to merit First Amendment protection.

### C. Copyright preemption

EA contends the recent order denying its motion to dismiss was legally erroneous in holding that copyright preemption did not apply because plaintiffs' likenesses are not "fixed" in the Madden game. EA insists the law is well-settled that video games are entitled to copyright protection as "fixed" expressive works notwithstanding the fact that game play is dynamic and variable.

EA misapprehends the prior order. The conclusion was not that the Madden game is not copyrightable. Rather, the decision turned on the fact that even where a particular artistic work is subject to copyright protection, not every element within the work is copyrightable. Plaintiffs' claim that their identities have been captured in the Madden game turns in no small part on the fact that the software algorithms are designed to produce game play in which identifiable characteristics of plaintiffs emerge. In other words, plaintiffs' identities are represented through ephemeral images produced in real time and dependent in part on input from the user. Although

1 EA certainly can copyright the game itself, it has not shown that the copyright extends to the game
2 play in which its customers participate.

Furthermore, with respect to this prong of the current motion, EA has not shown the record on summary judgment to differ from what was considered at the motion to dismiss stage. Accordingly, as to this prong, EA is effectively seeking reconsideration, without having made a threshold showing that reconsideration is warranted. See Civil Local Rule 7-9.

### D. Ancillary claims

EA contends plaintiffs' UCL, conversion, and trespass to chattels claims all fail because plaintiff supposedly cannot identify cognizable property rights to support the claim. While the parties continue to quibble over what constitutes "property," EA acknowledges that intangible interests may support these claims. EA's further argument that plaintiffs have not yet quantified the alleged value of their economic interests is not a basis to enter summary judgment. As reflected in the recent order upholding the magistrate judge's sanctions ruling, plaintiffs may still present damages calculations through expert testimony.

### D. Statute of limitations

EA's moving papers sought a ruling that only Madden '09 is within the applicable statute of limitations. Plaintiffs contend EA did not meet its initial burden to show there are no disputed facts on this point. On reply, EA appears to concede the issue is not ripe for determination at this stage. Indeed, the record is not sufficient at this juncture to evaluate whether or not any versions of the game other than Madden '09 fall within the limitations period.

IV. CONCLUSION

The motion is denied.

**IT IS SO ORDERED**.

Dated: August 17, 2018

_____
RICHARD SEEBORG
United States District Judge